**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

CHRISTOPHER SEAMAN and ELIZABETH
ALLISON LYONS, individually and on behalf
of C.S., a minor; TASHA NELSON,
individually and on behalf of J.N., a minor;
ELIZABETH BURNETT, individually and on
behalf of B.B., a minor; LINDSEY
DOUGHERTY, individually and on behalf of
G.D., a minor; MEGHAN DUFRAIN and
ROCH DUFRAIN, individually and on behalf of
J.D., a minor; DENILLE FRANCIS,
individually and on behalf of Q.O., a minor;
BRIAN MULLIGAN and LORI DOOLEY,
individually and on behalf of R.M., a minor;
KIMBERLY CRAWLEY, individually and on
behalf of I.C., a minor; L.W., individually and
on behalf of C.B., a minor; K.R., individually
and on behalf of L.R., a minor; S.K.,
individually and on behalf of M.K., a minor; and
R.M., individually and on behalf of J.M., a
minor,

               Plaintiffs,

    v.

The COMMONWEALTH OF VIRGINIA;
GLENN YOUNGKIN, in his official capacity as
the GOVERNOR of the COMMONWEALTH
OF VIRGINIA; JASON MIYARES, in his
official capacity as the ATTORNEY GENERAL
of the COMMONWEALTH OF VIRGINIA;
JILLIAN BALOW, in her official capacity as the
VIRGINIA SUPERINTENDENT OF PUBLIC
INSTRUCTION; and COLIN GREENE, in his
official capacity as VIRGINIA HEALTH
COMMISSIONER,

               Defendants.

Case No. 3:22-cv-00006

**MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING
ORDER AND PRELIMINARY
INJUNCTION**

1

## PRELIMINARY STATEMENT

Federal courts repeatedly have enjoined laws and orders that seek to deny public schools the ability to adopt masking requirements when necessary to protect students with disabilities who are particularly susceptible to contracting, and becoming severely ill from, COVID-19. *See, e.g.*, *Arc of Iowa v. Reynolds,* No. 21-3268, 2022 WL 211215 (8th Cir. Jan. 25, 2022). Nevertheless, on the Governor's first day in office, he issued an executive order that eviscerated public schools' authority to impose masking where needed. Executive Order 2 is not only at odds with the recommendations of the U.S. Centers for Disease Control and Prevention ("CDC"), the American Medical Association ("AMA"), the American Academy of Pediatrics ("AAP"), and scores of public health and education officials, it is an affront to the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504").

Plaintiffs are students enrolled in Virginia public schools who have disabilities as defined under the ADA and Section 504. C.S.'s leukemia and immunocompromises substantially limit the major bodily function of the immune system. Ex. 1 (Decl. of Christopher Seaman and Elizabeth Allison Lyons). J.N.'s cystic fibrosis substantially limits the major life activity of breathing and the major bodily functions of the respiratory and digestive systems. Ex. 2 (Decl. of Tasha Nelson). B.B.'s lung disease substantially limits the major life activity of breathing and the major bodily function of the respiratory system. Ex. 3 (Decl. of Elizabeth Burnett). G.D.'s immune disease and asthma substantially limit the major life activity of breathing and the major bodily functions of the respiratory and immune systems. Ex. 4 (Decl. of Lindsey Dougherty). J.D.'s cystic fibrosis substantially limits the major bodily function of the respiratory system. Ex. 5 (Decl. of Meghan DuFrain). Q.O.'s Down syndrome, Celiac disease and liver disease substantially limit the major life activities of caring for himself, eating, and the major bodily

functions of the digestive system. Ex. 6 (Decl. of Denille Francis). R.M.'s cystic fibrosis substantially limits the major bodily functions of the respiratory and immune systems. Ex. 7 (Decl. of Brian Mulligan). I.C.'s lung disease substantially limits the major bodily function of the respiratory system. Ex. 8 (Decl. of Kimberly Crawley). C.B.'s asthma substantially limits the major life activity of breathing. Ex. 9. (Decl. of L.W.). J.M.'s Type 1 diabetes substantially limits the major life activity of eating and the major bodily function of the endocrine system. Ex. 10 (Decl. of R.M.). L.R.'s kidney disease and diabetes substantially limit the major bodily functions of the urinary and digestive systems. Ex. 11 (Decl. of K.R.).

According to the best available medical evidence, Plaintiffs' disabilities put them at high risk of developing severe illness if they contract COVID-19. *See* Ex. 12, Decl. of Dr. Frederic Garner, ¶¶ 28-31 (medical complexity, metabolic conditions, diabetes, asthma, chronic lung disease, cystic fibrosis, cancer, transplants, immunosuppression, and intellectual disabilities create high risk of COVID-10). ); Ex. 5, Exhibit A (Decl. of Meghan DuFrain) (Letter from Dr. Joel Schmidt, Cystic Fibrosis Center Pediatric Program, Children's Hosp. of Richmond at VCU) (January 28, 2022)); Ex. 3, Exhibit B (Decl. of Elizabeth Burnett) (Email from Dr. Tiffany Kimbrough, Medical Director, Mother Infant Unit, Associate Professor, General Pediatrics, Children's Hosp. of Richmond at VCUMC (Feb. 2, 2022)); Ex. 2, Exhibit A (Decl. of Tasha Nelson) (letter from Dr. Peter Mogayzei, Menowizt/Rosenstein Prof. of Pediatric Respiratory Sciences, Director, Eudowood Div. of Pediatric Respiratory Sciences, Director, Cystic Fibrosis Center (Jan. 28, 2022)); Ex. 7, Exhibit A (Decl. of Brian Mulligan) (letter from Dr. Deborah

Froh, Director, Cystic Fibrosis Ctr., Prof. of Pediatrics, Dept. of Pediatric Respiratory Medicine, University of Virginia Children's Hospital (Jan. 24, 2022)).[1]

In light of these risks and the restrictions of Executive Order 2, Plaintiffs' parents face a Hobson's choice: expose their children to an educational environment that increases their risk of contracting, and suffering severe illness from, COVID-19 or keep them out of school and isolated from their teachers and peers. That choice is unlawful "because mask requirements are reasonable accommodations required by federal disability law to protect the rights" of disabled students like Plaintiffs. *Arc of Iowa*, 2022 WL 211215, at *1.

Immediate relief is needed here because, even in the face of a state court ruling finding that Executive Order 2 exceeded the Governor's power as relevant to seven school districts, the Governor and other Defendants have steadfastly made clear they intend to try to enforce Executive Order 2. Indeed, Defendants rejected a proposal from Plaintiffs requesting confirmation that they would stop seeking to enforce Executive Order 2 pending resolution of litigation. Ex. 14 (Letter from Chief Deputy Attorney General Charles H. Slemp, III (Feb. 9, 2022)). Defendants' efforts to enforce Executive Order 2 have left parents confused, school districts outside the state court's order in limbo, and Plaintiffs irreparably harmed. This Court should grant Plaintiffs a temporary restraining order, confirming that Defendants cannot properly

---

[1] *See also see COVID-19: People with Certain Medical Conditions*, CDC (December 14, 2021) (identifying, *inter alia*, cancer, cystic fibrosis, moderate to severe asthma, Down syndrome, lung conditions, cerebral palsy, and weakened immune systems as high-risk conditions), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#print (last visited Feb. 8, 2022); Rishi S. Kotecha, *Challenges Posed by COVID-19 to Children with Cancer*, 21 Lancet Oncology E235 (Mar. 25, 2020), https://www.thelancet.com/journals/lanonc/article/PIIS1470-2045(20)30205-9/fulltext (last visited Feb. 9, 2022); Ashley Kieran Clift, et al, *COVID-19 Mortality Risk in Down Syndrome: Results From a Cohort Study of 8 Million Adults*, Annals of Internal Medicine (Apr. 2021), https://www.acpjournals.org/doi/full/10.7326/M20-4986 (last visited Feb. 9, 2022).

enforce Executive Order 2 to strip Plaintiffs' school districts of their authority to implement masking where needed to protect the most vulnerable students.[2]

## FACTS

### 1. The Pandemic and Virginia Schools' Adoption of Masking Policies

Virginia public schools began in-person classes for the 2021-22 school year during August and September 2021.[3] At that time, in response to the COVID-19 pandemic, the Virginia Department of Health issued a State Public Health Emergency Order requiring masking in K-12 public schools.[4]

After the start of the 2021-2022 school year, the Omicron Variant of COVID-19 emerged and quickly created a larger surge of infections than ever before during the pandemic.[5] As of this week, every region and locality in the Commonwealth of Virginia is at "High" risk of COVID-19

---

[2] Fairfax County Public Schools, attended by R.K., are already subject to an injunction against Executive Order 2 in *Alexandria City Sch. Bd. v. Youngkin*, No. CL22000224-00 (Arlington Cty. Cir. Ct. Feb. 4, 2022). Therefore, S.K. does not seek emergency relief on behalf of R.K. at this time. However, S.K. and R.K. reserve their right to seek emergency injunctive relief in the event the state court injunction is lifted.

[3] *See* School Division Calendars for 2021-2022, Virginia Dept. of Education https://www.doe.virginia.gov/directories/sch_division_locales_schedules/2021-2022-division-calendars.pdf (last visited Feb 8, 2022).

[4] Va. Dept. of Health, State Health Commissioner Order of Public Health Emergency Statewide Requirement to Wear Masks in K-12 Schools (Aug. 12, 2021). https://www.vdh.virginia.gov/content/uploads/sites/134/2021/08/PHE-Order_K-12_8-12-2021.pdf (Last visited Feb. 8, 2022).

[5] *See Cases and Deaths by Date Reported*, Va. Dept. of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-and-deaths-by-date-reported/ (last visited Feb. 8, 2022). As of January 24, 2022, every region and locality in the Commonwealth of Virginia is at "High" risk of COVID-19 transmission. *See COVID-19 Level of Community Transmission*, Va. Dept. of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-in-virginia/community-transmission/ (last visited Feb. 8, 2022).

transmission.[6] *Id.* This surge has affected children. Nationwide, COVID-19 ranks as one of the top 10 causes of death for children ages 5 through 11.[7] In Virginia, from January 15 to January 29, 2022, alone, there were 7,458 reported cases of COVID-19 among children, leading to 34 hospitalizations.[8]

The CDC, the AAP, and the AMA have all concluded that universal mask-wearing is effective at preventing the spread of COVID-19, including among school children.[9] The Commonwealth's own Department of Health continues to note the effectiveness of mask-wearing and recommends it when in areas of substantial transmission, even for those who are

---

[6] *See* Va. Dept. of Health, COVID-19 Level of Community Transmission, available at https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-in-virginia/community-transmission/ (last visited Feb. 8, 2022).

[7] *Children & Teens*, CDC (Jan. 11, 2022), available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/children-teens.html (last visited Feb. 8, 2022).

[8] *COVID-19 in Virginia: Cases Among Children*, Va. Dept. of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Jan. 24, 2022).

[9] *See Guidance for COVID-19 Prevention in K-12 Schools*, CDC (Jan. 13, 2022), https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html (last visited Feb. 8, 2022); *Face Masks,* AAP ("The American Academy of Pediatrics (AAP) strongly recommends that anyone over the age of 2, regardless of vaccination status, wear a well-fitting face mask when in public…. In addition to protecting the child, the use of face masks significantly reduces the spread of SARS-CoV-2 and other respiratory infections within schools and other community settings."), https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/cloth-face-coverings/ (last visited Feb. 8, 2022). *See also Staying Safe in School During COVID-19,* AAP, https://healthychildren.org/English/health-issues/conditions/COVID-19/Pages/Return-to-School-During-COVID-19.aspx?_gl=1*1y21mrn*_ga*NzA1Mzc3NzkwLjE2NDMwNzU4ODQ.*_ga_FD9D3XZVQQ*MTY0MzA3NTg4My4xLjAuMTY0MzA3NTg4My4w&_ga=2.247347591.2030512429.1643075885-705377790.1643075884 (last visited Feb. 8, 2022). *See Coronavirus Masking in Public*, AMA ("Public masking during the COVID-19 pandemic is *one of the most effective measures we can take* to contain the spread of the virus. The American Medical Association strongly advocates for coronavirus masking in public spaces.") (emphasis added), https://www.ama-assn.org/topics/coronavirus-masking-public (last visited Feb. 8, 2022).

vaccinated, stating, "**Important! Everyone age 2 and up should wear a mask in indoor public spaces. Virginia communities currently have high levels of COVID-19 transmission**."[10]

Prior to January 15, 2022, the Virginia Department of Health required all K-12 schools to have mask mandates. *State Health Comm'r Order of Public Health Emergency Statewide Requirement to Wear Masks in K-12 Schools*, Va. Dep't. of Health (Aug. 12, 2021). In addition, Virginia law, S.B. 1303, required school districts to follow CDC guidance to the extent practicable. S.B. 1303, 2021 Spec. Sess. I (Va. 2021).

**2. The Governor's Issuance of Executive Order 2**

Notwithstanding that Virginia schools are facing a surge of COVID-19 cases, Defendant Governor Youngkin, on his first day in office, issued Executive Order 2. Va. Exec. Order No. 2 (Jan. 15, 2022). The Order, which went into effect January 24, 2022, provides in pertinent part, "The parents of any child enrolled in a [sic] elementary or secondary school or a school based early childcare and educational program may elect for their children not to be subject to any mask mandate in effect at the child's school or educational program." *Id.* at ¶ 2.

Executive Order 2 is thus a blanket ban on school districts requiring mask use. *Id.* It provides for no exceptions. *Id.* It applies regardless of the narrow scope of a mask mandate (e.g., requiring masks only when students are in classrooms, cafeterias, and other group spaces). *Id.* And it forbids school districts from even asking if parents have a reason for declining to have their child wear a mask. *Id.* at ¶ 3.

---

[10] *Protect Your Health: Mask Requirements and Recommendations*, Virginia Dept. of Health (emphasis in original), https://www.vdh.virginia.gov/coronavirus/protect-yourself/mask-requirements-and-recommendation/ (last visited Feb. 8, 2022).

Following issuance of Executive Order 2, the Virginia Departments of Education and Health, led by Defendants Balow and Greene, rescinded prior guidance calling for universal masking,[11] replacing it with new guidance making no recommendation regarding masks.[12]

### 3. School Districts' Responses to Executive Order 2

Prior to Executive Order 2, all Virginia schools were required by the Health Commissioner's Order to require mask-wearing. As of February 9, 2022, in response to Executive Order 2 and corresponding Departments of Health and Education guidance, 60 school districts had rescinded their mask mandates. 72 had maintained their mask mandates. One maintained its mask mandate only temporarily. Ex. 13 (Decl. of Marie Bauer).

Many school districts that rescinded their mask mandates did so explicitly in response to Executive Order 2. For example,

- Cumberland County Public Schools, attended by J.D., states: "Cumberland County Public Schools (CuCPS) is following a universal mask mandate as required by Senate Bill 1303. However, on January 15, 2022, Governor Youngkin issued an executive order mandating that parents/guardians be allowed to opt their children out of the mask mandate, beginning January 24, 2022."[13]

- Chesapeake Public Schools, attended by C.B., states: "Masking Guidance. In accordance with Governor Youngkin's Executive Order Number Two that becomes effective

---

[11] Interim Guidance for COVID-19 Prevention in Virginia PreK-12 Schools, Va. Dep't. of Health and Va. Dep't. of Education at 5 (updated July 2021) (recommending following CDC guidance, including consistent and correct use of masks).

[12] *See* Interim Guidance for COVID-19 Prevention in Virginia PreK-12 Schools, Va. Dep't. of Health and Va. Dep't. of Education at 10 (Jan. 21, 2022), https://www.vdh.virginia.gov/content/uploads/sites/182/2021/03/Interim-Guidance-to-K-12-School-Reopening.pdf (last visited Feb. 8, 2022).

[13] *Live Feed*, CUMBERLAND COUNTY PUBLIC SCHOOLS, https://www.cucps.k12.va.us/live-feed (last visited Feb. 8, 2022).

Monday, January 24, 2022, parents and guardians of Chesapeake Public Schools (CPS) students may choose if their child wears a mask in school. No documentation is required. ... It is important to note that we will not be able to accommodate requests for class changes or special seating assignments due to mask preference."[14]

- Chesterfield County Schools, attended by G.D., states: "The Chesterfield County School board met on Tuesday, Jan. 25. During this meeting, the board voted 3-2 to approve a motion "to amend its existing COVID-19 Mitigation Plan to include providing parental choice for face masks, and implementing the new Interim Guidance for COVID-19 prevention in Virginia PreK-12 schools as set forth by the Virginia Department of Education and the Virginia Department of Health on Jan. 21, 2022. This change will be effective, Thursday, Jan. 27, 2022."[15]

- Bedford County Schools, attended by R.M., states: "The Bedford County School Board voted at the January 13, 2022, board meeting to update the division's Health and Safety Mitigation Plan, effective February 1, 2022, to make masking optional for students, other than during bus transportation as required by federal regulation, and to discontinue contact tracing. At a special called meeting last night, January 20, 2022, the School Board voted to change the date for implementation to January 24, 2022."[16]

---

[14] Nathan Crawford and Michelle Wolf, *Chesapeake School Board votes to remove universal mask mandate in alignment with Youngkin's executive order*, WAVY.COM, (Feb. 8, 2022, 6:09 PM EST).

[15] *COVID-19 Guidance*, CHESTERFIELD COUNTY PUBLIC SCHOOLS, https://mychesterfieldschools.com/project-restart/covid-19-guidance/ (last visited Feb. 8, 2022).

[16] *BCPS Health and Safety Mitigation Plan Update*, BEDFORD COUNTY PUBLIC SCHOOLS, https://p2cdn4static.sharpschool.com/UserFiles/Servers/Server_1057178/File/Parents_Students/ COVID-19_Information/BCPS_Health_%20and_Safety_Mitigation_Plan_2021-2022_(Revised_1_24_22).pdf  (last visited Feb. 8, 2022).

**4.   A State Court Enjoined the Enforcement of Executive Order 2 for Seven School Districts, But the Defendants Continue Trying to Enforce the Order**

Seven school boards filed suit challenging Executive Order 2 as *ultra vires* under state law on January 24, 2022.[17] On February 4, 2022, a state court held that Executive Order 2 violates state law and that the seven school board Plaintiffs are entitled to an injunction barring the Governor from enforcing the Executive Order in their districts. Memorandum Op., *Alexandria City Sch. Bd. v. Youngkin*, No. CL22000224-00 (Arlington Cnty. Cir. Ct. Feb. 4, 2022).

Nevertheless, the Governor and other Defendants have not backed away from their attempts to enforce Executive Order 2 beyond those districts. For instance, on February 2, 2022, state officials (including the Governor and Superintendent) represented by the Attorney General, moved to intervene in a separate state court lawsuit brought by parents of Loudoun County public school students arguing that their school district must, under Executive Order 2, eliminate its mask mandate.[18] That motion states "Governor Youngkin concluded that intervention in this matter is necessary to enforce EO 2 . . . ."[19] The motion requests that the court order the defendant school district to rescind its mask mandate.[20]

Even after the Arlington County Circuit Court ruled that Executive Order 2 was beyond the Governor's authority and contrary to state law,[21] the Governor and Superintendent have not withdrawn their request to intervene in the Loudoun County lawsuit, where Plaintiffs L.R. and

---

[17] *See* Washington Post, *Seven school boards sue to stop Gov. Youngkin's mask-optional order on the day it takes effect* (Jan. 24, 2022), https://www.washingtonpost.com/education/2022/01/24/youngkin-masking-order-takes-effect/ (last visited Feb. 8, 2022).

[18] Mot. for Leave to Intervene by Intervenor-Plaintiff the Commonwealth of Virginia, *Barnett v. Loudoun Cnty. Sch. Bd.*, No. 22-546 (Loudoun Cnty. Cir. Ct. Feb. 2, 2022).

[19] *Id*. at 4.

[20] *Id*. at 23.

[21] *Alexandria City Sch. Bd. v. Youngkin*, No. CL220000224-00, -01, (Arlington Cnty. Cir. Ct.).

I.C. attend, and have asserted their intention to appeal and "never stop fighting" for Executive Order 2.[22] Plaintiffs' school districts need the certainty of a court order making clear that they have the authority to provide students with disabilities the accommodation of requiring masking if needed.

### 5. The Ongoing Harm to Plaintiffs

"Children with underlying medical conditions are more at risk for severe illness from COVID-19 compared with children without underlying medical conditions."[23] These conditions include cancer, chronic kidney disease, chronic lung diseases, including moderate to severe asthma and cystic fibrosis, diabetes, Down syndrome, heart conditions, obesity, sickle cell disease, and weakened immune systems. *See* Ex. 12 ¶¶28-32 (Decl. of Dr. Frederic Garner).[24] And research and experience have shown that masking is an effective measure to prevent the spread of COVID-19. *See* Ex. 12, ¶¶ 32-39, ¶¶ 40-43 (Decl. of Dr. Frederic Garner). *See also*

---

[22] *School Boards Granted Temporary Ruling Against Virginia Governor's Mask Order* (Feb. 4, 2022), https://www.nbcwashington.com/news/coronavirus/coronavirus-kids/judge-sides-with-school-boards-on-virginia-governors-masks-order/2961330/ (last visited Feb. 7, 2022). In addition, the Lieutenant Governor has indicated that Executive Order 2 may also be enforced through withdrawal of funds from noncomplying school districts, in addition to through legal action. *See* Fox News, *Winsome Sears Reflects on MLK Day: I am proof that we are progressing,* at 4:45 et seq. (Jan. 17, 2022), https://video.foxnews.com/v/6292268337001#sp=show-clips (last visited Feb. 8, 2022); WUSA9, *VERIFY: Can Gov. Youngkin strip Virginia schools of state funding to enforce his executive order* (Jan. 19, 2022) ("The governor's spokesperson said he will use 'the tools available.'"), https://www.wusa9.com/article/news/verify/governor-youngkin-threatens-strip-schools-of-state-funding-to-enforce-his-executive-order-on-masksto/65-348a8b80-a483-44a4-bd18 (Last visited Feb. 8, 2022).
[23] *Covid-19 Vaccines for Children & Teens: Why Children and Teens Should Get Vaccinated for COVID-19*, CDC (Jan. 11, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/children-teens.html (last visited Feb. 8, 2022).
[24] *Medical Conditions,* CDC (Dec. 14, 2022), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 8, 2022). *See also Id.* Additional Information on Children and Teens ("Current evidence suggests that children with medical complexity, with genetic, neurologic, or metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19.").

*Coronavirus Masking in Public*, American Medical Association ("AMA"), https://www.ama-assn.org/topics/coronavirus-masking-public ("public masking during the COVID-19 pandemic is one of the most effective measures we can take to contain the spread of the virus.") (Last visited Feb. 8, 2022).

Each Plaintiff in this case has a disability that places them at high risk of becoming severely ill if they contract COVID-19. *See* Ex. 12, ¶¶ 28-31 (Decl. of Dr. Frederic Garner).

- C.S. is eight years old and has leukemia and is immunosuppressed due to chemotherapy and a bone marrow transplant. His cancer treatment prevents him from being vaccinated at this time. Even a mild case of COVID-19 could have long-term effects for C.S., as it would interrupt his cancer treatment. Ex. 1 (Decl. of Christopher Seaman and Elizabeth Allison Lyons);

- J.N., J.D. and R.M. are 10, 7, and 14, respectively, and have cystic fibrosis, which is a progressive disease that affects lung function and susceptibility to infections. Ex. 2 (Decl. of Tasha Nelson); Ex. 5 (Decl. of Meghan DuFrain); Ex. 7 (Decl. of Brian Mulligan);

- B.B. is 11 years old and has lung disease and is immunocompromised. A COVID-19 infection would put him at risk of hypoxia and hospitalization. Ex. 3 (Decl. of Elizabeth Burnett);

- G.D. has Pediatric Autoimmune Neuropsychiatric Disorder, an autoimmune disease, and asthma. As a result, he is immunocompromised. Ex. 4 (Decl. of Lindsey Dougherty);

- Q.O. is 13 and has Down syndrome, Celiac, and liver disease. Ex. 6 (Decl. of Denille Francis);

- I.C. is 13 and has lung disease and one lung is half the size of the other. As a result, he is severely prone to infections. Ex. 8 (Decl. of Kimberly Crawley);

- C.B. is 4 years old and has a reactive airway disease that requires use of an inhaler and breathing treatments. Ex. 9 (Decl. of L.W.);

- J.M. is 10 and has Type 1 diabetes and depression. Ex. 10 (Decl. of R.M.); and

- L.R. is 17 and has end-stage renal disease, two kidney transplants, diabetes, and a blood clotting disease. She has to take immunosuppressant medication. She also carries the Epstein-Barr virus and could develop potentially fatal post-transplant lymphoproliferative disease if she contracts COVID-19. Ex. 11 (Decl. of K.R.).

Every school district the Plaintiffs attend has experienced a recent spike in COVID-19 cases, leading to the highest rates of COVID-19 in each district since the beginning of the pandemic.

C.S. attends school in the Virginia Department of Health Blue Ridge Health District. The rate of COVID-19 cases in the district is 10,525 per 100,000 children since July 9, 2021. In that time, there have been 5,197 confirmed cases of COVID-19 among children aged 0-17, and 28 children with COVID-19 have been hospitalized.[25] The district has been experiencing a recent spike in COVID-19 cases in children. For the first four full weeks of 2022, there were 2341 cases for ages 0-19. The current surge represents the highest rate of COVID-19 among children in the district since the beginning of the COVID-19 pandemic.[26]

J.N. attends school in the Virginia Department of Health Prince William Health District. This district has one of the highest rates of COVID-19 among children in Virginia. The rate of

---

[25] COVID19 in Virginia: Cases Among Children: Count of Cases by Health District, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-amongchildren/ (last visited Feb. 9, 2022).
[26] COVID-19 in Virginia: Weekly Health District Case Data, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-thenumbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Feb. 9, 2022).

COVID-19 cases since July 9, 2021 is 9,091 per 100,000 children. In that time, there have been 12,876 confirmed cases of COVID-19 among children aged 0-17 and 300 children with COVID-19 have been hospitalized.[27] The district has been experiencing a recent spike in COVID-19 cases in children. For the first four full weeks of 2022, there were 3914 cases for ages 0-19. The current surge represents the highest rate of COVID-19 among children in the district since the beginning of the COVID-19 pandemic.[28]

B.B. attends school in the Virginia Department of Health Henrico Health District. The district has one of the highest rates of COVID-19 among children in Virginia. The rate of COVID-19 cases in the district since July 9, 2021 is 12,071 per 100,000 children. In that time, there have been 8,993 confirmed cases of COVID-19 among children aged 0-17 in the district and 15 children with COVID-19 have been hospitalized.[29] The district has been experiencing a recent spike in COVID-19 cases in children. For the first four full weeks of 2022, there were 3,214 cases for ages 0-19. The current surge represents the highest rate of COVID-19 among children in the district since the beginning of the COVID-19 pandemic.[30]

G.D. attends school in the Virginia Department of Health Chesterfield Health District. The district has one of the highest rates of COVID-19 among children in Virginia. The rate of

---

[27] *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Feb. 9, 2022).

[28] *COVID-19 in Virginia: Weekly Health District Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/seethe-numbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Feb. 9, 2022).

[29] *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-amongchildren/ (last visited Feb. 9, 2022).

[30] *COVID-19 in Virginia: Weekly Health District Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-thenumbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Feb. 9, 2022).

COVID-19 cases in the district since July 9, 2021 is 11,604 per 100,000 children. In that time, there have been 10,903 confirmed cases of COVID-19 among children aged 0-17, 17 children with COVID-19 have been hospitalized and one child died.[31]The district has been experiencing a recent spike in COVID-19 cases in children. For the first four full weeks of 2022 there were 3846 cases for ages 0-19. The current surge represents the highest rate of COVID-19 among children in the Chesterfield Health District since the beginning of the COVID-19 pandemic.[32]

J.D. attends school in the Virginia Department of Health Piedmont Health District. The rate of COVID-19 cases in the district since July 9, 2021 is 10,937 per 100,000 children. In that time, there have been 2,089 confirmed cases of COVID-19 among children aged 0-17 in the district and 7 children with COVID-19 have been hospitalized.[33]The district has been experiencing a recent spike in COVID-19 cases in children. For the first four full weeks of 2022, there were 795 cases for ages 0-19. The current surge represents the highest rate of COVID-19 among children in the Piedmont Health District since the beginning of the COVID-19 pandemic.[34]

Q.O. attends school in the Virginia Department of Health Peninsula Health District. The district has one of the highest rates of COVID-19 among children in Virginia. The rate of

---

[31] *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-amongchildren/ (last visited Feb. 9, 2022).

[32] *COVID-19 in Virginia: Weekly Health District Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/seethe-numbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Feb. 9, 2022).

[33] *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Feb. 9, 2022).

[34] COVID-19 in Virginia: Weekly Health District Case Data, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-thenumbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Feb. 9, 2022).

COVID-19 cases in the district since July 9, 2021 is 10,246 per 100,000 children. In that time, there have been 7,913 confirmed cases of COVID-19 among children aged 0-17 in the district. and 73 children with COVID-19 have been hospitalized.[35] The district has been experiencing a recent spike in COVID-19 cases in children. For the first four full weeks of 2022, there were 2794 cases for ages 0-19. The current surge represents the highest rate of COVID-19 among children in the Peninsula Health District since the beginning of the COVID-19 pandemic.[36]

R.M. attends the Bedford County Public School District, located in the Virginia Department of Health Central Virginia Health District. The rate of COVID-19 cases in the district since August 27, 2021 is 9,833 per 100,000 children. In that time, there have been 5,080 confirmed cases of COVID-19 among children and 13 children with COVID-19 have been hospitalized.[37] The district has been experiencing a recent spike in COVID-19 cases in children. For the first four full weeks of 2022, there were 1762 cases for ages 0-19. The current surge represents the highest rate of COVID-19 among children in the Central Virginia Health District since the beginning of the COVID-19 pandemic.[38]

Both C.B. and J.M. attend schools in the Virginia Department of Health Chesapeake Health District. The rate of COVID-19 cases in the district since July 9, 2021 is 10,144 per

---

[35] *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-amongchildren/ (last visited Feb. 9, 2022).

[36] *COVID-19 in Virginia: Weekly Health District Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-thenumbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Feb. 9, 2022).

[37] *COVID19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-amongchildren/ (last visited Feb. 9, 2022).

[38] *COVID-19 in Virginia: Weekly Health District Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-thenumbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Feb. 9, 2022).

100,000 children. In that time, there have been 6,057 confirmed cases of COVID-19 among children and 16 children with COVID-19 have been hospitalized.[39] The district has been experiencing a recent spike in COVID-19 cases in children. For the first four full weeks of January 2022 there were 2315 cases for ages 0-19. The current surge represents the highest rate of COVID-19 among children in the Chesapeake Health District since the beginning of the COVID-19 pandemic.[40]

I.C. and L.R. both attend school in the Virginia Department of Health Loudoun Health District. The district has one of the highest rates of COVID-19 among children in Virginia. The rate of COVID-19 cases in the district since July 9, 2021 is 8,365 per 100,000 children. In that time, there have been 9,697 confirmed cases of COVID-19 among children and 22 children with COVID-19 have been hospitalized.[41] The district has been experiencing a recent spike in COVID-19 cases in children. For the first four full weeks of January 2022 there were 2754 for ages 0-19. In addition, the case numbers for children age 0-19 are the highest of any age group.

Executive Order 2 puts these parents in the impossible situation of having to choose between the health and life of their child and educating their child. Thus, Defendants' actions will have the effect of either placing children with disabilities in imminent danger or unlawfully forcing them out of the public school system.

---

[39] *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-amongchildren/ (last visited Feb. 9, 2022).
[40] *COVID-19 in Virginia: Weekly Health District Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-thenumbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Feb. 9, 2022).
[41] *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/seethe-numbers/covid-19-data-insights/cases-among-children/ (last visited Jan. 31, 2022).

**LEGAL STANDARD**

The Court applies the same four factors to determine whether a temporary restraining order or preliminary injunction is warranted: (1) the likelihood of success on the merits, (2) whether the movant will face irreparable harm in the absence of preliminary relief, (3) whether the balance of equities favors preliminary relief, and (4) whether an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009). All four factors merit injunctive relief here.

**ARGUMENT**

**I.      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS**

   **A.      Defendants are Discriminating Against Students with Disabilities in Violation of Federal Law.**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Likewise, Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Because the language of Title II of the ADA and Section 504 of the Rehabilitation Act are "substantially the same," courts "apply the same analysis to both." *Doe v. Univ. of Maryland Med. Sys.*, 50 F.3d 1261, 1265 n.9 (4th Cir. 1995); *accord Taliaferro v. N. Carolina State Bd. of Elections*, 489 F. Supp. 3d 433, 437 (E.D.N.C. 2020) ("Claims under the ADA's Title II and the Rehabilitation

18

Act can be combined for analytical purposes because the analysis is substantially the same.")
(citations and internal quotation marks omitted).

The ADA and Section 504 prohibit discrimination against a disabled person by reason of the person's disability. *See* 42 U.S.C. § 12132. Together, the ADA and Section 504 require public entities, including public school districts and state school systems, to afford students with disabilities, an equal opportunity to participate in or benefit from any aid, benefit, or service provided to others. 28 C.F.R § 35.130(b)(1), 34 C.F.R. §104.4(b)(ii).

A public school system cannot provide different benefits or services to individuals with disabilities than are provided to others unless doing so is necessary to serve the individuals with disabilities as effectively as others. 28 C.F.R. § 35.130(b)(1)(iv). Nor can a public entity otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others. 28 C.F.R. § 35.130(b)(1)(vii). Public entities are also prohibited from using criteria that have the effect of discriminating against people with disabilities. 28 C.F.R. § 35.130(b)(3); 28 C.F.R. § 35.130(b)(8).

In addition, state and local governments must provide services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. 28 C.F.R. § 35.130(d). As the Fourth Circuit has explained:

> [A] state that decides to provide . . . services must do so "in the most integrated setting appropriate to the needs of qualified individuals with disabilities," 28 C.F.R. § 35.130(d). Pursuant to federal regulations, the "most integrated settings" are those that "enable[] individuals with disabilities to interact with nondisabled persons to the fullest extent possible." 28 C.F.R. pt. 35, app. B.

*Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013).

Finally, and significantly, public entities, such as state governments and school districts, are required to make reasonable modifications to their policies, practices, and procedures when necessary to afford individuals with disabilities equal access. 28 C.F.R. § 35.130(b)(7).

By their implementation of Executive Order 2, Defendants are violating the ADA and Section 504. They are doing so by denying disabled students the opportunity to participate in or benefit from public education, 28 C.F.R. § 35.130(b)(1)(i); affording disabled students unequal opportunity in public school, 28 C.F.R. § 35.130(b)(1)(ii); discriminating against students with disabilities, 28 C.F.R. § 35.130; failing to make reasonable modifications to ensure students with disabilities can be safely educated in the public schools, 28 C.F.R. § 35.130(b)(7); administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and impairing accomplishment of the objectives of the state's education program with respect to individuals with disabilities, 28 C.F.R. § 35.130(b)(3); and subjecting students with disabilities to the risk of segregation by forcing them to be educated at home, away from their peers, 28 C.F.R. § 35.130(d). As set forth below, Plaintiffs readily show a likelihood of success on the merits of these claims.

To demonstrate a violation of Section 504 or Title II of the ADA, "plaintiffs must show: (1) they have a disability; (2) they are otherwise qualified to receive the benefits of a public service, program, or activity; and (3) they were denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of their disability." *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 503 (4th Cir. 2016). Here, Plaintiffs have demonstrated likelihood of success on the merits of each of these elements.

1. <u>Plaintiffs have disabilities and are otherwise qualified to receive a public education.</u>

"Disability" is defined by the ADA as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Through the ADA Amendments Act, Congress clarified that "[t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." 29 C.F.R. § 1630.1(c)(4).

Here, each Plaintiff has a disability as defined by the ADA and Section 504. *See supra* at p. 2-3. For each Plaintiff, their condition places them at high risk of contracting COVID-19 and/or heightened risk of complications if they contract COVID-19. *See supra* section 5; Ex. 12, ¶¶ 28-31 (Decl. of Dr. Frederic Garner).

Additionally, each Plaintiff is enrolled or planned to enroll in a public school and is qualified to receive the guarantee of a free public education. Ex. 1 (Decl. of Christopher Seaman and Elizabeth Allison Lyons) (C.S. attends Albemarle County Public Schools); Ex. 2 (Decl. of Tasha Nelson) (J.N. attends Manassas City Public Schools); Ex. 5 (Decl. of Meghan DuFrain) (J.D. attends Cumberland County Public Schools); Ex. 7 (Decl. of Brian Mulligan) (R.M. attends Bedford County Public Schools); Ex. 3 (Decl. of Elizabeth Burnett) (B.B. attends Henrico County Public Schools); Ex. 4 (Decl. of Lindsey Dougherty) (G.D. attends Chesterfield County Public Schools); Ex. 6 (Decl. of Denille Francis) (Q.O. attends York County Public Schools); Ex. 8 (Decl. of Kimberly Crawley) (I.C. attends Loudoun County Public Schools); Ex. 9 (Decl. of L.W.) (C.B. attends Chesapeake County Public Schools); Ex. 10 (Decl. of R.M.) (J.M. attends Chesapeake Public Schools); Ex. 11 (Decl. of K.R.) (L.R. attends Loudoun County Public Schools).

Accordingly, Plaintiffs are all qualified individuals with disabilities who meet the essential eligibility requirements for the services in question. 28 C.F.R. § 35.104; 34 C.F.R. § 104.3(l).

2.      Plaintiffs have been discriminated against by Defendants by reason of their disabilities

Defendants are "public entities" as defined by the ADA, 42 U.S.C. §12131(1)(B), and they receive federal financial assistance as defined by Section 504, 29 U.S.C. § 794; 34 C.F.R. § 104.3(h). Defendants are, therefore, subject to the requirements of the ADA and Section 504. *See* 29 U.S.C. § 794(b).

Plaintiffs are likely to succeed on the merits of their discrimination claims because Defendants' conduct in implementing Executive Order 2 violates the ADA and Section 504. Defendants violate these civil rights laws in at least four ways, any one of which suffices as grounds for injunctive relief.

*First*, Defendants are excluding, and causing school districts to exclude, Plaintiffs from participation in public education in violation of 42 U.S.C. § 12132, 28 C.F.R. § 35.130, 29 U.S.C. § 794 (a), and 34 C.F.R. 104.4 (a) & b(1), by creating an unreasonably dangerous environment for children with disabilities who are at high risk of contracting, or are susceptible to severe illness from, COVID-19, effectively excluding them from classrooms with other children and from participating in school activities with their classmates. As the Fourth Circuit has observed, under the ADA "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." *Pashby*, 709 F.3d at 321.

*Second*, Defendants are administering a policy, and causing school districts to administer a policy, that has the effect of subjecting qualified individuals with disabilities to discrimination

on the basis of disability, because the direct and necessary result of Defendants' implementation of Executive Order 2 is to exclude children with disabilities who are at high risk of contracting, or are susceptible to heightened risk of contracting severe illness from, COVID-19 from classrooms with unmasked children, and from participating in school activities with their classmates in violation of 28 C.F.R. § 35.130(b)(3) and 34 C.F.R. § 104.4(b)(4). Defendants' conduct further has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public educational program with respect to individuals with disabilities in violation of 28 C.F.R. § 35.130(b)(3) and 34 C.F.R. § 104.4(b)(4), because the objectives of public school programs are to provide safe, healthy environments for students to participate in class and school activities with other children.

*Third*, Defendants are failing to permit public entities to administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities in violation of 28 C.F.R. § 35.130(d) and 34 C.F.R. § 104.4(a) by refusing to allow school districts to provide a safe environment for their students by requiring masks to halt the spread of COVID-19. *See generally Lamone*, 813 F.3d at 505-506 (noting that one objective of the ADA is to "integrate disabled individuals into the social mainstream of American life.") (citing *PGA Tour Inc. v. Martin*, 532 U.S. 661, 675 (2001)).

*Finally*, Defendants are failing to make reasonable modifications, and preventing school districts from making reasonable modifications, in violation of 28 C.F.R. § 35.130(b)(7) because they are prohibiting schools from implementing mask policies that are necessary for their students with disabilities to safely attend school. As the Fourth Circuit has held, a "`public entity shall make reasonable modifications in policies, practices, or procedures when the modifications

are necessary to avoid discrimination on the basis of disability.'" *Lamone*, 813 F.3d at 507

(quoting 28 C.F.R. § 35.130(b)(7)).

For these reasons, courts repeatedly have found that comparable anti-masking orders and

laws run afoul of the ADA and Section 504. *E.g.*, *Arc of Iowa v. Reynolds*, 2022 WL 211215 at

*2 (8th Cir. Jan. 25, 2022); *G.S. v. Lee*, 2021 WL 4268285 (W.D. Tenn. Sept. 17, 2021); *S.B. v.*

*Lee*, 2021 WL 4755619 (E.D. Tenn. Oct. 12, 2021); *R.K. v. Lee*, 2021 WL 4942871 (M.D. Tenn.

Oct. 22, 2021); *E.T. v. Morath*, 2021 WL 5236553 (W.D. Tex. Nov. 10, 2021). This Court

should do the same.

## B.    Executive Order 2 is Preempted by Federal Law

The Supremacy Clause of the United States Constitution renders federal law the

"supreme Law of the Land." U.S. Const. art. VI, cl. 2. Under the doctrine of federal preemption,

"any state law, however clearly within a State's acknowledged power, which interferes with or is

contrary to federal law, must yield." *Felder v. Casey*, 487 U.S. 131, 138 (1988) (citing *Free v.*

*Bland*, 369 U.S. 663, 666 (1962)). State law is preempted when, among other things, it "stands as

an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress." *Pac. Gas & Elec. Co. v. State Energy Res. Cons. & Dev. Comm'n*, 461 U.S. 190, 204

(1983) (citations omitted).

Executive Order 2 is clearly preempted by the ADA and Section 504. As the Supreme

Court has noted, "if a state-imposed limitation on a school authority's discretion operates to

inhibit or obstruct" federal law requirements, "it must fail." *North Carolina State Bd. of Educ. v.*

*Swann*, 402 U.S. 43, 45 (1971) (addressing state statute, enacted in the midst of a school

desegregation case, that prohibited involuntary busing and barred the use of public funds for the

same despite a constitutional obligation to eliminate existing dual school systems). As the

Second Circuit has recognized, "[t]he natural effect of Title II's reasonable modification requirement . . . requires preemption of inconsistent state law when necessary to effectuate a required reasonable modification." *Mary Jo C. v. New York State & Loc. Ret. Sys.*, 707 F.3d 144, 163 (2d Cir. 2013), *cert. dismissed*, 569 U.S. 1040 (2013) (citations and internal quotation marks omitted). Here, Executive Order 2, by prohibiting school districts from requiring universal masking, prevents school districts from complying with their obligations under Section 504 and the ADA.

Executive Order 2 also conflicts with federal law because it frustrates Congress' purpose to ensure that local school districts have the authority to adopt public health policies, including mask requirements, to protect students and educators as they develop plans for safe return to in-person instruction. Congress has recognized the importance of implementing COVID-19 prevention measures in schools by its passage of the American Rescue Plan Act of 2021 ("ARPA"), which allocated over $2.1 billion in Elementary and Secondary School Emergency Relief ("ESSER") funding so that local school districts in Virginia can adopt plans for a safe return to in-person instruction. *See ARPA ESSER Allocation Revised,* U.S. Dep't of Educ. (June 25, 2021) https://oese.ed.gov/files/2021/06/Revised-ARP-ESSER-Methodology-and-Allocation-Table_6.25.21_FINAL.pdf (last visited Feb. 9, 2022).

Section 2001(e)(2)(Q) of ARPA expressly gives local school districts the authority to use these ARPA ESSER funds for "[d]eveloping strategies and implementing public health protocols including, to the greatest extent practicable, policies *in line with guidance from the Centers for Disease Control and Prevention* for the reopening and operation of school facilities to effectively maintain the health and safety of students, educators, and other staff." Pub. L. No. 117-2, §

2001(e)(2)(Q), 135 Stat. 4, 21 (2021) (emphasis added). As discussed above, the CDC's guidance specifically recommends universal indoor masking in all K-12 schools.

Furthermore, the Interim Final Rule adopted by the U.S. Department of Education specifically requires each local school district to adopt a plan for safe return to in-person instruction that describes "the extent to which it has adopted policies, and a description of any such policies, on each of the following safety recommendations established by the CDC . . .", including specifically "[u]niversal and correct wearing of masks." *See* Am. Rescue Plan Act Elementary and Secondary School Emergency Relief Fund, 86 Fed. Reg. 21,195, 21,200-01 (April 22, 2021). While the requirement "does not mandate that [a local educational agency] adopt the CDC guidance," it "requires that [each district] describe in its plan the extent to which it has adopted the key prevention and mitigation strategies identified in the guidance," which include both "[u]niversal and correct wearing of masks," and, notably, "appropriate accommodations for children with disabilities with respect to health and safety policies," among others. *Id.* at 21,200. The rule further provides that a local educational agency must ensure the interventions it implements will respond to the needs of all students, "and particularly those students disproportionately impacted by the COVID-19 pandemic, including . . . children with disabilities." *Id.* at 21,201. The school districts of Virginia cannot satisfy this requirement given Executive Order 2.

Executive Order 2 impermissibly conflicts with, and is preempted by, ARPA and the Interim Final Rule of the U.S. Department of Education. In particular, Executive Order 2 bars school districts from complying with the ARPA requirement that school districts adopt plans for a safe return to in-person instruction consistent with CDC guidance, including mask requirements. Rather than affording discretion to local school boards to develop and implement

26

safety protocols as envisioned by ARPA, Executive Order 2 *prohibits* local school districts from implementing precisely the type of safe return-to-school policies encouraged by ARPA. Accordingly, Executive Order 2 should be declared null and void.

### C.   Plaintiffs Have Standing to Challenge Executive Order 2

Numerous courts have found that parents have standing to challenge laws, like the Executive Order here, that would effectively deprive schools of the authority to impose mask requirements where needed to protect students with disabilities. *See, e.g.*, *G.S. v. Lee*, No. 21-cv-02552, 2021 WL 4268285 (W.D. Tenn. Sept. 17, 2021); *S.B. v. Lee*, 3:21-cv-00317, 2021 WL 4755619 (E.D. Tenn. Oct. 12, 2021); *R.K. v. Lee*, No. 3:21-cv-00725, 2021 WL 4942871 (M.D. Tenn. Oct. 22, 2021); *E.T. v. Morath*, No. 1:21-cv-717, 2021 WL 5236553 (W.D. Tex. Nov. 10, 2021). Late last month, the Eighth Circuit held that a "ban on mask requirements forces [disabled students] to forgo critical educational opportunities, including in-person learning with their peers" and "a substantial risk of bodily harm," each of which impose injuries conferring Article III standing. *Arc of Iowa v. Reynolds*, 2022 WL 211215 at *2 (8th Cir. Jan. 25, 2022). The disabled student-Plaintiffs here likewise have standing, and Defendants' inevitable efforts to evade review of the discriminatory Executive Order should be rejected.

### 1.   Plaintiffs Have Injuries, Traceable to Executive Order 2, That This Court Can Redress

Plaintiffs have standing to challenge the discrimination imposed by Executive Order 2. In order to establish standing, "a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018) (alterations and internal quotation marks omitted).

*First*, "Parents have standing to sue when practices and policies of a school threaten their rights and interests and those of their children." *Arc of Iowa*, 2022 WL 211215, at *2 (quoting *Liddell v. Special Admin. Bd. of Transitional Sch. Dist. of City of St. Louis*, 894 F.3d 959, 965-66 (8th Cir. 2018)). This includes parents who "allege an injury to their children's educational interests and opportunities." *Id.* Here, Plaintiffs documented that Executive Order 2's ban on mask requirements forces them to forgo critical educational opportunities, including in-person learning with their peers. For example, Meghan DuFrain has had to withdraw J.D. and his two siblings from in-person learning because Cumberland County Public Schools lifted their mask mandate in response to Executive Order 2. Based on advice from their pediatrician, the risk of serious illness from COVID-19 is too great to risk either J.D. or his siblings attending school with unmasked peers during the current COVID-19 surge. J.D. and his siblings are being denied educational opportunities because Cumberland County Public Schools are not offering any virtual learning at this time and J.D.'s school is not even providing him school work for his classes. *See* Ex. 5 (Decl. of Meghan DuFrain).

Other Plaintiffs demonstrated a substantial risk of bodily harm, which independently satisfies the injury requirement. *Arc of Iowa*, 2022 WL 211215, at *2. For example, C.B. is currently attending school in person, even though his school district has lifted its mask mandate in response to Executive Order 2. Because his special education related services, such as speech therapy and occupational therapy, would be stopped if he remained at home, his family had to make the difficult choice to risk COVID-19 exposure and severe illness from his reactive airway disease. Ex. 9 (Decl. of L.W.). J.M.'s family had to make a similar choice when Chesapeake City Public School Division lifted its mask mandate in response to Executive Order 2. Because virtual learning aggravates J.M.'s depression, he needs in-person school, even though he risks severe

illness from COVID-19 because of his diabetes, and even though his school has declined to implement any accommodations to protect him. Ex. 10 (Decl. of R.M.). G.D. and his sister had to withdraw from school for a week because Chesterfield Public Schools lifted their mask mandate in response to Executive Order 2 and had no alternative accommodations that could protect them from the risk of contracting COVID-19 from their unmasked peers. However, because both parents must work, G.D. and his sister have now been forced to return to school, which, because of his autoimmune disease, risks his health. Ex. 4 (Decl. of Lindsey Dougherty). And R.M. has had to stay in a school that no longer requires masking, despite the risk surrounding his cystic fibrosis, because his education suffers when he tries to learn from home. Ex. 7 (Decl. of Brian Mulligan).

Plaintiffs whose schools have not yet withdrawn their mask mandates have also suffered an injury in fact. An injury need not have already happened to satisfy the "injury in fact" requirement. "[W]e may also find standing based on a 'substantial risk' that the harm will occur, which in turn may prompt a party to reasonably incur costs to mitigate or avoid that harm." *Beck v. McDonald*, 848 F.3d 262, 275 (4th Cir. 2017); *Mayor and City Council of Baltimore v. Trump*, 416 F.Supp.3d. 452, 485 (D. Md. 2019). An "allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 n.5 (2013)); *see Lujan v. Def. of Wildlife*, 504 U.S. 555, 564 (1992); *South Carolina v. United States*, 912 F. 3d 720, 726 (4th Cir. 2019). Plaintiffs, including L.R., I.C., J.N., C.S., and B.B., are at substantial risk that their schools will withdraw the mask mandates as a predictable response to Executive Order 2 and Defendants' enforcement thereof. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019) (A plaintiff has standing to sue

for injuries caused by "the predictable effect of Government action on the decisions of third parties."). Indeed, some of the Defendants here are seeking to intervene as plaintiffs in a lawsuit against Plaintiffs L.R. and I.C.'s school district, seeking to force compliance with Executive Order 2. Mot. for Leave to Intervene by Intervenor-Plaintiff the Commonwealth of Virginia, *Barnett v. Loudoun Cty. Sch. Bd.*, No. 22-546 (Loudoun Cty. Cir. Ct. Feb. 2, 2022).

*Second*, Plaintiffs' injuries are fairly traceable to Executive Order 2. "An injury is fairly traceable to a challenged statute when there is a causal connection between the two." Here, the school districts Plaintiffs attend were content to obey S.B. 1303[42] and the Department of Health's order, requiring them to require universal masking, until the issuance of Executive Order 2. As of February 9, 2022, however, 60 school districts have rescinded their mask mandates, including the districts attended by Plaintiffs J.D., C.B., J.M., R.M., and G.D. Ex. 13 (Decl. of Marie Bauer). Most of them explicitly pointed to Executive Order 2 as the reason for their policy changes.[43]

While some school districts continue to require all students to mask in contradiction to the Executive Order's terms, Defendants continue to claim that the Order has the force of law and continue their efforts to enforce the Order, leaving the plaintiffs in those school districts in a precarious situation. Indeed, when Plaintiffs asked Defendants to confirm they will not seek to

---

[42] Senate Bill 1303 (2021 Acts of Assembly, Ch. 456), *available at* https://law.lis.virginia.gov/uncodifiedactssub/2021/session2/chapter456/ (last visited Feb. 9, 2022).

[43] *See* discussion *supra* Section 3. *See also*, for example, "The Roanoke County School Board voted to still require masks in schools, but to give parents the ability to opt out in accordance with Executive Order #2 effective February 14, 2022, unless the Supreme Court decides sooner." https://www.wdbj7.com/2022/01/28/roanoke-county-school-board-votes-4-1-make-masks-optional-beginning-feb-14/. (Last visited Feb. 9, 2022).

enforce Executive Order 2 pending litigation, they refused. Ex. 14 (Letter from Chief Deputy Attorney General Charles H. Slemp, III (Feb. 9, 2022)).

"Plaintiffs' injuries are the foreseeable result of Defendants' threatened enforcement of [Executive Order 2]: the schools and school districts have gone without mask mandates because of the law and the threat of enforcement, and Plaintiffs have been forced to choose between their children's lives and the quality of their education. Plaintiffs have shown traceability because their injuries are caused by 'the predictable effect of Government action on the decisions of third parties.'" *Arc of Iowa*, 2022 WL 211215, at *4.

*Finally*, "[a]n injury is redressable if it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 181 (2000)). As demonstrated in other mask related litigation, an order from a federal court finding a mask ban unlawful under the ADA provides school districts the certainty and ability to renew masking as needed without the threat of funding loss or other threats by public officials. *E.g.*, *Arc of Iowa*, 2022 WL 211215, at *3. Here, numerous school districts where Plaintiff children attend schools have explicitly tied their revocation of universal masking to Executive Order 2; rescission of that order will allow these schools to comply with their obligations under federal anti-discrimination laws.

### 2.    *McMaster* **is Inapposite**

The Fourth Circuit recently found that a case challenging a law prohibiting school mask mandate under the ADA should be dismissed for lack of standing. *Disability Rts. S. Carolina v. McMaster*, No. 21-2070, 2022 WL 214094 at *3 (4th Cir., Jan. 25, 2022). But that decision turned based on the fact that the government appellants there (the Governor and Attorney General) represented to the court and publicly that they would not enforce the ban. Importantly,

that injunction was upheld against the South Carolina Superintendent of Schools and the school districts (who chose not to appeal the district court's injunction).

Here, by contrast, despite being asked to do so, none of the Defendants here disavowed any plan to try to enforce Executive Order 2. *See supra*. To the contrary, the Governor, Attorney General, and Superintendent are seeking to join a lawsuit against the Loudoun County School Board, where L.R. and I.C. attend school, in order to enforce Executive Order 2. Mot. for Leave to Intervene by Intervenor-Plaintiff the Commonwealth of Virginia, *Barnett v. Loudoun Cty. Sch. Bd.*, No. 22-546 (Loudoun Cty. Cir. Ct. Feb. 2, 2022).

Finally, in *McMaster*, the Fourth Circuit observed that the Supreme Court of South Carolina made clear that the law at issue "does not prohibit a school district from imposing a mask mandate" in certain circumstances. *McMaster,* 2022 WL 214094 at *5. But Executive Order 2, by purporting to make it impossible for school districts to require all students to mask, does exactly that.

## II.  PLAINTIFFS WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION.

Plaintiffs need only demonstrate that irreparable harm "is *likely* in the absence of an injunction." *Winter v. Nat. Res. Def. Council,* 555 U.S. 7, 22 (2008) (emphasis added). A harm need not be inevitable or have already happened for it to be irreparable; rather, imminent harm is also cognizable harm that merits an injunction. *See Helling v. McKinney*, 509 U.S. 25, 33 (1993). Here, Plaintiffs can show three types of irreparable harm that flow directly from Defendants' implementation of Executive Order 2.

*First*, Executive Order 2 causes irreparable harm because it violates federal disability civil rights laws. Where a "defendant has violated a civil rights statute," courts "presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation." *Silver Sage*

*Partners, Ltd. v. City of Desert Hot Springs,* 251 F.3d 814, 827 (9th Cir. 2001) (citing cases); *see also Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir. 1984) ("[I]rreparable injury may be presumed from the fact of discrimination and violations of fair housing statutes"); *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 407 (D. Md. 2011) (quoting *Pathways Psychosocial Support Ctr., Inc. v. Town of Leonardtown,* 223 F.Supp.2d 699, 717 (D. Md. 2002) (noting that, for purposes of an injunction, "irreparable harm can be presumed from a violation of civil rights' statutes such as the ADA"); *Duke v. Uniroyal, Inc.,* 777 F.Supp. 428, 433 (E.D.N.C. 1991) (noting that '[t]he purpose of the presumption of irreparable injury in civil rights cases is to afford plaintiffs relief in areas where injury is difficult to establish."). *Cf. Stinnie v. Holcomb*, 355 F.Supp.3d 514, 532 (W.D.Va. 2018) (violation of constitutional rights creates presumption of irreparable harm). Thus, Defendants' violation of the ADA and Section 504, alone, gives rise to a presumption of irreparable injury.

*Second*, Plaintiffs are experiencing, and will continue to experience, additional irreparable injuries because of Executive Order 2. The first is heightened exposure to a deadly viral contagion. Courts throughout the country have repeatedly found that exposure to a life-threatening virus, or one that can cause life-long complications such as COVID-19, is an irreparable harm that cannot be remedied at law. *See, e.g., Arc of Iowa v. Reynolds*, 4:21-cv-00264, 2021 WL 4166728 at *9 (S.D. Iowa Sept. 13, 2021) ("Because Plaintiffs have shown that Iowa Code section 280.31's ban on mask mandates in schools substantially increases their risk of contracting the virus that causes COVID-19 and that due to their various medical conditions they are at an increased risk of severe illness or death, Plaintiffs have demonstrated that an irreparable harm exists"); *G.S. by and through Schwaigert v. Lee*, 2022 W.L. 4268285 at *12 (W.D.Tn. 2021) (finding irreparable injury when "'without the ability to implement a universal mask

mandate, Plaintiffs will continue to be exposed to an increased risk of infection, hospitalization, or death because of COVID-19, or they will be forced to stay home and denied the benefits of an in-person public education."); *Chatman v. Otani*, 2021 WL 2941990 at *19-20 (D. Hawaii 2021); *Coreas v. Bounds,* 451 F. Supp. 3d 407, 428-29 (D. Md. 2020) (finding COVID-19 exposure risks irreparable harm); *Banks v. Booth*, 459 F. Supp. 3d 143, 158-59 (D.D.C. 2020) (same); *Peregrino Guevara v. Witte,* No. 6:20-CV-01200, 2020 WL 6940814, at *8 (W.D. La. Nov. 17, 2020) (noting that "[i]t is difficult to dispute that an elevated risk of contracting COVID-19 poses a threat of irreparable harm").

Furthermore, when the risk of contraction or serious infection is augmented due to a person's disability, including an underlying health condition, emergency injunctive relief is necessary. *Thakker v. Doll*, 451 F. Supp. 3d 358, 362, 365 (M.D. Pa. 2020) (in granting an injunction to release petitioners in civil detention who suffered from "chronic medical conditions and face[d] an imminent risk of death or serious injury if exposed to COVID-19," court determined that "[t]here [could] be no injury more irreparable" than the "very real risk of serious, lasting illness or death"); *Basank v. Decker*, No. 20 Civ. 2518 (AT), 2020 WL 1953847, at *7 (S.D.N.Y. Apr. 23, 2020) (in granting an injunction to prevent placing petitioners in immigration detention, court noted that "[p]etitioners [were] at particular risk for serious illness or death, because their preexisting medical conditions either [made] them more vulnerable to contracting COVID-19, or more likely to develop serious complications due to COVID-19, or both" and the possibility of a severe, and "quite possibly fatal" infection constituted irreparable harm that warranted a preliminary injunction). Plaintiffs in the case are all students with disabilities and complex medical conditions that place them at heightened risk of serious consequences from COVID-19. *See* discussion *supra* at 10-11. Plaintiffs like C.B. and J.M., who are still attending

school despite their school district's lifting the mask mandate in response to Executive Order 2, are at such particularized risk. Exs. 9, 10 (Decls. of L.W. and R.M.).

Several parents, given the heightened risks posed by COVID-19 to Plaintiffs, have opted to temporarily remove their child from public school. *See* Ex. 5 (Decl. of Meghan DuFrain). But that merely substitutes one irreparable harm for another. The loss of educational opportunities is a paradigmatic example of irreparable harm, as it is both intangible and deeply damaging. *See, e.g., Issa v. School Dist. of Lancaster*, 847 F.3d 121, 142 (3d Cir. 2017) ("[E]ven a few months in an unsound program can make a world of difference in harm to a child's educational development") (citing *Nieves-Marquez v. Puerto Rico*, 53 F.3d 108, 121-22 (1st Cir. 2003)) (internal quotation marks omitted); *see generally Faulkner v. Jones*, 10 F.3d 226, 233 (4th Cir. 1993) (affirming preliminary injunction against Citadel's policy of excluding women students). "[T]he gravity of the harm is vast and far reaching" when a child is deprived of his or her education." *Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 958 (11th Cir. 2005) (citing *Brown v. Board of Educ.*, 347 U.S. 483, 493 (1954) ("[E]ducation is perhaps the most important function of state and local governments" because "it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education.")).

On those grounds, numerous courts have issued preliminary injunctions in order to immediately stop the irreparable harm deriving from a child's absence in school. *See, e.g., Alejandro v. Palm Beach State Coll.*, 843 F. Supp. 2d 1263, 1270-71 (S.D. Fla. 2011) (concluding that missing school classes constitutes irreparable harm and granting temporary injunctive relief); *Borough of Palmyra Bd. of Educ. v. F.C. ex rel. R.C.*, 2 F. Supp. 2d 637, 645 (D.N.J. 1998) (holding that the loss of an appropriate education is an irreparable harm under preliminary injunction analysis).

Without emergency relief from this Court, Plaintiffs—and many others like them—will be forced to decide which irreparable injury they would rather endure: an imminent risk of infection for their child with a disability, or the exclusion, segregation, and deprivation of services that will result from being removed from school. The Court has authority to spare Plaintiffs from this cruel choice, and the law weighs heavily in favor of it doing so.

### III.    THE BALANCE OF THE EQUITIES WEIGHS HEAVILY IN PLAINTIFFS' FAVOR AND THE INJUNCTION SERVES THE PUBLIC INTEREST

The balance of equities tips decisively in favor of the Plaintiffs and an injunction is undoubtedly in the public interest. When the Defendants are governmental actors, these two factors merge and are properly considered together. *Roe v. Dep't of Defense*, 947 F.3d 207, 230 (4th Cir. 2020) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)); *Taliaferro*, 489 F. Supp. 3d at 438 ("The Court considers the public interest and the balance of the equities together.").

Congress has mandated that the public interest requires equal treatment for persons with disabilities, thereby maximizing their integration and independence. An injunction here supports that public interest. *Taliaferro*, 489 F. Supp. 3d at 439 ("[T]he public interest does not lie with enforcement of those state procedures which violate the laws which Congress has passed to prevent discrimination based upon disability." (Citing *Lamone*, 813 F.3d at 508.)). It is against the public interest to allow a state to continue to violate federal law, because the Supremacy Clause requires that federal law be paramount.

Granting a temporary restraining order and preliminary injunction will not only protect Plaintiffs, but will protect all students in the Virginia public school system. Ex. 12 at ¶ 8 (Decl. of Dr. Frederic Garner). It is in the public's best interest for its local government and school boards to have full authority to respond to the needs of their citizenry by taking into account

county-wide infection and hospitalization rates, available resources, vaccination rates, public opinion, and the other factors that guide public policy during a pandemic.

The only hardship that Defendants may suffer from a temporary restraining order and preliminary injunction is disappointment by certain constituents who are opposed to mask mandates. Indeed, given that the Executive Order is preempted by federal law for the reasons set forth above, enjoining its enforcement will not subject Defendants to any undue hardship or penalty, because the temporary restraining order and preliminary injunction will require only Defendants' compliance with federal law they are already obligated to follow. *See Roe v. Dep't of Defense,* 947 F.3d 207, 230-31 (4th Cir. 2020) ("As to the public interest, the district court observed the public 'undoubtedly has an interest in seeing its governmental institutions follow the law'") (Citations omitted); *Greyhound Lines, Inc. v. City of New Orleans ex rel. Dep't of Pub. Utils.*, 29 F. Supp. 2d 339 (E.D. La. 1998) (*citing Mitchell v. Pidcock*, 299 F.2d 281, 287 (5th Cir. 1962)).

## CONCLUSION

Plaintiffs, on behalf of their children with disabilities, respectfully request that this Court immediately enjoin the Governor, Attorney General, and Superintendent from enforcement of Executive Order 2 against Albemarle County, Manassas City, Henrico County, Chesterfield County, Cumberland County, Bedford County, Chesapeake County, Loudoun, and Chesapeake City public school districts,[44] and allow Virginia school districts the discretion to ensure each of

---

[44] Fairfax County Public Schools, attended by R.K., are already subject to an injunction against Executive Order 2 in *Alexandria City Sch. Bd. v. Youngkin*, No. CL22000224-00 (Arlington Cnty. Cir. Ct. Feb. 4, 2022). Therefore, S.K. does not seek emergency relief on behalf of R.K. at this time. However, S.K. and R.K. reserve their right to seek emergency injunctive relief in the event the state court injunction is lifted.

their students receives an equal opportunity to benefit from public education – without

jeopardizing their safety.


Dated:  February 10, 2022

Respectfully submitted,

/s/ Eden B. Heilman
Eden B. Heilman (Va. Bar No. 93554)
Matthew Callahan (*pro hac vice* to be filed)
Monique Gillum (*pro hac vice* to be filed)
American Civil Liberties Union (ACLU)
Foundation of Virginia
701 E. Franklin St., Suite 1412
Richmond, VA 23219
Tel: (804) 644-8022
Fax: (804) 649-2733
eheilman@acluva.org
mcallahan@acluva.org
mgillum@acluva.org

Eve L. Hill (VA Bar # 96799)
Sharon Krevor-Weisbaum (*pro hac vice* to be filed)
Jessica Weber (*pro hac vice* to be filed)
Brown Goldstein Levy LLP
120 E. Baltimore Street, Suite 2500
Baltimore, MD 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
EHill@browngold.com
skw@browngold.com
jweber@browngold.com

Steven M. Traubert (Va. Bar #41128)
Kerry M. Chilton (Va. Bar #90621)
disAbility Law Center of Virginia
1512 Willow Lawn Drive, Suite 100
Richmond, Virginia 23230
(804)225-2042
steven.traubert@dLCV.org
kerry.chilton@dLCV.org

Ian S. Hoffman (VA Bar #75002)
John A. Freedman (*pro hac vice* to be filed)

Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, DC  20001
Tel: (202) 942-5000
Fax: (202) 942-5999
Ian.Hoffman@arnoldporter.com
John.Freedamn@arnoldporter.com

Kaitlin Banner (*pro hac vice* to be filed)
Margaret Hart (*pro hac vice* to be filed)
Marja K. Plater (*pro hac vice* to be filed)
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS 700 14th Street, NW, Suite 400
Washington, DC 20005 Phone: (202) 319-1000
Fax: (202) 319-1010
kaitlin_banner@washlaw.org
margaret_hart@washlaw.org
marja_plater@washlaw.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of February 2022, I filed the foregoing document

with the Clerk of Court using the CM/ECF system, and I hereby certify that I have mailed by

United States Postal Service the document to the following non-CM/ECF participants:

> Commonwealth of Virginia
> Secretary of the Commonwealth
> 1111 E. Broad St., #4
> Richmond, VA 23219
>
> Governor Glenn Youngkin
> Office of the Governor
> P.O. Box 1475
> Richmond, VA 23218
>
> Attorney General Jason Miyares
> Office of the Attorney General
> 202 North Ninth Street
> Richmond, VA 23219
>
> Jillian Balow
> Virginia Superintendent of Public Instruction
> James Monroe Building
> 101 N. 14th Street
> Richmond, VA 23219
>
> Colin Greene
> Acting Virginia Health Commissioner
> Virginia Department of Health
> 109 Governor Street
> Richmond, VA 23219

 

        */s/ Eve L. Hill*
        Eve L. Hill (VA Bar # 96799)
        Brown Goldstein Levy LLP
        120 E. Baltimore Street, Suite 2500
        Baltimore, MD 21202
        Tel: (410) 962-1030
        Fax: (410) 385-0869
        EHill@browngold.com