**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

| | |
|---|---|
| CHRISTOPHER SEAMAN, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> The COMMONWEALTH OF VIRGINIA, *et al.*, <br><br> Defendants. | **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** <br><br><br> Case No. 3:22-cv-00006-NKM |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**(Violation of the Americans with Disabilities Act and the Rehabilitation Act and Violation of the Supremacy Clause and the Fourteenth Amendment to the United States Constitution Pursuant to 42 U.S.C. § 1983)**

**INTRODUCTION**

1.      On January 15, Governor Glenn Youngkin signed Executive Order 2. On February 16, the Virginia legislature passed S.B. 739, which will become effective March 1. Both the Executive Order and S.B. 739 strip Commonwealth of Virginia public schools' ability to require masking to protect students in the midst of the worst pandemic Virginia has seen. They strip school districts of the authority to take measures consistent with the recommendation of the Centers for Disease Control and Prevention ("CDC"), the American Academy of Pediatrics, and the American Medical Association, and unsettle the directive of the state Department of Health and the recommendation of the state Department of Education. And, at issue in this case, they strip schools of their ability to comply with their obligations to students with disabilities under the Americans with Disabilities Act and Rehabilitation Act.

2.      While Executive Order 2 and S.B. 739 make it more difficult for schools and parents to protect the health and safety of all of Virginia's children, they also leave parents of many Virginia children with disabilities with an unconscionable choice: to choose between putting them at risk of severe illness if they contract COVID-19 and keeping them home with little or no education. For many of these children, the Commonwealth has effectively barred the schoolhouse door.

3.      The COVID-19 pandemic is not over, and has already killed over 16,000 Virginians (including 504 reported since Christmas 2021), *See COVID-19 in Virginia: Cases*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-in-virginia/covid-19-in-virginia-cases/ (last visited Jan. 31, 2022). COVID-19 still presents life-endangering risks. As of February 17, 2022, all but 2 regions in the Commonwealth of Virginia are at "High" risk of COVID-19 transmission. *See COVID-19 Level of Community Transmission*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-in-virginia/community-transmission/ (last visited Feb. 17, 2022).

4.      With the introduction of the highly contagious Omicron Variant, daily COVID-19 cases reported in January 2022 exceeded daily cases reported since the pandemic began. Children are among the people infected. In Virginia, from January 8 to January 15, 2022, there were 12,496 reported cases of COVID-19 among children, leading to 75 hospitalizations. *COVID-19 in Virginia: Cases Among Children*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Jan. 31, 2022).

5.      In the 13 weeks before January 24, 2022, the institutions with the highest number of reported COVID-19 outbreaks reported to the Department of Health were schools– surpassing

long term care facilities, congregate settings, and correctional facilities. *See COVID-19 in Virginia: Outbreaks*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-in-virginia/covid-19-in-virginia-outbreaks/ (last visited Jan. 31, 2022).

6.      As school districts across the Commonwealth of Virginia face a surge of COVID-19 cases, Governor Youngkin, through Executive Order 2 and the legislature through S.B. 739, have made it more difficult for them to protect the health and safety of Virginia's children by prohibiting Virginia public schools from requiring all students to wear masks. Va. Exec. Order No. 2 (Jan. 15, 2022) (attached as Exhibit A); Va S.B. 739 (2022 Session, Feb. 16, 2022); to be published at Va. Code Ann.§ 22.1-2.1 (2022).

7.      Executive Order 2 was issued on Governor Youngkin's very first day in office and was effective January 24, 2022. *Id.* S.B. 739 was passed on February 16, 2022 and becomes effective March 1, 2022. They each provide that the parents of any public school student may elect for their children not to wear a mask at school. Va. Exec. Order No. 2. at ¶ 2; Va. S.B. 739(C). Each provides that no such parent may be asked to provide a reason or certification for the election.

8.      Executive Order 2 and S.B. 739 are blanket bans on school districts requiring universal mask use. *Id.* They provide for no exceptions. *Id.* They apply regardless of how narrow a mask mandate is (e.g., requiring masks only when students are in classrooms, cafeterias, and other group spaces). *Id.* They do not recognize that universal mask use may be necessary to protect some children. *Id.* They forbid school districts from even asking if parents have a reason for declining to have their child wear a mask. *Id.* They fail to recognize that the Commonwealth and its public schools are required to follow federal anti-discrimination laws, including laws that require equal access for children with disabilities. *Id.*

3

9.      Plaintiffs are students with disabilities that place them at an increased risk of serious illness or death if they contract COVID-19. These disabilities include cancer, cystic fibrosis, moderate to severe asthma, Down syndrome, lung conditions, organ and blood stem cell transplants, diabetes, and weakened immune systems. The CDC has identified these disabilities and others as risk factors for severe COVID-19 illness. *See People with Certain Medical Conditions*, CDC (December 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

10.     The Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") provide broad protections for individuals with disabilities. Both laws prohibit exclusion, denial of equal access, unnecessary segregation, and other forms of discrimination against students with disabilities by state and local governments. Both laws also prohibit methods of administration that defeat the fundamental goals of public education programs with respect to students with disabilities. Finally, both laws impose affirmative obligations on covered entities to provide reasonable modifications to ensure students with disabilities have an equal opportunity to benefit from public education.

11.     Executive Order 2 and S.B. 739 prohibit school districts from providing reasonable modifications (i.e., mask requirements) that Plaintiffs need in order to attend school without risking their health and lives. Thus, Executive Order 2 and S.B. 739 increase the exclusion and segregation of students with disabilities, deny them equal access to public school, interfere with schools' ability to comply with their obligations under federal law to provide reasonable modifications and illegally force parents of students with disabilities to choose between their children's education and their health and safety, in violation of the ADA and Section 504.

12.     And Executive Order 2 and S.B. 739 are directly contrary to the CDC's Guidance for COVID-19 Prevention in K-12 Schools, which "recommends indoor masking for all individuals ages 2 years and older, including students, teachers, staff, and visitors, regardless of vaccination status." *Guidance for COVID-19 Prevention in K-12 Schools*, CDC (Jan. 13, 2022), https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html. The CDC notes that "[c]onsistent and correct mask use is especially important indoors and in crowded settings, when physical distancing cannot be maintained." *Id.*

13.     Executive Order 2 and S.B. 739 are also inconsistent with the national medical consensus: among other organizations, the American Academy of Pediatricians ("AAP") and the American Medical Association ("AMA"), two of the largest and most respected medical professional organizations in the country, both recommend universal masking for school-age children. *See Face Masks*, AAP, https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/cloth-face-coverings/ (last visited Jan. 31, 2022)*; see also Staying Safe in School During COVID-19*, HealthyChildren.org, https://healthychildren.org/English/health-issues/conditions/COVID-19/Pages/Return-to-School-During-COVID-19.aspx?_gl=1*1y21mrn*_ga*NzA1Mzc3NzkwLjE2NDMwNzU4ODQ.*_ga_FD9D3XZVQQ*MTY0MzA3NTg4My4xLjAuMTY0MzA3NTg4My4w&_ga=2.247347591.2030512429.1643075885-705377790.1643075884 (last visited Jan. 31, 2022)*; see also Coronavirus Masking in Public*, AMA, https://www.ama-assn.org/topics/coronavirus-masking-public (last visited Jan. 31, 2022).

14.     In fact, Executive Order 2 and S.B. 739 are inconsistent with the Virginia Department of Health's own "Mask Requirements and Recommendations," which provide that, everywhere other than schools:

Masks help offer protection against variants. If up to date on COVID-19 vaccines, VDH recommends following CDC guidance to wear a mask indoors when in areas with substantial to high transmission. If not up to date with COVID-19 vaccines, you should continue to wear a mask indoors and also while in outdoor crowded settings.

*Protect Your Health: Mask Requirements and Recommendations*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/protect-yourself/mask-requirements-and-recommendation/ (last visited Feb. 17, 2022).

15.     Executive Order 2 and S.B. 739 are contrary to the Virginia Department of Health's understanding of the importance of mask-wearing, an understanding now undercut by the Order and law, as the Department of Health's website makes clear.

## What are current mask requirements and recommendations?

**Important! Everyone age 2 and up should wear a mask in indoor public spaces. Virginia communities currently have high levels of COVID-19 transmission.**

**If you are up to date on COVID-19 vaccines:**

**Indoors**

**You should wear a mask** in indoor public spaces when community spread is substantial or high.

Check Level of Community Transmission

**Outside**

Masks are generally not needed outside if up to date on COVID-19 vaccines. Up to date people might choose to wear a mask in crowded outdoor spaces if they or someone in their household has a compromised immune system or is not up to date on COVID-19 vaccines.

| K-12 Schools | Public Transportation |
|---|---|
| **Executive Order 2** states that parents of any child enrolled in an elementary or secondary school or a school-based early childcare and educational program may elect for their children not to be subject to any mask mandate in effect at the child's school or educational program. | **You must wear masks** when using public transportation (airplanes, ships, ferries, trains, subways, buses, taxis, and rideshares, as well as in indoor transportation hubs, such as airports and stations), per a federal order. |

*Protect Your Health: Mask Requirements and Recommendations*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/protect-yourself/mask-requirements-and-recommendation/ (last visited Feb. 17, 2022).

16.     Plaintiffs bring this suit to enjoin Executive Order 2's and S.B. 739's potentially calamitous consequences for students with disabilities. Executive Order 2 and S.B. 739 prevent school districts from implementing COVID-19 protocols as they deem appropriate in response to local conditions and as recommended by medical professionals, forcing parents of students with disabilities to make an impermissible choice whether to keep their children at home and forfeit their children's education or risk placing them in an environment that presents a serious risk to their health and safety. The ADA and Section 504 do not permit government officials such as Defendants to force parents to make such a choice.

## JURISDICTION AND VENUE

17.     Plaintiffs' federal claims are brought pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 *et seq.*

18.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

19.     Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201–2202.

20.     Venue is appropriate in the Western District of Virginia, Charlottesville Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions that gave rise to Plaintiffs' claims occurred within this District.

## PARTIES

21.     PLAINTIFFS Christopher Seaman and Elizabeth Allison Lyons file suit individually and as next friend to their 8-year-old son, C.S. C.S. is in the third grade at Brownsville Elementary School in Albemarle County Public Schools. C.S. was diagnosed with Philadelphia chromosome-positive (Ph+) acute lymphoblastic leukemia (ALL) in 2018. He suffered relapsed disease in June 2021. C.S. is immunocompromised from chemotherapy, chimeric antigen receptor T-cell (CAR-T) therapy, and a bone marrow transplant, which substantially limits the operation of the major bodily function of the immune system. C.S. is a qualified individual with disabilities under the ADA and Section 504. Because of his disability, C.S. is at high risk of severe illness if he contracts COVID-19. If C.S. attends school with unmasked classmates, he has an increased risk of contracting COVID-19 and potentially becoming infected. If there is no longer a mask mandate in Albemarle County School District, C.S.'s parents will have to choose between sending C.S. and his younger brother to school, which puts C.S.'s health and safety at heightened risk, or withdrawing them from school and risking their educational progress.

22.     PLAINTIFF Tasha Nelson files suit individually and as next friend to her 10-year-old son, J.N. Ms. Nelson and J.N. live in Manassas, Virginia and J.N. attends Jennie Dean Elementary School, which is part of Manassas City Public Schools. J.N. has cystic fibrosis, which substantially limits the major life activities of breathing and eating, and the major bodily functions of the respiratory and digestive systems. J.N. is a qualified individual with a disability

under the ADA and Section 504. Because of his disability, J.N. is at high risk of severe illness if he contracts COVID-19. J.N. has an Individualized Education Program ("IEP") that provides accommodations that work better in-person and virtual learning was not effective for him. On February 16, 2022, Manassas City Public Schools informed Ms. Nelson that, because of S.B. 739, they would no longer require students to wear masks beginning February 17. As a result, J.N.'s parents have to choose between sending J.N. to school, which puts J.N.'s health and safety at heightened risk, or withdrawing him from school and risking his educational progress. J.N. has been kept at home February 17-18, while awaiting a response to his parents' request that the school reasonably modify its policies to make attending class safe for J.N.

23.     PLAINTIFF Elizabeth Burnett files suit individually and as next friend to her 11-year-old son, B.B. Ms. Burnett and B.B. live in Henrico and B.B. attends Quioccasin Middle School, which is part of Henrico County Public Schools. B.B. has chronic lung disease and is immunocompromised, which substantially limits major life activities, including breathing and the major bodily function of the respiratory system. B.B. is a qualified individual with a disability under the ADA and Section 504. Because of his disabilities, B.B. is at high risk of severe illness if he contracts COVID-19. On February 16, 2022, at approximately 4:30 PM, Henrico County Public Schools informed Ms. Burnett that they would no longer require students to wear masks beginning the very next day. The district pointed explicitly to S.B. 739 as the reason for its policy change. As a result, B.B.'s parents have had to choose between sending B.B. to school, which puts B.B.'s health and safety at heightened risk, or withdrawing him from school and risking his educational progress. Since February 17, B.B. and his twin brother have remained at home because attending class in person with no mask mandate is unsafe for B.B.

24.     PLAINTIFF Lindsey Dougherty files suit individually and as next friend to her 10-year-old son, G.D. G.D. is in the 5th grade at Enon Elementary School in Chesterfield Public Schools. G.D. has an autoimmune disorder, Pediatric Autoimmune Neuropsychiatric Disorder associated with Streptococcus (PANDAS) & asthma, which substantially limit major life activities, including breathing. G.D. is a qualified individual with a disability under the ADA and Section 504. Because of his disability, G.D. is at high risk of severe illness if he contracts COVID-19. G.D.'s school board voted to follow Executive Order 2 and will not be requiring masks. G.D. is currently not attending school and G.D.'s parents intend to keep G.D. out of school as long as there is no universal masking in school because of the risk to G.D. of contracting and becoming seriously ill from COVID-19.

25.     PLAINTIFF Meghan DuFrain and Roch DuFrain file suit individually and as next friend to their 7-year-old son, J.D. J.D. is in second grade at Cumberland Elementary School in Cumberland County Public Schools. J.D. has cystic fibrosis, which substantially limits the major life activity of breathing, and the major bodily functions of the respiratory system. J.D. is a qualified individual with a disability under the ADA and Section 504. Because of his disability, J.D. is at high risk of severe illness if he contracts COVID-19. J.D. was home-schooled in Fall 2021, but returned to in-person instruction in January 2022 until, in response to Executive Order 2, Cumberland County Public Schools lifted its mask mandate. J.D.'s parents are keeping both J.D. and his two siblings home because of the risk to J.D. of contracting and becoming seriously ill from COVID-19.

26.     PLAINTIFF Denille Francis files suit individually and as next friend to her 13-year-old son, Q.O. Ms. Francis and Q.O. live in Yorktown, Virginia and Q.O. attends Tabb Middle School, which is part of York County School Division. Q.O. has Down Syndrome, which

substantially limits major life activities, including caring for oneself. Q.O. is a qualified

individual with a disability under the ADA and Section 504. Down Syndrome is a presumed

disability under 28 C.F.R. § 35.108(d)(2). If the mask mandate in Q.O.'s school is rescinded,

Q.O. will be at increased risk of contracting COVID-19 and at high risk of severe illness if he

catches COVID-19. If there is no longer a mask mandate in Henrico County Public Schools,

Q.O.'s parents will have to choose between sending Q.O. to school, which puts Q.O.'s health and

safety at heightened risk, or withdrawing him from school and risking his educational progress.

27.     PLAINTIFFS Lori Dooley and Brian Mulligan file suit individually and as next

friend to their 14-year-old son, R.M. R.M. attends Stanton River Middle School in the Bedford

County Public School System. R.M. was diagnosed with cystic fibrosis at birth, and as a result of

this diagnosis, is immunocompromised. R.M.'s cystic fibrosis substantially limits the major life

activity of breathing, and the major bodily functions of the respiratory and immune systems.

R.M. is a qualified individual with a disability under the ADA and Section 504. Because of his

disability, R.M. is at high risk of severe illness if he contracts COVID-19. Following Executive

Order 2, R.M.'s school district has made masks optional for schools. Because of the risk of

infection and severe disease from COVID-19, R.M.'s parents are concerned that sending him to

school will risk his health and safety.

28.     PLAINTIFF L.W. files suit individually and as next friend to her 4-year-old son,

C.B. L.W. and C.B. live in Chesapeake, Virginia and C.B. attends Grassfield Elementary School,

which is part of Chesapeake County Public School Division. C.B. has asthma, which

substantially limits the major life activity of breathing, and autism. C.B. is a qualified individual

with a disability under the ADA and Section 504. Because of his disabilities, C.B. is at high risk

of severe illness if he catches COVID-19. The mask mandate at his school has been rescinded.

C.B.'s parents are forced to send him to school and risk his health and safety to access his public education.

29.     PLAINTIFF Kimberly Crawley files suit individually and as next friend to her 13-year-old son I.C. Ms. Crawley and I.C. live in Loudoun County, Virginia and I.C. attends Trailside Middle School, which is part of Loudoun County Public Schools. I.C. has a respiratory disability, has one lung that is half the size of the other, and is severely prone to infections, which substantially limits major life activities, including breathing. I.C. is a qualified individual with a disability under the ADA and Section 504. Because of his disabilities, I.C. is at high risk of severe illness if he contracts COVID-19. On February 16, 2022, Loudoun County Public Schools informed Ms. Crawley that they would no longer require students to wear masks beginning February 17. Ms. Crawley has to choose between sending I.C. to school, which puts I.C.'s health and safety at heightened risk, or withdrawing him from school and risking his educational progress. On February 17 and 18, I.C.'s school arranged for I.C. to sit at the teacher's desk, at a distance from other students, while the school considered how to make attending school safe for I.C.

30.     PLAINTIFF S.K. files suit individually and as next friend to his 3-year-old daughter M.K. S.K. and M.K. live in Fairfax, Virginia and M.K. attends Stenwood Elementary School, which is part of Fairfax County Public Schools. M.K. has Cornelia de Lange Syndrome (CdLS). CdLS causes severe developmental delays, limb differences, and smaller features, which substantially limit major life activities, including caring for oneself. M.K. is a qualified individual with a disability under the ADA and Section 504. Because of her disabilities, M.K. is at high risk of severe illness if she contracts COVID-19. If there is no longer a mask mandate in Fairfax County Public Schools, M.K.'s parents will have to choose between sending M.K. to

school, which puts M.K.'s health and safety at heightened risk, or withdrawing her from school and risking her educational progress.

31.    PLAINTIFF R.M. files suit individually and as next friend to his 10-year-old son J.M. R.M. and J.M. live in Chesapeake, Virginia, and J.M. attends Southeastern Elementary School, which is part of Chesapeake County Public Schools. J.M. has Type 1 Diabetes, which substantially limits his major life activities, including eating. This autoimmune disease causes his blood glucose to fluctuate, which can be dangerous during illnesses. J.M. is also diagnosed with depression. J.M. is a qualified individual with a disability under the ADA and Section 504. Because of his disabilities, J.M. is at high risk of severe illness if he catches COVID-19. The mask mandate at his school has been rescinded. J.M.'s parents are forced to send him to school and risk his health and safety to access his public education.

32.    PLAINTIFF K.R. files suit individually and as next friend to her 17-year-old daughter, L.R. K.R. and L.R. live in Loudoun County, Virginia and L.R. attends Loudoun County High School, which is part of Loudoun County Public Schools. L.R. is a kidney transplant patient and has multiple disabilities including end-stage renal disease, a blood clotting disorder, medication-induced diabetes, and cognitive delays due to a traumatic birth injury, which substantially limit her major life activities, including caring for herself, performing manual tasks, learning, working, and thinking. L.R. is a qualified individual with a disability under the ADA and Section 504. L.R. is immunocompromised and at high risk of severe illness if she catches COVID-19. L.R.'s kidney transplant doctor has stated that community PCR test positivity rates must be much lower for L.R. to be safe in unmasked settings than when she is in a setting with universal masking, due to the increased risk of transmission when exposed to

others who are unmasked. As Loudoun County Public Schools has rescinded their mask mandate, L.R. now faces additional delays to her return to in-person learning.

33.    DEFENDANT COMMONWEALTH OF VIRGINIA is a state and operates the Office of the Governor, Office of the Attorney General, the Department of Education, and the Department of Health.

34.    DEFENDANT Glenn Youngkin is the Governor of the Commonwealth of Virginia and as such is the Chief Executive of the State, responsible for overseeing, managing, and directing policy for all Virginia agencies, including the Office of the Attorney General, the Virginia Department of Education, and the Virginia Department of Health. Defendant Youngkin signed Executive Order 2 on January 15, 2022. The Governor has issued a statement that he will use "the tools available" to enforce the order, and members of his cabinet have stated that they may withhold state funds from noncompliant school districts. Defendant Youngkin is sued in his official capacity as Governor of Virginia.

35.    DEFENDANT Jason Miyares is the Attorney General of the Commonwealth of Virginia and head of the Office of Attorney General. Defendant Miyares is responsible for enforcement of Virginia's laws. Attorney General Miyares is currently defending Executive Order 2 in state court challenges. Attorney General Miyares has also stated publicly that his office will enforce Executive Order 2 once legal challenges in the state courts are resolved. Defendant Miyares is sued in his official capacity as Attorney General of Virginia.

36.    DEFENDANT Jillian Balow is the Virginia Superintendent of Public Instruction. Defendant Balow is the executive officer of the Virginia Department of Education, which is the administrative agency for the Commonwealth's public schools. On January 21, the State Department of Education, under the direction of Defendant Balow, substantially revised its joint

"Guidance for COVID-19 Prevention in Virginia PreK-12 Schools" pursuant to Executive Order 2 to rescind universal masking in Virginia schools. Defendant Balow is sued in her official capacity as Virginia Superintendent of Public Instruction.

37.     DEFENDANT Colin Greene is Acting Virginia Health Commissioner. Defendant Greene is the chief executive officer of the Virginia Department of Health, which is the administrative agency for public health in the Commonwealth of Virginia. On January 21, the State Department of Health, under the direction of Defendant Greene substantially revised its joint "Guidance for COVID-19 Prevention in Virginia PreK-12 Schools" pursuant to Executive Order 2 to rescind universal masking in Virginia schools. Defendant Greene is sued in his official capacity as Virginia Health Commissioner.

38.     The Commonwealth of Virginia, the Office of the Governor, the Office of the Attorney General, the Virginia Department of Education, and the Virginia Department of Health are public entities under Title II of the ADA. 28 C.F.R. § 35.104.

39.     The Commonwealth of Virginia, the Office of the Governor, the Office of the Attorney General, the Virginia Department of Education, and the Virginia Department of Health receive federal financial assistance within the meaning of Section 504, 29 U.S.C. § 794.

## STATEMENT OF FACTS

### The Current State of the COVID-19 Pandemic

40.     The history of the COVID-19 pandemic is well-known and an extensive body of evidence shows that COVID-19 is a highly communicable respiratory virus that spreads through close contact.

41.     Since the inception of the pandemic, more than 1.5 million Virginians have contracted COVID-19. Over 47,000 have been hospitalized and over 16,000 have died. *COVID-*

*19 in Virginia: Summary*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-in-virginia/ (last visited Jan. 31, 2022). Cases initially peaked in Virginia in mid-January 2021 when over 5,000 new cases were reported each day. *Cases and Deaths by Date Reported*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-and-deaths-by-date-reported/ (last visited Jan. 31, 2022).

42.     With the advent of the highly contagious Omicron Variant, Virginia is experiencing a new, even higher, peak in January of 2022, with between 4,247 and 26,175 cases reported per day since the beginning of the month. *Id.*

43.     As of January 31, 2022, 2,896 Virginians were currently hospitalized because of COVID. 349 people on ventilators have tested positive for COVID. *COVID-19 in Virginia Hospitals*, Va. Hosp. & Healthcare Ass'n, https://www.vhha.com/communications/virginia-hospital-covid-19-data-dashboard/ (last visited Jan. 31, 2022).

44.     Among Virginia's children, the Omicron spike in January 2022 is equally extreme, with over 8,000 cases reported per week in mid-January and 42-111 hospitalizations per week. *COVID-19 in Virginia: Cases Among Children*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Jan. 31, 2022).

45.     Young Virginians are vaccinated at a far lower rate than older Virginians. Children under 5 years of age remain ineligible for COVID-19 vaccination, and according to the Virginia Department of Health, only 37.3% of children in the 5-11 age cohort have received at least one dose of the vaccine, compared to 72.3% of children in the 12-15 age cohort and between 74.7% and 98.5% for all older age cohorts. *COVID-19 Vaccine Demographics*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-in-

virginia/covid-19-vaccine-summary/covid-19-vaccine-demographics/ (last visited Jan. 31, 2022).

Only 28.5% of people aged 5-11 in Virginia are considered fully vaccinated (defined as two

shots). *Id.*

### COVID-19 Poses Extreme Risks to Students with Disabilities

46.     School-aged children with certain disabilities, including a range of underlying

medical conditions, are at increased risk of contracting or developing a severe illness from

COVID-19 as compared to other children. According to the CDC, "Children with underlying

medical conditions are more at risk for severe illness from COVID-19 compared with children

without underlying medical conditions." *COVID-19 Vaccines for Children and Teens*, CDC (Jan.

11, 2022), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/recommendations/children-

teens.html (last visited Jan. 31, 2022).

47.     The CDC lists the following medical conditions, among others, as creating

increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic lung

diseases, including moderate to severe asthma and cystic fibrosis, diabetes, Down syndrome,

heart conditions, obesity, sickle cell disease, and weakened immune systems. *Medical

Conditions*, CDC (Dec. 14, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

precautions/people-with-medical-conditions.html (last visited Jan. 31, 2022). *See also id.*

("Current evidence suggests that children with medical complexity, with genetic, neurologic, or

metabolic conditions, or with congenital heart disease can be at increased risk for severe illness

from COVID-19."). Children with some disabilities, such as asthma, may also be at

disproportionate risk of suffering so-called "long COVID" (i.e., the persistence of COVID-19-

related symptoms long after the initial infection). *See* Carlo Cervia et al., *Immunoglobulin

Signature Predicts Risk of Post-Acute COVID-19 Syndrome*, 13 Nature Commc'ns 446, at 5

(2022), https://doi.org/10.1038/s41467-021-27797-1 (finding "94% of individuals with a history of asthma bronchiale developed [symptoms lasting 4-12 weeks] and 71% developed post-COVID-19 syndrome defined as prolonged symptoms for more than 12 weeks after symptom onset. This is in stark contrast to 59% of individuals without a history of asthma bronchiale developing [symptoms lasting more than 4 weeks] and 42% developing post-COVID-19 syndrome").

48.     The COVID-19 pandemic has been particularly disruptive for students with disabilities, beginning with the shift from in-school education to virtual education in 2020. According to the U.S. Department of Education, "[f]or many elementary and secondary school students with disabilities, COVID-19 has significantly disrupted the education and related aids and services needed to support their academic progress and prevent regression." *Education in a Pandemic: The Disparate Impacts of COVID-19 on America's Students*, U.S. Dep't of Educ., at iv, Observation 4 (June 9, 2021), https://www2.ed.gov/about/offices/list/ocr/docs/20210608-impacts-of-covid19.pdf (last visited Jan. 31, 2022). Students with disabilities have not only lost critical in-class instruction, but they have also lost services such as speech and occupational therapy and behavioral support and counseling. Many parents have reported regression and "there are signs that those disruptions may be exacerbating longstanding disability-based disparities in academic achievement." *Id.*

49.     It is undisputed that "[s]tudents benefit from in-person learning, and safely returning to in-person instruction . . . (is) a priority." *Guidance for COVID-19 Prevention in K-12 Schools*, CDC (Jan. 13, 2022), https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html (last visited Jan. 31, 2022). Students with disabilities need in-person schooling even more than other student groups, and they must be able

to receive their instruction and services safely. U.S. Gov't Accountability Off., GAO-21-43,

*Distance Learning: Challenges Providing Services to K-12 English Learners and Students With*

*Disabilities During COVID-19*, at 16 (Nov. 2020) (reporting that "[s]chool officials . . . told

[GAO] that delivering related services—such as occupational therapy, physical therapy, or

speech therapy—for students with complex needs was particularly difficult in a virtual setting,"

and that other officials "raised concerns about students not receiving services in the same manner

as they did prior to distance learning, including occupational and physical therapy that involved

hands-on instruction from therapists or required specialized equipment unavailable in students'

homes"), https://www.gao.gov/products/gao-21-43 (last visited Jan. 31, 2022).

50.     Universal masking enables students with disabilities (and all students) to attend

school safely during the COVID-19 pandemic. In calling for universal masking in schools, the

CDC cited extensive medical literature on the critical role masks play in reducing transmission of

COVID-19. *Science Brief*: *Community Use of Masks to Control the Spread of SARS-CoV-2*,

CDC (last updated Dec. 6, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-

briefs/masking-science-sars-cov2.html. The CDC has emphasized that masking in schools is

critical to "protect others as well as themselves," because masking reduces the risk of spread

from asymptomatic carriers who may otherwise be unaware they are ill. *Guidance for COVID-19*

*Prevention in K-12 Schools*, CDC (last updated Jan 13, 2022),

https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.

51.     In addition to the extensive academic literature cited by the CDC in support of

universal masking, ongoing research confirms the effectiveness of universal masking in schools

to mitigate the spread of COVID-19. For example, the ABC Science Collaborative, led by top

physicians on the staff of Duke University, recently published its study based on data from 100

school districts in North Carolina, and found that "[w]hen masking is in place, COVID-19 transmission in schools is low." ABC Science Collaborative, *Data Finds Universal Masking Limits School Transmission of COVID-19 Despite Delta Variant*, https://abcsciencecollaborative.org/author/elizabeth-mccamicduke-edu/. *See* Boutzoukas et. al, *School Safety, Masking and the Delta Variant*, 149 Pediatrics 1 (Jan. 2022). *See also* (summarizing findings of the study). This finding reinforces the CDC's claim that "when teachers, staff, and students consistently and correctly wear a mask, they protect others as well as themselves." *Guidance for COVID-19 Prevention in K-12 Schools,* CDC (Jan. 13, 2022), https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html (last visited Jan. 31, 2022).

52.     "Masks are primarily intended to reduce the emission of virus-laden droplets by the wearer ("source control"), which is especially relevant for asymptomatic or presymptomatic infected wearers who feel well and may be unaware of their infectiousness to others (estimated to account for more than 50% of SARS-CoV-2 transmissions). Masks also help reduce inhalation of these droplets by the wearer ("filtration for wearer protection"). The community benefit of masking for SARS-CoV-2 control is due to the combination of these two effects (source control and filtration for wearer protection); individual prevention benefit increases with increasing numbers of people using masks consistently and correctly." Science Brief: Community Use of Masks to Control the Spread of SARS-CoV-2, CDC, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html (last visited Jan. 31, 2022).

## Executive Order 2 and S.B. 739

53.     Despite federal government guidelines, medical recommendations, and research findings demonstrating the necessity for, and efficacy of, universal masking mandates in schools

to mitigate the spread of COVID-19, Governor Youngkin, on his first day in office, issued Executive Order 2.

54.     Executive Order 2 prohibits local school boards from requiring students and staff to wear masks in schools.

55.     Executive Order 2 rescinded a prior Executive Order requiring masks in K-12 schools, Va. Exec. Order No. 79 (May 14, 2021), a Virginia Department of Health Order requiring masking in schools, *State Health Commissioner Order of Public Health Emergency Statewide Requirement to Wear Masks in K-12 Schools*, Va. Dep't. of Health (Aug. 12, 2021), and a Virginia Department of Health and Department of Education guidance recommending masking in schools. *Interim Guidance for COVID-19 Prevention in Virginia PreK-12 Schools*, Va. Dep't of Health and Dep't of Education (Jan. 14, 2021; updated Oct. 14, 2021).

56.     Prior to Executive Order 2, all Virginia schools were required by the Health Commissioner's Order and Virginia S.B. 1303 to require mask-wearing. As of January 28, 2022, in response to Executive Order 2 and corresponding Departments of Health and Education guidance, approximately 58 school districts had rescinded their mask mandates. 71 had maintained their mask mandates. Two had maintained their mask mandates only temporarily. One had not yet decided. Seven school districts filed a lawsuit in state court challenging the validity of Executive Order 2.

57.     Cumberland County Public Schools, attended by J.D., states the following regarding its masking policy following the issuance of Executive Order 2 "Cumberland County Public Schools (CuCPS) is following a universal mask mandate as required by Senate Bill 1303. However, on January 15, 2022, Governor Youngkin issued an executive order mandating that parents/guardians be allowed to opt their children out of the mask mandate, beginning January

24, 2022." *Live Feed*, CUMBERLAND COUNTY PUBLIC SCHOOLS,

https://www.cucps.k12.va.us/live-feed (last visited Jan. 31, 2022).

58.     Chesapeake Public Schools, attended by C.B. and J.M., states the following

regarding its masking policy following the issuance of Executive Order 2: "Masking Guidance.

In accordance with Governor Youngkin's Executive Order Number Two that becomes effective

Monday, January 24, 2022, parents and guardians of Chesapeake Public Schools (CPS) students

may choose if their child wears a mask in school. No documentation is required. **…** It is

important to note that we will not be able to accommodate requests for class changes or special

seating assignments due to mask preference." Nathan Crawford and Michelle Wolf, *Chesapeake

School Board votes to remove universal mask mandate in alignment with Youngkin's executive

order*, WAVY.COM, (Jan. 21, 2022, 6:09 PM EST), https://www.wavy.com/news/local-

news/chesapeake/chesapeake-school-board-votes-to-remove-mask-in-alignment-with-youngkins-

executive-order/ (last visited Jan. 31, 2022).

59.     Chesterfield County Schools, attended by G.D., states the following regarding it's

masking policy following the issuance of Executive Order 2: "The Chesterfield County School

board met on Tuesday, Jan. 25. During this meeting, the board voted 3-2 to approve a motion 'to

amend its existing COVID-19 Mitigation Plan to include providing parental choice for face

masks, and implementing the new Interim Guidance for COVID-19 prevention in Virginia PreK-

12 schools as set forth by the Virginia Department of Education and the Virginia Department of

Health on Jan. 21, 2022.' This change will be effective, Thursday, Jan. 27, 2022." *COVID-19

Guidance*, CHESTERFIELD COUNTY PUBLIC SCHOOLS, https://mychesterfieldschools.com/project-

restart/covid-19-guidance/ (last visited Jan. 31, 2022).

60.     Bedford County Schools, attended by R.M., states the following regarding its masking policy following the issuance of Executive Order 2:  "The Bedford County School Board voted at the January 13, 2022, board meeting to update the division's Health and Safety Mitigation Plan, effective February 1, 2022, to make masking optional for students, other than during bus transportation as required by federal regulation, and to discontinue contact tracing. At a special called meeting last night, January 20, 2022, the School Board voted to change the date for implementation to January 24, 2022." *BCPS Health and Safety Mitigation Plan Update*, BEDFORD COUNTY PUBLIC SCHOOLS, https://bedford.sharpschool.net/ (last visited Jan. 31, 2022).

61.     As required by Executive Order 2, the Virginia Departments of Education and Health, led by Defendants Balow and Greene, immediately rescinded prior guidance calling for universal masking, *Interim Guidance for COVID-19 Prevention in Virginia PreK-12 Schools*, Va. Dep't. of Health and Va. Dep't. of Education at 5 (updated July 2021) (recommending following CDC guidance, including consistent and correct use of masks) with new guidance noting that masks cannot be required by schools and making no recommendation regarding masks. *See Interim Guidance for COVID-19 Prevention in Virginia PreK-12 Schools*, Va. Dep't. of Health and Va. Dep't. of Education at 10 (Jan. 21, 2022), https://www.vdh.virginia.gov/content/uploads/sites/182/2021/03/Interim-Guidance-to-K-12-School-Reopening.pdf (last visited Jan. 31, 2022).

62.     The Virginia Department of Health, led by Defendant Greene, also reversed course once Executive Order 2 was issued. It rescinded a Commissioner's Public Health Emergency Order "requiring all individuals two and older to wear masks when indoors at public and private K-12 schools." Public Health Emergency Order (Aug. 12, 2021).

63.     Attorney General Miyares has recently stated publicly that his office will enforce Executive Order 2 once legal challenges in the state courts are resolved. *See* Emma North, *Virginia Attorney General Miyares not enforcing Youngkin's ban on mask mandates while lawsuits play out*, ABC 8 News (Jan. 24, 2022), https://www.wric.com/news/virginia-news/virginia-attorney-general-miyares-not-planning-to-enforce-mask-mandate-ban-as-lawsuits-play-out/ (last visited Jan. 26, 2022). The Attorney General has made it clear that "Any school district that thinks they can ignore the code of Virginia, well they're going to see me in court, I can tell you that." https://video.foxnews.com/v/6292959021001#sp=show-clips at 2:24 (last visited Jan. 31, 2022); , https://www.wavy.com/news/politics/virginia-politics/ag-jason-miyares-responds-to-mask-lawsuits/; https://wtop.com/virginia/2022/01/va-ag-miyares-files-motion-to-dismiss-parents-lawsuit-against-youngkins-mask-mandate-order/ (last visited Jan. 31, 2022).

64.     The Attorney General's statements followed others from the governor's spokesperson indicating he would use "the tools available" to enforce the order and from the Lieutenant Governor and other Virginia officials suggesting withholding state funds from noncompliant school districts. *See* Fox News, *Winsome Sears Reflects on MLK Day: I am proof that we are progressing,* at 4:45 et seq. (Jan. 17, 2022), https://video.foxnews.com/v/6292268337001#sp=show-clips (last visited Jan. 31, 2022); WUSA9, *VERIFY: Can Gov. Youngkin strip Virginia schools of state funding to enforce his executive order* (Jan. 19, 2022) ("The governor's spokesperson said he will use 'the tools available.'"), https://www.wusa9.com/article/news/verify/governor-youngkin-threatens-strip-schools-of-state-funding-to-enforce-his-executive-order-on-masksto/65-348a8b80-a483-44a4-bd18-7181b890c5b4 (last visited Jan. 31, 2022).

65.     On February 16, 2022, the Virginia Assembly passed, and the Governor signed, S.B. 739, which becomes effective March 1, 2022. S.B. 739 codifies the substantive requirements of Executive Order 2.

66.     The same day that S.B. 739 was passed, three of the school districts attended by Plaintiffs – Manassas City Schools, Henrico County Public Schools, and Loudoun County Public Schools, announced that they were lifting their mask mandates the following day.

67.     By refusing to allow school districts to even consider whether to implement mask requirements as needed to protect the health and safety of the children they serve, Defendants have placed unlawful barriers to educational access for students with disabilities and are preventing some of the state's most vulnerable children from returning to, or remaining in, public schools or requiring them to return at risk to their health and lives.

68.     By prohibiting use of one of the most effective means of disease prevention available, Executive Order 2 and S.B. 739 are making it impossible for school districts to provide a safe learning environment for students with disabilities that put them at risk of severe illness should they contract COVID.

69.     Executive Order 2 and S.B. 739 put parents in the impossible situation of having to choose between the health and life of their child and educating their child. Until the enactment of S.B. 739, Virginia law S.B. 1303 prohibited schools from offering virtual learning except in very limited circumstances. Therefore, there are few viable alternatives for students with disabilities who cannot safely return to school in-person due to Executive Order 2 and S.B. 739. Thus, Defendants' actions will have the effect of either placing children with disabilities in imminent danger or unlawfully forcing those children out of the public school system.

**Harm to the Plaintiffs**

70.    Each Plaintiff is facing a high risk of becoming infected with COVID-19 or, if they become infected, a high risk of severe – even life threatening – illness.

**C.S.**

71.    C.S. is 8 years old and is in the third grade at Brownsville Elementary School in Albemarle County Public Schools.

72.    C.S. was diagnosed with Philadelphia chromosome-positive (Ph+) acute lymphoblastic leukemia (ALL) in 2018. He suffered relapsed disease in June 2021. C.S. is immunocompromised from chemotherapy, chimeric antigen receptor T-cell (CAR-T) therapy, and a bone marrow transplant.

73.    C.S. is particularly vulnerable due to his cancer treatments, including his bone marrow transplant, and may have difficulty fighting infection. C.S. has also been unable to receive his COVID-19 vaccinations yet because of the cancer treatment's impact on C.S.'s immune system. Because of this, C.S. is at heightened risk of serious illness due to COVID-19.

74.    Even a mild case of COVID-19 could have long-term effects, as it will interrupt ongoing cancer treatment and rehabilitation. The CDC has confirmed people with cancer are among those who are at an increased risk for severe illness from COVID-19. *People with Certain Medical Conditions,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 31, 2022).

75.    C.S. currently receives homebound instruction from Brownsville Elementary School. C.S. will return to school when his treatment allows it.

76.    Although C.S. is not currently physically in school, he remains at risk because his younger brother, O.S. attends school every day in person. If O.S. wears a mask and attends school with unmasked classmates, he has an increased risk of contracting COVID-19 and

potentially infecting C.S. C.S. remains at risk of contracting COVID-19 through his brother's school-based exposure.

77.     Brownsville Elementary School is part of Albemarle County Public Schools located in the Virginia Department of Health Blue Ridge Health District. Data from August 27, 2021 to January 22, 2022 indicates that, in the Blue Ridge Health District the overall rate of COVID-19 cases per 100,000 children is 5,417. Since August 27, 2021, there have been 2,677 confirmed cases of COVID-19 among children aged 0-17 in the Blue Ridge Health District. During that same time period, twelve children with COVID-19 have been hospitalized. *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Jan. 31, 2022).

78.     More recently, the Blue Ridge Health District has been experiencing a spike in COVID-19 cases in children aged 0-19. For the weeks of January 2, 2022, January 9, 2022, and January 16, 2022 there have been 513, 789, and 687 cases, respectively, for ages 0-19. These numbers represent the highest rate of COVID-19 among children in the Blue Ridge Health District since the beginning of the COVID-19 pandemic. *COVID-19 in Virginia: Weekly Health District Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Jan. 31, 2022).

79.     On January 17, 2022, Albemarle County Schools announced that the district would uphold the mask mandate in defiance of Executive Order 2. If there is no longer a mask mandate in Albemarle County School District, C.S.'s parents will have to choose between sending O.S. and C.S. to school where their health and safety is at heightened risk or withdrawing them from school and risking their educational progress.

**J.N.**

80.     J.N. is 10 years old and has cystic fibrosis, a progressive disease that affects his lungs and digestive system. As a result of his disability, J.N. has his lung function tested regularly. His lung function is profoundly and negatively affected by simple infections and is often lower than that of typical children.

81.     J.N.'s doctor has informed his family that, if he becomes infected with COVID-19, he is at high-risk of severe illness and even death. J.N. is vaccinated and is not yet eligible for a booster, but still remains at heighted risk of serious illness due to COVID-19. The CDC has confirmed people with Cystic fibrosis are among those who are at an increased risk for severe illness from COVID-19. *Medical Conditions,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 31, 2022).

82.     Going to school in person is important to J.N. His IEP calls for in-person learning and virtual learning has been less effective for him.

83.     Jennie Dean Elementary School is part of the Manassas City Public School District located in the Virginia Department of Health Prince William Health District. The Prince William Health District has one of the highest rates of COVID-19 among children in Virginia. Data from August 27, 2021 to January 22, 2022 indicates that the overall rate of COVID-19 cases per 100,000 children is 4,383. Since August 27, 2021, there have been 6,192 confirmed cases of COVID-19 among children aged 0-17 in the Prince William Health District. During that same time period, one hundred and twenty-three children with COVID-19 have been hospitalized. *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Jan. 31, 2022).

84.     More recently, the Prince William Health District has been experiencing a spike in COVID-19 cases in children aged 0-19. For the weeks of January 2, 2022, January 9, 2022, and January 16, 2022 there have been 1881, 1717, and 1219 cases, respectively, for ages 0-19. These numbers represent the highest rate of COVID-19 among children in the Prince William Health District since the beginning of the COVID-19 pandemic. *COVID-19 in Virginia: Weekly Health District Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Jan. 31, 2022).

85.     Initially, J.N.'s school district maintained its mask mandate in spite of Executive Order 2.

86.     However, on February 16, 2022, immediately after passage of S.B. 739, Manassas City Public Schools informed Ms. Nelson that they would no longer require students to wear masks beginning February 17. In doing so, the district explicitly stated that S.B. 739 was the reason for their policy change.

87.     As a result, J.N.'s parents have to choose between sending J.N. to school, which puts J.N.'s health and safety at heightened risk, or withdrawing him from school and risking his educational progress. J.N. has been kept at home February 17-18, while awaiting a response to his parents' request that the school reasonably modify its policies to make attending class safe for J.N.

88.     J.N. is devastated at being excluded from school and isolated from his peers. He cries every day as his siblings are dropped off at school. Being forced to stay home because of his disease is causing him to feel sadness, anxiety, and even shame. In addition, his younger siblings are upset every day as they leave J.N. outside the school and he no longer walks them into the school building. They are also afraid that the unmasked children they encounter at school

may infect them and lead to J.N. being infected and endangered. Keeping J.N. at home and struggling to teach him themselves is also putting both financial and emotional pressure on J.N.'s parents.

**B.B.**

89.     B.B. is 11 years old and is in the sixth grade at Quioccasin Middle School in Henrico County.

90.     B.B. has a lung disease, which was diagnosed when he was five, and as a result of his medical treatments is immunocompromised.

91.     Because of his lung disease, B.B. is at heightened risk of serious illness due to COVID-19. Because he is immunocompromised, B.B. is at heightened risk of contracting COVID-19 without layered mitigation measures, including universal masking. B.B. is at heightened risk from COVID-19 even after being vaccinated and boosted. The CDC has confirmed people with chronic lung disease and people who are immunocompromised are among those who are at an increased risk for severe illness from COVID-19. *Medical Conditions,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 31, 2022).

92.     B.B. has attended school in person during the 2021-2022 school year. His parents chose to enroll in in-person school for the 2021-2022 school year in March 2021 while there was a mask mandate in place in the school.

93.     Quioccasin Middle School is part of the Henrico Public School District located in the Virginia Department of Health Henrico Health District. The Henrico Health District has one of the highest rates of COVID-19 among children in Virginia. Data from August 27, 2021 to January 22, 2022 indicates that the overall rate of COVID-19 cases per 100,000 children is

7,019. Since August 27, 2021, there have been 5,205 confirmed cases of COVID-19 among

children aged 0-17 in the Henrico Health District. During that same time period, fourteen

children with COVID-19 have been hospitalized. *COVID-19 in Virginia: Cases Among*

*Children: Count of Cases by Health District*, Va. Dep't of Health,

https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-

children/ (last visited Jan. 31, 2022).

94.     More recently, the Henrico Health District has been experiencing a spike in

COVID-19 cases in children aged 0-19. For the weeks of January 2, 2022, January 9, 2022, and

January 16, 2022 there have been 1,300, 1,293, and 990 cases, respectively, for ages 0-19. These

numbers represent the highest rate of COVID-19 among children in the Henrico Health District

since the beginning of the COVID-19 pandemic. *COVID-19 in Virginia: Weekly Health District*

*Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-

numbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Jan. 31, 2022).

95.     Henrico County initially opted to maintain its school mask mandate pending

resolution of the legal issues surrounding Executive Order 2.

96.     However, on February 16, 2022, at approximately 4:30 PM, after passage of S.B.

739, Henrico County Public Schools abruptly informed Ms. Burnett that they would no longer

require students to wear masks beginning February 17. The district pointed explicitly to S.B. 739

as the reason for its policy change. As a result, B.B.'s parents had to choose between sending

B.B. to school, which puts B.B.'s health and safety at heightened risk, or withdrawing him from

school and risking his educational progress.

97.     Based on the advice of their pediatrician, beginning on February 17, B.B. and his

twin brother are staying home because attending class without a mask mandate is unsafe for B.B.

31

This is particularly challenging because B.B.'s brother has autism and requires in-person supports and services. Both boys are devastated at being excluded from in-person school.

**G.D.**

98.     G.D. is 10 years old and attends 5th grade at Enon Elementary School in Chesterfield Public Schools. G.D.'s younger sister also attends Enon Elementary School.

99.     G.D. has an autoimmune disorder, Pediatric Autoimmune Neuropsychiatric Disorder associated with Streptococcus (PANDAS) & asthma. As a result of G.D.'s disabilities, he is susceptible to misdirected immune responses and brain inflammation. G.D.'s complex medical diagnosis puts him at heightened risk of serious illness due to COVID-19. The CDC has confirmed people with moderate-to-severe asthma and people who are immunocompromised are among those who are at an increased risk for severe illness from COVID-19. *Medical Conditions,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 31, 2022).

100.     G.D. is vaccinated and is not currently eligible for a booster. Even with vaccination, he remains at heightened risk of serious illness due to COVID-19. G.D.'s doctors recommend all Covid-19 mitigation strategies are used to protect him, especially masking indoors.

101.     Enon Elementary School is part of the Chesterfield County Public School District located in the Virginia Department of Health Chesterfield Health District. The Chesterfield Health District has one of the highest rates of COVID-19 among children in Virginia. Data from August 27, 2021 to January 22, 2022 indicates that the overall rate of COVID-19 cases per 100,000 children is 6,663. Since August 27, 2021, there have been 6,162 confirmed cases of COVID-19 among children aged 0-17 in the Chesterfield Health District. During that same time

period, twelve children with COVID-19 have been hospitalized. *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Jan. 31, 2022).

102. More recently, the Chesterfield Health District has been experiencing a spike in COVID-19 cases in children aged 0-19. For the weeks of January 2, 2022, January 9, 2022, and January 16, 2022 there have been 1,356, 1,454, and 1,192 cases, respectively, for ages 0-19. These numbers represent the highest rate of COVID-19 among children in the Chesterfield Health District since the beginning of the COVID-19 pandemic. *COVID-19 in Virginia: Weekly Health District Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Jan. 31, 2022).

103. For the 2021-2022 school year, both G.D. and his sister attended school in person. The only virtual option for the 2021-22 school year was a statewide self-directed virtual school, but both of his parents work and it was not possible for him to participate in the virtual school option. G.D. was in virtual learning during the 2020-2021 school year, but it did not work well for him. G.D. has an Individualized Education Program (IEP) for other health impairment and dyslexia.

104. Until Executive Order 2, students and staff in Chesterfield schools, including G.D.'s school, universally masked. As of January 27, 2022, pursuant to Executive Order 2, there is no longer a mask mandate in Chesterfield County School Division.

105. G.D. is not attending school because his health and safety are at heightened risk. G.D.'s parents intend to keep both children out of school as long as there are no universal

masking mandates in school. Without a mask mandate, G.D. cannot participate in his public education, which harms his educational progress.

**J.D.**

106.    J.D. is seven years old and is in second grade at Cumberland Elementary School in Cumberland County Public Schools. J.D. has an older brother and a younger sister who attend Cumberland County Public Schools.

107.    J.D. has cystic fibrosis, which places him at high risk of serious respiratory complications if he contracts COVID-19. His doctors have recommended the family to follow the CDC and Cystic Fibrosis Foundation advice for COVID-19 mitigation strategies, including universal masking at all times.

108.    J.D. is vaccinated and is not eligible for a booster. Even with the vaccine, J.D. remains at heightened risk of serious illness due to COVID-19. The CDC has confirmed people with Cystic fibrosis are among those who are at an increased risk for severe illness from COVID-19. *Medical Conditions,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 31, 2022).

109.    Cumberland County Elementary School is part of the Cumberland County Public School District located in the Virginia Department of Health Piedmont Health District. Data from August 27, 2021 to January 22, 2022, indicates that, in the Piedmont Health District, the overall rate of COVID-19 cases per 100,000 children is 7,554. Since August 27, 2021, there have been 1,439 confirmed cases of COVID-19 among children aged 0-17 in the Piedmont Health District. During that same time period, four children with COVID-19 have been hospitalized. *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*,

Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Jan. 31, 2022).

110.    More recently, the Piedmont Health District has been experiencing a spike in COVID-19 cases in children aged 0-19. For the weeks of January 2, 2022, January 9, 2022, and January 16, 2022, there have been 184, 295, and 224 cases, respectively, for ages 0-19. These numbers represent the highest rate of COVID-19 among children in the Piedmont Health District since the beginning of the COVID-19 pandemic. COVID-19 in Virginia: Weekly Health District Case Data, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Jan. 31, 2022).

111.    There are no virtual education options available for J.D. and the deadline to enroll in the statewide virtual option has passed. J.D. was homeschooled in Fall 2021 because his parents felt they had no other choice and could not risk exposure to COVID-19. In January 2022, J.D. was enrolled for in-person school because there was no virtual option. The risk to his health was mitigated by the universal masking policy and the availability of vaccines for students age five and older.

112.    J.D. and his siblings attended school in person in January 2022, until Executive Order 2 was issued.

113.    On January 22, 2022, Cumberland County School Division changed their masking policy to make masks optional for students starting January 24, 2022. This change in policy was in direct response Executive Order 2.

114.    J.D. and his siblings are currently not attending school in-person because of the risk to J.D.'s health and safety, which harms his education.

115.    If the mask mandate in Cumberland County School Division is reinstated, and Cumberland continues to follow other CDC safety protocols, J.D. would attend school in person.

**Q.O.**

116.    Q.O. is 13 years old and is in the sixth grade at Tadd Middle School.

117.    Q.O. has Down Syndrome, Celiac disease (an autoimmune disease) and liver disease. As a result of Q.O.'s disabilities he is dependent on others for much of his care. Q.O. often cannot determine if he is a safe social distance from other people, or if others are wearing masks properly.

118.    Because of his disabilities, Q.O. is at heightened risk of serious illness due to COVID-19. Q.O. is vaccinated and boosted, but still remains at heightened risk of serious illness due to COVID-19. The CDC has confirmed people with Down Syndrome are among those who are at an increased risk for severe illness from COVID-19. *Medical Conditions,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 31, 2022).

119.    Tabb Middle School is part of the York County Public School District located in the Virginia Department of Health Peninsula Health District. The Peninsula Health District has one of the highest rates of COVID-19 among children in Virginia. Data from August 27, 2021 to January 22, 2022, indicates that the overall rate of COVID-19 cases per 100,000 children is 5,563. Since August 27, 2021, there have been 4,285 confirmed cases of COVID-19 among children aged 0-17 in the Peninsula Health District. During that same time period, forty-six children with COVID-19 have been hospitalized. *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health,

https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Jan. 31, 2022).

120.    More recently, the Peninsula Health District has been experiencing a spike in COVID-19 cases in children aged 0-19. For the weeks of January 2, 2022, January 9, 2022, and January 16, 2022 there have been 1,325, 1,339, and 800 cases, respectively, for ages 0-19. These numbers represent the highest rate of COVID-19 among children in the Peninsula Health District since the beginning of the COVID-19 pandemic. *COVID-19 in Virginia: Weekly Health District Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Jan. 31, 2022).

121.    Q.O. has been attending in person school during the 2021-2022 school year. Q.O. did not attend school on January 24, 2022, which is the first day that Executive Order 2 was in effect, because his parents did not want to risk Q.O.'s exposure to unmasked students and staff. Q.O.'s parents chose to send him back to school in person, on the understanding that the school is supporting universal masking for now.

122.    York County School Division has decided to maintain its mask mandate at this time in spite of Executive Order 2. York County School Division has told parents that it will maintain the mask mandate while it is seeking additional guidance regarding the conflicts between Executive Order 2 and S.B. 1303.

123.    If there is no longer a mask mandate in York County School Division, Q.O.'s parents will have to choose between sending him to school where his health and safety is at heightened risk or withdrawing him from school and risking his educational progress.

124.    There are no virtual education options available for Q.O.  Q.O. struggled to make progress in virtual education during the course of the pandemic and cannot navigate virtual

school independently. By contrast, Q.O. thrives in in-person school, where his parents have fought for inclusion in the general education curriculum. He is social, friendly, and engaged in school.

### R.M.

125.    R.M. is 14 years old and is in the eighth grade at Stanton River Middle School in the Bedford County Public School System.

126.    R.M. was diagnosed with cystic fibrosis at birth, and as a result of this diagnosis, is immunocompromised. Cystic fibrosis is a genetically inherited condition that causes, in part, markedly thickened mucus in the lungs, which in turn causes persistent lung infection and limits the ability to breathe over time. The CDC has confirmed people with Cystic fibrosis are among those who are at an increased risk for severe illness from COVID-19. *Medical Conditions,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 31, 2022).

127.    Because R.M. is severely immunocompromised, he is at heightened risk of contracting COVID-19 absent layered mitigation measures, including universal masking. R.M. is vaccinated, but still remains at heighted risk of serious illness due to COVID-19.

128.    R.M. participated in Virginia Virtual School during the 2020-2021 academic year due to health concerns and the pandemic.

129.    R.M. has attended school in person during the 2021-2022 school year. His parents chose to enroll him in in-person school for the 2021-2022 school year because there was a mask mandate in place in the school.

130.    Stanton River Middle School is part of the Bedford County Public School District located in the Virginia Department of Health Central Virginia Health District. In the Central

Virginia District data from August 27, 2021 to January 22, 2022 indicates that the overall rate of COVID-19 cases per 100,000 children is 4,610. Since August 27, 2021, there have been 2,377 confirmed cases of COVID-19 among children aged 0-17 in the Central Virginia Health District. During that same time period, twelve children with COVID-19 have been hospitalized. *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Jan. 31, 2022).

131.    More recently, the Central Virginia Health District has been experiencing a spike in COVID-19 cases in children aged 0-19. For the weeks of January 2, 2022, January 9, 2022, and January 16, 2022 there have been 403, 689, and 425 cases, respectively, for ages 0-19. These numbers represent the highest rate of COVID-19 among children in the Central Virginia Health District since the beginning of the COVID-19 pandemic. *COVID-19 in Virginia: Weekly Health District Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Jan. 31, 2022).

132.    The Bedford County School Board voted to make masks optional for schools beginning in February 2022.

133.    Because there is no longer a mask mandate in Bedford County Public Schools, students have started attending schools without masks and R.M.'s parents are trying to determine whether to keep him home from school for his health and safety.

134.    R.M. does not receive homebound or virtual instruction from Stanton River Middle School. Instead, he has an "excessive absence plan" which states that he will log on to the Canvas online learning platform and complete his assignments. There is no other virtual

school option available for R.M., and his parents are concerned about him falling behind on classroom instruction and not receiving social interaction.

**C.B.**

135.    C.B. is a four-year-old child in pre-kindergarten at Grassfield Elementary School in Chesapeake Public School Division. C.B. has an Individualized Education Program (IEP) to receive early intervention special education services.

136.    C.B. has a reactive airway disease that requires the regular use of an inhaler and the use of medicated breathing treatments when aggravated. C.B. also has autism. It is vital for his development to receive in person education, therapy, and other supports.

137.    Because of his reactive airway disease, C.B. is at heightened risk of serious illness due to COVID-19. Because he is only four years old, C.B. is not eligible to be vaccinated. The CDC has confirmed people with moderate to severe asthma are among those who are at an increased risk for severe illness from COVID-19. *Medical Conditions,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 31, 2022).

138.    Grassfield Elementary School is part of the Chesapeake Public School Division located in the Virginia Department of Health Chesapeake Health District. The Chesapeake Health District has one of the highest rates of COVID-19 among children in Virginia. Data from August 27, 2021 to January 22, 2022 indicates that the overall rate of COVID-19 cases per 100,000 children is 5,513. Since August 27, 2021, there have been 3,259 confirmed cases of COVID-19 among children aged 0-17 in the Chesapeake Health District. During that same time period, twenty-six children with COVID-19 have been hospitalized. *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health,

https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Jan. 31, 2022).

139.    More recently, the Chesapeake Health District has been experiencing a spike in COVID-19 cases in children aged 0-19. For the weeks of January 2, 2022, January 9, 2022, and January 16, 2022 there have been 1,230, 1,321, and 567 cases, respectively, for ages 0-19. These numbers represent the highest rate of COVID-19 among children in the Chesapeake Health District since the beginning of the COVID-19 pandemic. *COVID-19 in Virginia: Weekly Health District Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Jan. 31, 2022).

140.    C.B. has been attending in person school during the 2021-2022 school year.

141.    On January 17, 2022, shortly after Governor Youngkin issued Executive Order 2, the Superintendent of Chesapeake Public Schools communicated to parents that the school district would review the Order and any guidance from the Virginia executive agencies and update families as to their masking policy, and on January 20, 2022, the Chesapeake School Board adopted an optional masking policy in accordance with Executive Order 2.

142.    On January 24, the Superintendent of Chesapeake Public Schools communicated the new masking policy to parents: "as of January 24, 2022, parents and guardians may choose if their child wears mask in school."  The email to parents also noted that the school would not be able to accommodate requests for class changes or special seating assignments due to mask preference. Email from Chesapeake Public Schools Superintendent to Parents (Jan. 24, 2022). C.B.'s parents have instructed the school that they choose to have C.B. wear a mask.

143.    C.B.'s parents have to choose between sending him to school where his health and safety is at heightened risk or withdrawing him from school and risking his educational

progress. C.B. is currently attending school in person, putting his health and safety at risk. C.B's parents considered pulling him out of in-person school, but do not want to because this is a pivotal point in C.B.'s life. The special education services his school provides, including speech therapy and occupational therapy, are necessary for his development. Although there is a general virtual school option in Chesapeake, there is no virtual option for special education that provides all of the services mandated on C.B.'s IEP and C.B. struggled to make progress when he was in virtual school during the 2020-2021 school year.

## I.C.

144.    I.C. is a thirteen-year-old child in sixth grade at Trailside Middle School in Loudoun County Schools.

145.    I.C. suffered complications from a premature birth that resulted in a medical respiratory disability that makes him severely prone to infections. Over the course of his life I.C. has had thirty-five surgeries, ten-twelve of those surgeries involving his right lung, which is half the size of his left lung. The CDC has confirmed people with chronic lung disease are among those who are at an increased risk for severe illness from COVID-19. *Medical Conditions,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 31, 2022).

146.    Because of his disability, I.C. is at heightened risk of serious illness, respiratory infections, and further surgeries if he were to contract COVID-19. I.C. is at heightened risk from COVID-19 even after being vaccinated and boosted.

147.    I.C. has attended school in person during the 2021-2022 school year. At the recommendation of his pediatrician and medical team, it is safe for I.C. to remain in-person as long as a mask mandate is in place and CDC guidelines are followed in school.

148.    Trailside Middle School is part of the Loudoun County Public School District located in the Virginia Department of Health Loudoun Health District. Loudoun Health District has one of the highest rates of COVID-19 among children in Virginia. Data from August 27, 2021 to January 22, 2022 indicates that the overall rate of COVID-19 cases per 100,000 children is 4,098. Since August 27, 2021, there have been 4,724 confirmed cases of COVID-19 among children aged 0-17 in the Loudoun Health District. During that same time period, fifteen children with COVID-19 have been hospitalized. *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Jan. 31, 2022).

149.    More recently, the Loudoun Health District has been experiencing a spike in COVID-19 cases in children aged 0-19. For the weeks of January 2, 2022, January 9, 2022, and January 16, 2022 there have been 1,485, 1,233, and 816 cases, respectively, for ages 0-19. These numbers represent the highest rate of COVID-19 among children in the Loudoun Health District since the beginning of the COVID-19 pandemic. *COVID-19 in Virginia: Weekly Health District Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Jan. 31, 2022).

150.    Loudoun County Public Schools initially continued to require universal masking despite Executive Order 2.

151.    However, on February 16, 2022, at approximately 4:45 PM, Loudoun County Public Schools informed Ms. Crawley that, because of S.B. 739, they would no longer require students to wear masks beginning February 22. Later that evening, because of a state court order, the district informed parents that it would no longer require masks beginning February 17. Ms.

Crawley has had to choose between sending I.C. to school, which puts I.C.'s health and safety at heightened risk, or withdrawing him from school and risking his educational progress.

152.    On February 17 and 18, I.C.'s school arranged for I.C. to sit at the teacher's desk, at a distance from other students, while the school considered how to make attending school safe for I.C.

153.    I.C. has suffered significant anxiety at school when he has been among students not wearing masks.

**M.K.**

154.    M.K. is a 3-year-old child in pre-school at Stenwood Elementary School in Fairfax County Public Schools.

155.    M.K. has Cornelia de Lange Syndrome (CdLS). CdLS causes severe developmental delays and disabilities, limb differences, and smaller features. M.K. has had open heart surgery to fix a heart defect. Because of CdLS, M.K. is developmentally one year old and uses a stroller and wheelchair. M.K. also has glasses and hearing aids.

156.    Because of her disabilities, M.K. is at heightened risk of serious illness due to COVID-19. The CDC has confirmed that children with medical complexity, with genetic, neurologic, or metabolic conditions can be at increased risk for severe illness from COVID-19. *Medical Conditions,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 31, 2022).

157.    Her doctors have recommended the family to follow the CDC guidelines of universal masking at all times. Because of her disability, M.K. is unable to wear a mask. M.K. is too young to be vaccinated.

158.    Stenwood Elementary School is part of the Fairfax County Public School District located in the Virginia Department of Health Fairfax Health District. The Fairfax Health District has one of the highest rates of COVID-19 among children in Virginia. Data from August 27, 2021 to January 22, 2022 indicates that the overall rate of COVID-19 cases per 100,000 children is 4.689. Since August 27, 2021, there have been 12,958 confirmed cases of COVID-19 among children aged 0-17 in the Fairfax Health District. During that same time period, twenty-four children with COVID-19 have been hospitalized. *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Jan. 31, 2022).

159.    More recently, Fairfax Health District has been experiencing a spike in COVID-19 cases in children aged 0-19. For the weeks of January 2, 2022, January 9, 2022, and January 16, 2022 there have been 3,565, 3,296, and 1,887 cases, respectively, for ages 0-19. These numbers represent the highest rate of COVID-19 among children in Fairfax Health District since the beginning of the COVID-19 pandemic. https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Jan. 31, 2022).

160.    M.K. still attends school in person because her school still requires universal masking. Because of M.K.'s disabilities, attending school in person is important for her to receive the recommended special education and related services.

161.    Fairfax County Public Schools offered a virtual option for students who were medically eligible for the 2021-2022 school year. However, given M.K.'s particular circumstances, her parents determined attending school in person was necessary for her continued educational progress and development.

45

162.    Fairfax County Public Schools are currently requiring universal masking and they are one of several school districts challenging the legality of Executive Order No. 2 in Arlington County Circuit Court. Despite Fairfax County Public Schools' current support of universal masking, members of the community are advocating against masking and students are arriving to school without masks.

163.    If there is no longer a mask mandate in the Fairfax County School Division, M.K.'s parents will have to choose between sending her to school where her health and safety is at heightened risk or withdrawing her from school and risking her educational progress.

**J.M.**

164.    J.M. is a 10-year-old child in fifth grade at Southeastern Elementary School in Chesapeake County Public Schools.

165.    J.M. has Type 1 diabetes. Because of his diabetes, J.M. is at heightened risk of serious illness due to COVID-19 and it is more likely that a COVID-19 infection would require him to go to the hospital. J.M. is vaccinated but is not yet eligible for a booster. Even with the vaccination, he remains at heightened risk of serious illness from COVID-19. The CDC has confirmed people with Type 1 diabetes are among those who are at an increased risk for severe illness from COVID-19. *Medical Conditions,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 31, 2022).

166.    J.M. is also diagnosed with depression. His depression is aggravated when he is not attending in-person school.

167.    Southeastern Elementary School is part of the Chesapeake Public Schools located in the Virginia Department of Health Chesapeake Health District. The Chesapeake Health District has one of the highest rates of COVID-19 among children in Virginia. Data from August

27, 2021 to January 22, 2022 indicates that the overall rate of COVID-19 cases per 100,000 children is 5,513. Since August 27, 2021, there have been 3,259 confirmed cases of COVID-19 among children aged 0-17 in the Chesapeake Health District. During that same time period, twenty-six children with COVID-19 have been hospitalized. *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Jan. 31, 2022).

168.    More recently, the Chesapeake Health District has been experiencing a spike in COVID-19 cases in children aged 0-19. For the weeks of January 2, 2022, January 9, 2022, and January 16, 2022 there have been 1,230, 1,321, and 567 cases, respectively, for ages 0-19. These numbers represent the highest rate of COVID-19 among children in the Chesapeake Health District since the beginning of the COVID-19 pandemic. *COVID-19 in Virginia: Weekly Health District Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Jan. 31, 2022).

169.    J.M. has been attending school in-person during the 2021-2022 school year. J.M. and his parents chose to go to in-person school this year because the school was requiring universal masking and other COVID-19 mitigation measures.  In-person school is a critical component of addressing J.M.'s depression.

170.    On January 17, 2022, shortly after Governor Youngkin issued Executive Order 2, the Superintendent of Chesapeake Public Schools communicated to parents that the school district would review the Order and any guidance from the Virginia executive agencies and update families as to their masking policy, and on January 20, 2022, the Chesapeake School Board adopted an optional masking policy in accordance with Executive Order 2.

171.    On January 24, the Superintendent of Chesapeake Public Schools communicated the new masking policy to parents: "as of January 24, 2022, parents and guardians may choose if their child wears a mask in school."  The email to parents also noted that the school would not be able to accommodate requests for class changes or special seating assignments due to mask preference. Email from Chesapeake Public Schools Superintendent to Parents (Jan. 24, 2022).

172.    During a meeting of J.M.'s 504 team, J.M.'s parents instructed the school that they choose to have J.M. wear a mask and requested an accommodation on his 504 Plan that the school keep unmasked students at least 6 feet away from J.M because of J.M.'s disability and heightened risk.  The Assistant Principal ignored the team consensus in favor of J.M.'s parent's request and refused to support that accommodation request, citing a need for further medical documentation. On February 9, 2022, the 504 team officially denied J.M.'s request for an accommodation.

173.    J.M.'s parents have to choose between sending him to school where his health and safety is at heightened risk or withdrawing him from school and risking his educational progress and his mental health.  J.M. is currently attending school in person, putting his health and safety at risk.

## L.R.

174.    L.R. is 17 years old and is in the eleventh grade at Loudoun County High School in Loudoun County Public Schools.

175.    L.R.  has had two kidney transplants and is diagnosed with end-stage renal disease, medication-induced diabetes, and a blood clotting disorder (Prothrombin Gene Mutation).  LR. also suffered a traumatic birth injury which resulted in bleeding in the brain and multiple organ failures. As a result, she has multiple cognitive delays including speech and fine

motor skills.  L.R. will need to take immunosuppressant medication for the rest of her life to prevent the rejection of her transplanted kidney.

176.    Because of her immunosuppressant medication, diabetes, and blood clotting disorder, L.R. is at heightened risk of serious illness due to COVID-19.  Because she is immunocompromised, L.R. is at heightened risk of contracting COVID-19 without layered mitigation measures, including universal masking. The CDC has confirmed that children with diabetes and immunosuppression can be at increased risk for severe illness from COVID-19. *Medical Conditions,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 31, 2022).

177.    L.R. is at heightened risk from COVID-19 even after being vaccinated and boosted. L.R. did not develop any COVID-19 antibodies after her first two vaccine doses. L.R. only developed some antibodies after her third dose and will be receiving a fourth dose of the vaccine.

178.    L.R. attended school in person in November and December of the 2021-2022 school year while there was a mask mandate in place at the school.  According to L.R.'s kidney transplant doctor, L.R. can attend school in person when community PCR test positivity rates are low. This medical professional has also stated that if L.R. would be exposed to unmasked individuals at school, L.R. would need to wait for a much lower PCR test positivity rate than if universal masking is in place. Because the threat posed by COVID is evolving, L.R.'s parents and her kidney transplant doctor have continuing conversations regarding community PCR positivity rates, placing L.R. on virtual homebound education when rates are high and returning L.R. to in-person learning when her doctor has determined that rates have decreased to a safe level for L.R.

179.    Loudoun County High School is part of the Loudoun County Public School District located in the Virginia Department of Health Loudoun Health District.  Loudoun Health District has one of the highest rates of COVID-19 among children in Virginia. Data from August 27, 2021 to January 22, 2022 indicates that the overall rate of COVID-19 cases per 100,000 children is 4,098.  Since August 27, 2021, there have been 4,724 confirmed cases of COVID-19 among children aged 0-17 in the Loudoun Health District. During that same time period, fifteen children with COVID-19 have been hospitalized. *COVID-19 in Virginia: Cases Among Children: Count of Cases by Health District*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/cases-among-children/ (last visited Jan. 31, 2022).

180.    More recently, the Loudoun Health District has been experiencing a spike in COVID-19 cases in children aged 0-19. For the weeks of January 2, 2022, January 9, 2022, and January 16, 2022 there have been 1,485, 1,233, and 816 cases, respectively, for ages 0-19. These numbers represent the highest rate of COVID-19 among children in the Loudoun Health District since the beginning of the COVID-19 pandemic.  *COVID-19 in Virginia: Weekly Health District Case Data*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-data-insights/weekly-health-district-case-data/ (last visited Jan. 31, 2022).

181.    L.R. currently receives virtual homebound instruction from Loudoun County High School. L.R. will return to school when PCR test positivity rates in Loudoun County have decreased to a safe level for L.R., upon clearance from her medical providers.

182.    On February 16, 2022, Loudoun County Public Schools announced that they would no longer require students to wear masks.

183.    As a result, L.R. will now face additional delays in returning to in-person learning. L.R.'s kidney transplant doctor has affirmatively stated that the status of a universal mask mandate affects when L.R. can safely return to school. This medical provider has advised that L.R. needs to wait for a much lower local PCR test positivity rate if L.R. will be exposed to unmasked individuals than when universal masking is in place. If not for the Executive Order and S.B. 739, L.R. would attend Loudoun High School in person sooner, when Loudoun County's PCR test positivity rates are at a safe level for L.R. as determined by her medical providers.

184.    L.R. misses vital social development opportunities when she is unable to attend school in person.

### FIRST CLAIM FOR RELIEF

### TITLE II OF THE AMERICANS WITH DISABILITIES ACT

### 42 U.S.C. § 12131 *et seq.*

185.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

186.    Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, guarantees individuals with disabilities an equal opportunity to access the benefits of the services, programs, or activities of public entities. 42 U.S.C. § 12132.

187.    Title II mandates, *inter alia*, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

188.     In providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor may public entities provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others. 28 C.F.R. §35.130(b)(1)(ii)–(iii).

189.     Plaintiffs are individuals with disabilities who are qualified to attend Virginia public schools and, therefore, are protected by Title II of the ADA.

190.     Defendants are public entities covered by Title II of the ADA.

191.     Public education is a program, service, or activity of the Commonwealth of Virginia.

192.     Through Executive Order 2 and S.B. 739, and their implementation and enforcement, Defendants are denying local school districts the ability to provide the students in this matter with the protections they need to attend school safely. In so doing, Defendants, acting in their official capacities, are violating the requirements of the ADA, and/or are causing Plaintiffs' school districts to violate the requirements of the ADA, as follows:

   a.   Defendants are excluding, and/or are causing Plaintiffs' school districts to exclude, Plaintiffs from participation in public education, denying them the benefits of public education, or otherwise subjecting them to discrimination in violation of 42 U.S.C. § 12132;

   b.   Defendants are failing to make a reasonable modification, and/or are preventing Plaintiffs' School Districts from making a reasonable modification, under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7);

c.   Defendants are administering a policy and/or causing Plaintiffs' school districts to administer policies that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the state's education program with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3);

d.   Defendants are failing to administer services, programs, and activities, and/or are causing Plaintiffs' school districts to fail to administer services, programs, and activities, in the most integrated setting appropriate to the needs of qualified individuals with disabilities, in violation of 28 C.F.R. § 35.130(d).

193.   Excluding children from the public-school classroom because of a disability, including by Defendants' enforcement of Executive Order 2 and S.B. 739, is precisely the type of discrimination and segregation that the ADA aims to prevent and prohibit.

194.   As a result of Defendants' actions, Plaintiffs have suffered or will suffer irreparable harm: they have suffered or will suffer from discrimination and unequal access to Virginia's public education program because they will be unable to return to, or remain in, their local public schools without risking their health and safety due to the threat of COVID-19.

195.   In the absence of injunctive relief, Defendants will deny or continue to deny Plaintiffs equal access to public education.

196.   Plaintiffs are entitled to injunctive and declaratory relief and to reasonable attorneys' fees and costs.

<u>**SECOND CLAIM FOR RELIEF**</u>

**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973**

**29 U.S.C. § 794 *et seq.***

197.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs, as if alleged herein.

198.    Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

199.    Section 504 defines "program or activity," in pertinent part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government[.]" 29 U.S.C. § 794(b)(1).

200.    No qualified individual with a disability may, on the basis of disability, "be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination from any program or activity which receives Federal financial assistance." 34 C.F.R. § 104.4(a).

201.    Plaintiffs are individuals with disabilities who are qualified to attend Virginia public schools and, therefore, are protected by Section 504.

202.    Defendants receive federal financial assistance and are covered entities under Section 504.

203.    Public education is a program or activity of the Commonwealth of Virginia.

204.    Defendants have violated the requirements of Section 504, and/or caused

Plaintiffs' school districts to violate the requirements of Section 504, as follows:

      a.    Defendants are excluding, and/or are causing Plaintiffs' school districts to exclude, Plaintiffs from participation in public education, denying them the benefits of public education, or otherwise subjecting them to discrimination in violation of 29 U.S.C. § 794(a);

      b.    Defendants are affording, and/or causing Plaintiffs' school districts to afford, Plaintiffs an opportunity to participate in or benefit from an aid, benefit, or service that is not equal to that afforded others. 34 C.F.R. § 104(b)(1)(ii).

      c.    Defendants are using methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of disability, in violation of 34 C.F.R. § 104.4(b)(4);

      d.    Defendants are using methods of administration that have the effect or purpose of defeating or substantially impairing accomplishment of the objectives of the public education provided by Plaintiffs' school districts, in violation of 34 C.F.R. § 104.4(b)(4).

      e.    Defendants are failing to offer, and/or causing Plaintiffs' school districts to fail to offer, aids, benefits and services, in the most integrated setting appropriate to the person's needs, in violation of 34 C.F.R. § 104.4.

205.    Excluding children from the public-school classroom solely because of a

disability, including by Defendants' enforcement of Executive Order 2 and S.B. 739, is precisely

the type of discrimination and segregation that Section 504 aims to prevent and prohibit.

206.     As a result of Defendants' actions, Plaintiffs have suffered or will suffer irreparable harm: they have suffered or will suffer from discrimination and unequal access to Virginia's public education program because they will be unable to return to, or remain in, their local public schools without risking their health and safety due to the threat of COVID-19.

207.     In the absence of injunctive relief, Defendants will deny Plaintiffs equal access to public education.

208.     Plaintiffs are entitled to injunctive and declaratory relief and to reasonable attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

### FEDERAL PREEMPTION UNDER THE AMERICANS WITH DISABILITIES ACT, SECTION 504, AND THE AMERICAN RESCUE PLAN ACT OF 2021

209.     Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

210.     Federal law is the "supreme Law of the Land," and must prevail over any contrary provision of state law. U.S. CONST. art. VI, cl. 2; *Felder v. Casey*, 487 U.S. 131, 138 (1988) ("[A]ny state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield."). Under the doctrine of preemption, a state law is preempted by federal law when it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 204 (1983).

211.     "Where a state statute conflicts with, or frustrates, federal law, the former must give way." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993).

212.    Because Executive Order 2 and S.B. 739 violate federal antidiscrimination laws, they are preempted by those federal laws.

213.    Executive Order 2 and S.B. 739 are also preempted by the American Rescue Plan Act of 2021 ("ARPA"), which allocated billions of dollars in emergency relief funding to school districts to be used "in line with guidance from the Centers for Disease Control and Prevention." Pub. L. No. 117-2, 135 Stat. 4 § 2001(e)(2)(Q).

214.    The United States Congress enacted the ARPA as a comprehensive legislative response to the COVID-19 pandemic. According to House Budget Committee Chairman John Yarmuth, the Act was enacted to "provide economic relief to nearly every American family and hard-working individual, get vaccines into the arms of millions of Americans, and get our schools open safely." *See* House Sends Yarmuth-Led American Rescue Plan Act to President Biden's Desk (Mar. 10, 2021) at https://budget.house.gov/news/press-releases/house-sends-yarmuth-led-american-rescue-plan-act-president-biden-s-desk (last visited Jan. 31, 2022).

215.    To that end, ARPA allocated huge sums of money to state school districts. Virginia school districts were allocated over $2.1 billion in Elementary and Secondary School Emergency Relief (ESSER) to prepare for a safe return to in-person schooling. Dep't. of Education, ARP ESSER Grant Award Allocation Revised (June 25, 2021),  at https://oese.ed.gov/files/2021/06/Revised-ARP-ESSER-Methodology-and-Allocation-Table_6.25.21_FINAL.pdf (last visited Jan. 31, 2022).

216.    Section 2001(e)(2)(Q) of ARPA explicitly gives local school districts the authority to use these ARPA ESSER funds for "developing strategies and implementing public health protocols including, to the greatest extent practicable, policies in line with guidance from the Centers for Disease Control and Prevention for the reopening and operation of school

facilities to effectively maintain the health and safety of students, educators, and other staff." *Id.*
§ 2001(e)(2)(Q). As discussed above, the CDC's guidance specifically recommends universal
indoor masking in all K-12 schools.

217.    The Interim Final Rule for ARPA Elementary and Secondary Emergency Relief
adopted by the U.S. Department of Education ("USDOE") sheds further light on the intent and
purpose of ARPA. In directing school districts how their ARPA funds must be used, USDOE
advised that districts must explain: "the extent to which it has adopted policies, and a description
of any such policies, on each of the following safety recommendations established by the
CDC…", specifically including "universal and correct wearing of masks." 86 Fed. Reg. 21195-
01, 21200 (April 22, 2021), See 86 Fed. Reg. 21195-01, 21200 (Apr. 22, 2021) (a school
district's "plan must include how it will maintain the health and safety of students, educators,
and other school and LEA staff, and the extent to which it has adopted policies, and a description
of any such policies, on each of the CDC's safety recommendations including: Universal and
correct wearing of masks…")

218.    Although USDOE did not mandate that local school districts adopt CDC
guidance, the department's interim guidance required each district "describe in its plan the extent
to which it has adopted the key prevention and mitigation strategies identified in the guidance,"
which include both "[u]niversal and correct wearing of masks[.]" *Id.* Of particular relevance for
Plaintiffs here, the interim guidance further directed local school districts to pay special attention
to "those students disproportionately impacted by the COVID-19 pandemic, including . . .
children with disabilities." *Id.*

219.    Executive Order 2 and S.B. 739 are squarely at odds with the purpose of ARPA
and stands as an obstacle to the accomplishment and execution of ARPA's full purposes and

objectives. Rather than affording discretion to local school boards to develop and implement safety protocols as envisioned by ARPA, Executive Order 2 prohibits local school districts from implementing precisely the type of safe return-to-school policies encouraged by ARPA.

220.    In the face of their direct conflict with federal law, Executive Order 2 and S.B. 739 must fall. They are preempted by the American Rescue Plan Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request this Court to:

221.    Declare that Executive Order 2 and S.B. 739 violate the ADA and Section 504;

222.    Declare that Executive Order 2 and S.B. 739 are preempted by the ARPA;

223.    Issue a temporary restraining order enjoining the Defendants from violating the ADA, Section 504 of the Rehabilitation Act, and the ARPA by prohibiting school districts from requiring masks for their students and staff;

224.    Preliminarily and permanently enjoin Defendants from violating the ADA, Section 504, and the ARPA by prohibiting school districts from requiring masks for their students and staff;

225.    Award Plaintiffs' reasonable attorneys' fees and costs; and

226.    Provide such other and further relief as the Court may deem just and proper.

Dated:    February 18, 2022                    Respectfully submitted,

/s/ Eve L. Hill
Eve L. Hill (VA Bar # 96799)
Sharon Krevor-Weisbaum (*pro hac vice* admitted)
Jessica Weber (*pro hac vice* pending)
Brown Goldstein Levy LLP
120 E. Baltimore Street, Suite 2500
Baltimore, MD 21202
Tel: (410) 962-1030
Fax: (410) 385-0869

Ehill@browngold.com
Skw@browngold.com
Jweber@browngold.com

Steven M. Traubert (Va. Bar #41128)
Kerry M. Chilton (Va. Bar #90621)
disAbility Law Center of Virginia
1512 Willow Lawn Drive, Suite 100
Richmond, Virginia 23230
(804)225-2042
Steven.traubert@dLCV.org
Kerry.chilton@dLCV.org

Ian S. Hoffman (VA Bar #75002)
John A. Freedman (*pro hac vice* to be filed)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, DC  20001
Tel: (202) 942-5000
Fax: (202) 942-5999
Ian.Hoffman@arnoldporter.com
John.Freedamn@arnoldporter.com
Kaitlin Banner (*pro hac vice* to be filed)
Margaret Hart (*pro hac vice* to be filed)
Marja K. Plater (*pro hac vice* to be filed)
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS 700 14th Street, NW, Suite 400
Washington, DC 20005
Phone: (202) 319-1000 Fax: (202) 319-1010
Kaitlin_banner@washlaw.org
Margaret_hart@washlaw.org
Marja_plater@washlaw.org

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on February 18, 2022, I electronically filed the foregoing with the Clerk of

Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all

parties of record.

/s/ Eve L. Hill
Eve L. Hill