**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

|  |  |
|---|---|
| CHRISTOPHER SEAMAN and ELIZABETH ALLISON LYONS, individually and on behalf of C.S., a minor, et al., <br><br> *Plaintiffs*, <br><br> *v.* <br><br> THE COMMONWEALTH OF VIRGINIA, et al., <br><br> *Defendants*. | No. 3:22-cv-6-NKM |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Jason S. Miyares
  *Attorney General*

Charles H. Slemp III (Va. Bar #79742)
  *Chief Deputy Attorney General*

Steven G. Popps (Va. Bar #80817)
Coke Morgan Stewart (Va. Bar #41933)
  *Deputy Attorneys General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7704—Telephone
(804) 371-0200—Facsimile

February 28, 2022

Andrew N. Ferguson (Va. Bar #86583)
  *Solicitor General*

Erika L. Maley* (Va. Bar #97533)
  *Principal Deputy Solicitor General*

Lucas W.E. Croslow (Va. Bar #97517)
  *Deputy Solicitor General*

Graham K. Bryant (Va. Bar #90592)
Annie Chiang (Va. Bar #94703)
M. Jordan Minot* (Va. Bar # 95321)
  *Assistant Solicitors General*

* *application for admission pending*

*Counsel for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 3

    I.   Governor Northam imposed a universal masking mandate on all Virginia schools in the spring of 2021 ................................................................................................. 3

    II.  Mounting evidence demonstrates that universal mask mandates are ineffective mitigation measures that impose significant costs on children ........................................... 4

    III. Governments and experts abandon universal student masking mandates in schools. ........ 7

LEGAL STANDARDS .................................................................................................... 10

ARGUMENT ................................................................................................................. 10

    I.   Plaintiffs lack standing because the challenged provisions have not injured them. ......... 10

      A.   Plaintiffs have not alleged an injury in fact. ............................................................11

      B.   Plaintiffs' alleged injuries are not traceable to Defendants' conduct or redressable by the court ................................................................................................... 15

    II.  Plaintiffs' ADA and Rehabilitation Act claims fail ......................................................... 20

      A.   Plaintiffs failed to exhaust their administrative remedies as required by IDEA......... 20

      B.   Student mask mandates are not a reasonable accommodation under the ADA or the Rehabilitation Act ................................................................................................. 24

      C.   Federal law does not preempt EO 2 or S.B. 739......................................................... 27

    III. The other factors governing equitable relief weigh in favor of Defendants ..................... 29

      A.   Plaintiffs will not suffer irreparable harm in the absence of preliminary relief.......... 29

      B.   The balance of equities and public interest weigh in Defendants' favor ................... 30

CONCLUSION................................................................................................................. 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. Cheatham,*
    910 F.3d 751 (4th Cir. 2018) ...............................................................15

*Alexandria City Sch. Bd. v. Youngkin,*
    No. 22-224 (Arlington Cnty. Cir. Ct. Feb. 1, 2022) ...........................17

*Allee v. Streeval,*
    2021 WL 2784555 (W.D. Va. July 2, 2021)........................................29

*Arc of Iowa v. Reynolds,*
    24 F.4th 1162 (8th Cir. 2022) ......................................................13, 23

*Barnett v. Loudoun Cnty. Sch. Bd.,*
    No. 22-546 (Loudoun Cnty. Cir. Ct. Feb. 14, 2022)......................17, 18

*Beck v. McDonald,*
    848 F.3d 262 (4th Cir. 2017) ...............................................................11

*Belle Garden Est., LLC v. Northam,*
    No. 7:21cv00135, 2021 WL 1156855 (W.D. Va. Mar. 26, 2021).........30

*Bercovitch v. Baldwin Sch., Inc.,*
    133 F.3d 141 (1st Cir. 1998)................................................................26

*Bing v. Brivo Sys., LLC,*
    959 F.3d 605 (4th Cir. 2020) ...............................................................10

*Z.G. ex rel. C.G. v. Pamlico Cnty. Pub. Schs. Bd. of Educ.,*
    744 Fed. Appx 769 (4th Cir. 2018)......................................................22

*California v. Texas,*
    141 S. Ct. 2104 (2021)...................................................................15, 18

*Canterbury v. J.P. Morgan Acquisition Corp.,*
    958 F. Supp. 2d 637 (W.D. Va. 2013) (Moon, J.) ...............................10

*Castillo v. Youngkin,*
    Record No. 220033, slip op. at 3 (Feb. 7, 2022) (unpublished)............18

*Chenari v. George Wash. Univ.,*
    847 F.3d 740 (D.C. Cir. 2017) ............................................................24

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)................................................................... *passim*

*Constantine v. Rectors & Visitors of George Mason Univ.*,
411 F.3d 474 (4th Cir. 2005) ...............................................................25

*D.N. v. Louisa Cty. Pub. Sch.*,
156 F. Supp. 3d 767 (W.D. Va. 2016) ...................................................10

*Deal v. Mercer Cnty. Bd. of Educ.*,
911 F.3d 183 (4th Cir. 2018) .........................................................11, 15

*Department of Commerce v. New York*,
139 S. Ct. 2551 (2019).........................................................................19

*Di Biase v. SPX Corp.*,
872 F.3d 224 (4th Cir. 2017) .........................................................29, 30

*Disability Rts. S. Carolina v. McMaster*,
24 F.4th 893 (4th Cir. 2022) ................................................................16

*M.M. ex rel. DM v. Sch. Dist. of Greenville Cnty.*,
303 F.3d 523 (4th Cir. 2002) ...............................................................10

*Doe #1 v. Del. Valley Sch. Dist.*,
No. 3:21-CV-1778, 2021 WL 5239734 (M.D. Pa. Nov. 11, 2021) .......................25

*Doe 1 v. Upper Saint Clair Sch. Dist.*,
No. 2:22-cv-112, 2022 WL 189691 (W.D. Pa. Jan. 21, 2022) ...................... *passim*

*E.E.O.C. v. Sara Lee Corp.*,
237 F.3d 349 (4th Cir. 2001) ...............................................................26

*Fry ex rel. E.F. v. Napoleon Community. Schools*,
137 S. Ct. 743, 749 (2017)................................................................20, 22

*E.T. v. Paxton*,
19 F.4th 760 (5th Cir. 2021) ............................................................. *passim*

*Egelhoff v. Egelhoff ex rel. Breiner*,
532 U.S. 141 (2001)......................................................................27, 29

*Fink v. Richmond*,
405 Fed. Appx 719 (4th Cir. 2010)........................................................25

*Frank Krasner Enters. v. Montgomery County*,
401 F.3d 230 (4th Cir. 2005) ...............................................................15

*Gilmore v. Finn,*
   259 Va. 448 (2000) ...................................................................................17

*Gonzaga Univ. v. Doe,*
   536 U.S. 273 (2002).................................................................................28

*Hayes v. DeSantis,*
   No. 1:21-cv-22863, 2021 WL 4236698 (S.D. Fla. Sept. 15, 2021)..................21, 22

*J.V. v. Albuquerque Pub. Schs.,*
   813 F.3d 1280 (10th Cir. 2016) .................................................................24

*Kentuckians for Commonwealth, Inc. v. Rivenburgh,*
   317 F.3d 425 (4th Cir. 2003) ....................................................................32

*L.E. v. Ragsdale,*
   No. 1:21-cv-4076, 2021 WL 4841056 (N.D. Ga. Oct. 15, 2021)......................25

*E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.,*
   773 F.3d 509 (4th Cir. 2014) ....................................................................20

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992).................................................................................15

*Lukas v. Fairfax Cnty. Sch. Bd.,*
   22-2033 (Fairfax Cnty. Cir. Ct. Feb. 14, 2022) ...........................................17

*Maryland v. King,*
   567 U.S. 1301 (2021)...............................................................................31

*Maryland v. Louisiana,*
   451 U.S. 725 (1981).................................................................................28

*North Carolina State Conf. of the NAACP v. Raymond,*
   981 F.3d 295 (4th Cir. 2020) ....................................................................10

*Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,*
   489 F.3d 1279 (D.C. Cir. 2007) (Kavanaugh, J.)..........................................13

*Reyazuddin v. Montgomery County,*
   789 F.3d 407 (4th Cir. 2015) ....................................................................24

*Riddell-Bellido v. Frederick Cnty. Pub. Schs.,*
   No. 22-51 (Frederick Cnty. Cir. Ct. Feb. 1, 2022)........................................17

*Safe Streets Alliance v. Hickenlooper,*
   859 F.3d 865 (10th Cir. 2017) ..................................................................28

*Shrimpers & Fishermen of RGV v. Tex. Comm'n on Envtl. Quality*,
968 F.3d 419 (5th Cir. 2020) ...............................................13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ...........................................................11

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ...........................................................11

*U.S. Dep't of Labor v. Wolf Run Mining Co.*,
452 F.3d 275 (4th Cir. 2006) ...............................................10

*United States v. Lopez*,
514 U.S. 549 (1995) (Kennedy, J., concurring) ...................27

*Updike v. Multnomah County*,
870 F.3d 939 (9th Cir. 2017) ...............................................24

*Wikimedia Found. v. Nat'l Sec. Agency*,
857 F.3d 193 (4th Cir. 2017) ...............................................15

*Wilson v. Dollar Gen. Corp.*,
717 F.3d 337 (4th Cir. 2013) ...............................................24

*Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*,
550 U.S. 516 (2007) ...........................................................20

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ...............................................................10

*Wright v. N.Y. State Dep't of Corr.*,
831 F.3d 64 (2d Cir. 2016) ..................................................25

*Ziglar v. Abbasi*,
137 S. Ct. 1843 (2017) ........................................................28

**Statutes**

20 U.S.C. § 1412 ....................................................................21

20 U.S.C. § 1415 ....................................................................20

42 U.S.C. § 12182 ..................................................................23

American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 2001, 135 Stat. 4, 19 .............27, 28, 29

Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ................................. *passim*

Individuals with Disabilities Education Act ........................................................ *passim*

Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*.............................................. *passim*

Va. Code § 2.2-111 ...................................................................................................17

Va. Code § 22.1-2.1 ...................................................................................................9

**Other Authorities**

86 Fed. Reg. at 21,200 ..............................................................................................29

2021 Acts ch. 456 (Spec. Sess. I) (S.B. 1303) .........................................................4

Am. Rescue Plan Act Elementary and Secondary School Emergency Relief Fund,
86 Fed. Reg. 21,195, 21,200 (April 22, 2021) .........................................................29

CDC, *COVID-19 Community Levels* (Feb. 25, 2022) ...............................................7

CDC, *K-12 Schools* (Jan. 13, 2022), https://tinyurl.com/5n98ve5m ........................7

CDC, *Order: Wearing of Face Masks while on Conveyances and at
Transportation Hubs* (revised Feb. 25, 2022).........................................................7

Executive Order 2 ............................................................................................. *passim*

Executive Order 79 (2021), February 28, 2022 .........................................................4

Federal Rule of Civil Procedure 12 ..........................................................................10

Hannah Natanson, *Fairfax Delays In-Person Instruction as Virginia Teachers'
Groups Ask Northam to Return State to All-Virtual School*, Wash. Post (Nov.
16, 2020), https://tinyurl.com/yh5smvmj ................................................................3

Jackie DeFusco & Amelia Heymann, *Northam: Virginia Schools Will Reopen for
the 2020-2021 School Year*, WRIC (Jun. 9, 2020),
https://tinyurl.com/yyws8ayf ...................................................................................3

Jorge V. Verlenden et al., *Association of Children's Mode of School Instruction
with Child and Parent Experiences and Well-Being During the COVID-19
Pandemic — COVID Experiences Survey, United States, October 8–
November 13, 2020*, CDC (Mar. 19, 2021), https://tinyurl.com/2p8f6csp ...............3

Li-Kai Chen et al., *Teacher Survey: Learning Loss is Global—and Significant*,
McKinsey & Co. (Mar. 1, 2021), https://tinyurl.com/ytsuknt3 ................................3

Sarah Toy & Jon Kamp, *CDC Eases Mask Guidelines, Reflecting COVID-19's
Retreat*, Wall St. J. (Feb. 25, 2022) ........................................................................7

Va. Dep't of Educ., *2020–2021 Operating Status: Virginia's Return to School Instructional Schedules School Year 2020–2021*, https://tinyurl.com/mpd69n3b.................................................................................3

Va. Dep't Health, *COVID-19 in Virginia: Cases*, https://tinyurl.com/yckbdsu7 ........................19

Va. Dep't Health, *COVID-19 in Virginia: Locality*, https://tinyurl.com/5xpw7bfw....................19

Va. Dep't Health, *Weekly Health District Case Data*, https://tinyurl.com/2p9eabe6 ................................................................................18

*Virginia Cities and Counties Wearing Masks Indoors*, WSLS (Feb. 25, 2022), https://tinyurl.com/3bpthd6r ................................................................................14

**INTRODUCTION**

Under federal law, students with disabilities who need accommodations to participate in public education should notify their schools and work together with their teachers and school officials to develop an individualized plan to meet their needs. That is not what happened in this case. Instead of requesting accommodations from their schools, Plaintiffs sued the Commonwealth and state officials. Plaintiffs assert that, in the Americans with Disabilities Act (ADA) and Rehabilitation Act, Congress has mandated that all Virginia children must wear masks at school indefinitely in order to reduce Plaintiffs' risks of contracting COVID-19. This position is incorrect.

Most fundamentally, Plaintiffs lack standing to press these claims because the order they seek—an injunction against state officials "enforcing" an executive order and statute—would not lead to the relief they want: universal student masking mandates. Plaintiffs argue that an injunction against the Defendants will confer on local school boards the "discretion" to impose local mask mandates. But the Centers for Disease Control (CDC) no longer recommends universal student mask mandates in the vast majority of Virginia's schools. Case counts across the Commonwealth and the country are plummeting. And vaccines and other effective mitigation measures other than universal masking mandates are widely available. In light of these facts, it is exceedingly *unlikely* that school boards would re-impose universal student masking mandates if they had the option to do so.

Plaintiffs' claims also fail because their preferred accommodation of universal student mask mandates would do little to reduce their risk, while harming other children. There is mounting evidence that student mask mandates are largely ineffective at reducing COVID-19 transmission, including because students often wear poor-quality cloth masks that are improperly fitted. At the same time, student mask mandates cause significant harm to children's academic and

social development. They impede communication, interfere with reading and language acquisition, and weaken social bonds. Some children—including some children with disabilities—cannot see, breathe, or communicate adequately while wearing masks, or have sensory issues that make them unable to tolerate masks. Parents should be able to decide whether wearing a mask in school is detrimental to their child's well-being and ability to learn. The ADA and Rehabilitation Act simply do not mandate accommodations that interfere with the rights of other students in this way.

Even if universal mask mandates were an effective mitigation measure, the ADA and Rehabilitation Act require only that some reasonable accommodation be made, not the particular accommodation that a plaintiff prefers. Here, there are a host of alternative accommodations that Plaintiffs' schools might be able to provide in the absence of universal student masking. For instance, schools could provide Plaintiffs with high-quality N95 or KN95 masks, which protect the wearer regardless of whether others are masked; improve ventilation in Plaintiffs' classrooms; require masks for teachers and staff when in proximity to Plaintiffs; change seat or classroom assignments to physically distance unmasked students from Plaintiffs; or provide remote learning options. But Plaintiffs shortchanged the administrative process that could have accommodated their needs and instead came directly to federal court to challenge an executive order and statute that have no effect on any of these mitigation strategies. Their claims fail for that reason alone.

The pandemic has presented many painful challenges for parents, especially for parents of medically vulnerable children. Defendants are committed to ensuring that all Virginia children have access to a free and appropriate public education. But imposing indefinite universal student mask mandates under the ADA and Rehabilitation Act is not the answer. Plaintiffs' claims lack any limiting principle and could lead to indefinite mask mandates in *all* places of public

accommodation, notwithstanding that the CDC recommends *against* universal masking for the vast majority of Americans and that evidence demonstrates that such mandates are ineffective and harmful. Plaintiffs' motion for a temporary restraining order and preliminary injunction should be denied, and Defendants' motion to dismiss should be granted.

## BACKGROUND

I.    **Governor Northam imposed a universal masking mandate on all Virginia schools in the spring of 2021**

Although COVID-19 generally presents a low risk of severe illness in children, governmental responses to the pandemic have been extremely disruptive to children's lives. In March 2020, to reduce the spread of COVID-19, former Virginia Governor Ralph Northam invoked his emergency authority to close every school in the Commonwealth for the rest of that academic year. February 23, 2022 Affidavit of Dr. Colin Greene, Acting State Health Comm'r ¶ 4, Ex. 3, ECF No. 44 (Greene Aff.).

In June 2020, Governor Northam announced that schools in Virginia would reopen for in-person instruction for the 2020–2021 academic year.[1] Despite this announcement, many Virginia public schools did not provide full-time in-person instruction for much of the academic year.[2] Over the course of the year, it became increasingly clear that "remote learning" and "hybrid learning" were poor substitutes for in-person instruction for most students, causing significant learning loss and risking long-term developmental harm.[3] Mounting data also demonstrated that

---

[1] Jackie DeFusco & Amelia Heymann, *Northam: Virginia Schools Will Reopen for the 2020-2021 School Year*, WRIC (Jun. 9, 2020), https://tinyurl.com/yyws8ayf.
[2] See Va. Dep't of Educ., *2020–2021 Operating Status: Virginia's Return to School Instructional Schedules School Year 2020–2021*, https://tinyurl.com/mpd69n3b; Hannah Natanson, *Fairfax Delays In-Person Instruction as Virginia Teachers' Groups Ask Northam to Return State to All-Virtual School*, Wash. Post (Nov. 16, 2020), https://tinyurl.com/yh5smvmj.
[3] *E.g.*, Jorge V. Verlenden et al., *Association of Children's Mode of School Instruction with Child and Parent Experiences and Well-Being During the COVID-19 Pandemic — COVID Experiences Survey, United States, October 8–November 13, 2020*, CDC (Mar. 19, 2021), https://tinyurl.com/2p8f6csp; Li-Kai Chen et al., *Teacher Survey: Learning Loss is Global—and Significant*, McKinsey & Co. (Mar. 1, 2021), https://tinyurl.com/ytsuknt3.

COVID-19 transmission in schools is low, and that children generally are at very low risk of severe illness due to COVID-19. Greene Aff. ¶¶ 8, 12.

In March 2021, the General Assembly passed a statute that required schools to offer "in-person instruction to each student enrolled in the local school division in a public elementary and secondary school," while allowing schools to provide remote instruction to individual students at their parents' request. 2021 Acts ch. 456 (Spec. Sess. I) (S.B. 1303), § 2. In May 2021, Governor Northam issued another emergency order imposing a universal mask mandate for children in K–12 schools. Executive Order 79 (2021), February 28, 2022 Declaration of Andrew N. Ferguson, Ex. G, ECF No. 45 (Ferguson Decl.).

## II. Mounting evidence demonstrates that universal mask mandates are ineffective mitigation measures that impose significant costs on children

Since that time, the pandemic, scientific evidence regarding mitigation measures, and the availability of other mitigation measures have changed significantly. The evidence now shows that student mask mandates "provid[e] only questionable benefit toward reducing the transmission of COVID-19" in K–12 schools. Greene Aff. ¶ 19. "During the Omicron outbreak, urban regions in Virginia with more restrictive masking policies and practices have experienced transmission rates similar to, or greater than, the transmission rates of rural regions with less restrictive mask policies and practices." Greene Aff. ¶ 16. A number of studies have been conducted on student mask mandates and have not found that such mandates have any significant effect on reducing COVID-19 transmission. Greene Aff. Ex. 36 (concluding that "[w]e do not find any correlations [of transmission rates] with mask mandates"); *id.* ¶¶ 17, 19, Exs. 27, 48, 54.

The ineffectiveness of student mask mandates may be due in part to the serious practical difficulties in masking schoolchildren. As the Virginia Department of Health recently found, "many children use cloth masks that become dirty and are poor fitting, . . . wear masks

incorrectly, and . . . have increased difficulty with proper or sustained mask wearing." Greene Aff. ¶ 12, Ex. 49. Children also wear masks intermittently; among other things, they "do not wear masks in school while eating meals, playing sports, and engaging in other activities where masking is not feasible." Greene Aff. ¶ 18; see Barnett Aff., Ferguson Decl., Ex. A ¶ 10. Under these circumstances, masks "provide reduced or no benefit" for preventing COVID-19 transmission. Greene Aff. ¶ 12.

At the same time, increasing evidence demonstrates that student mask mandates are harmful to children's academic and social development. "Children may have difficulty hearing, talking, perceiving emotion, or otherwise communicating, and making social connections when wearing masks." Greene Aff. ¶ 14; Ex. 27 (observing that 80 percent of surveyed students reported that mask-wearing made communication more difficult; 55 percent reported that it made learning more difficult); see *id.* Exs. 14, 28–34; Ferguson Decl., Ex. A ¶ 8–9; Doniger Aff., Ferguson Decl., Ex. B ¶ 9; Yescavage Aff., Ferguson Decl., Ex. C ¶ 11. In addition, "mask-wearing can be detrimental to speech and language development," especially for younger children who are learning to speak and read. Greene Aff. ¶ 14, Exs. 28, 31; Ferguson Decl., Ex. A ¶ 9. Masks can also cause discomfort and skin irritation, and lead to fungal and other infections. Greene Aff. ¶ 14, Ex. 39 at 560 (finding "[h]igh rates of fungal contamination" on cloth face masks); Ferguson Decl., Ex. B ¶ 10–11; Ferguson Decl., Ex. C ¶ 10.

"Wearing a mask can be particularly detrimental to children with certain disabilities or health conditions." Greene Aff. ¶ 15; see also First Am. Compl. (FAC) ¶ 157 (alleging that "[b]ecause of her disability," one Plaintiff "is unable to wear a mask"). For example, "children with asthma or other respiratory impairments may have trouble breathing in masks." Greene Aff. ¶ 15, Ex. 35. Wearing a face mask can "also exacerbate anxiety or claustrophobia in children,

sometimes leading to respiratory distress or hyperventilation." Greene Aff. ¶ 15, Ex. 23; Ferguson Decl., Ex. B ¶ 8; Ferguson Decl., Ex. C ¶ 12. Children with glasses may have trouble seeing while wearing a mask. Greene Aff. ¶ 15, Ex. 47; Ferguson Decl., Ex. A ¶ 8. "Children who are autistic may have sensory sensitivities that make it extremely difficult for them to tolerate mask-wearing." Greene Aff. ¶ 15, Exs. ¶¶ 16–17; Bailey Aff., Ferguson Decl., Ex. E ¶ 5. And "[c]hildren with speech or hearing impairments may have particular difficulties communicating while wearing masks." Greene Aff. ¶ 15, Exs. 44, 46, 52.

In addition, the availability of alternative mitigation measures has increased over the course of the pandemic. Most notably, vaccines are now available for children ages five and older; clinical trials show that these vaccines are over 90 percent effective in preventing COVID-19.[4] Greene Aff. ¶ 5, Ex. 51. High-quality N95 and KN95 masks are also now widely available. While some children cannot wear these masks properly or for extended periods, "for children who are capable of wearing N95 or KN95 masks, such masks can reduce the wearer's risk of contracting COVID-19 by up to 83%." Greene Aff. ¶ 13, Ex. 12. These masks are highly effective in protecting the wearer, even when others in close proximity are not wearing masks. Greene Aff. ¶ 13. There are also numerous other COVID-19 mitigation strategies available to schools, including testing, improvements to ventilation, handwashing and respiratory etiquette, symptom screening, contact tracing in combination with quarantine and isolation, and cleaning and disinfection. *Id.* ¶ 5.

COVID-19 has also changed significantly over the past year. Current COVID-19 cases are dominated by the Omicron variant, which is far more contagious than previous variants, but

---

[4] All but three Plaintiff students allege that they have been vaccinated; two allege that they have not been vaccinated because they are younger than five, and one alleges that she has not been vaccinated due to her medical condition. FAC ¶¶ 73, 81, 91, 100, 108, 118, 127, 137, 146, 157, 167, 177.

also leads to less severe disease. Greene Aff. ¶¶ 6–7. Due to Omicron's greater contagiousness, "universal masking" mandates "may be less effective against Omicron than previous variants." *Id.* ¶ 7. Omicron led to a rapid spike of COVID-19 cases in Virginia, followed by a rapid decline. *Id*. ¶ 6. COVID-19 cases in Virginia are now 86.4 percent lower than their peak in January 2022. *Id*.

## III. Governments and experts abandon universal student masking mandates in schools

Given these changes in scientific knowledge and COVID-19 since 2020, it is unsurprising that an increasing number of experts and governmental bodies do not support universal student mask mandates. Most recently, the CDC, which for nearly a year recommended universal masking in schools, now recommends universal school masking only in jurisdictions where "Community Levels"[5] of COVID-19 are "high."[6] CDC, *COVID-19 Community Levels* (Feb. 25, 2022), Ferguson Decl., Ex. O. The CDC has also lifted its universal school-bus masking mandate. CDC, *Order: Wearing of Face Masks while on Conveyances and at Transportation Hubs* (revised Feb. 25, 2022), Ferguson Decl., Ex. P. The CDC now says that masking for healthy people in areas with low and medium Community Levels—where approximately 72 percent of the U.S. population lives[7]— is a matter of "personal preference, informed by personal level of risk." Ferguson Decl., Ex. O.

The twelve minor plaintiffs in this case attend schools in ten different jurisdictions. The CDC now recommends universal masking in only two of those jurisdictions—Albemarle and

---

[5] "Community Levels" are a function of the number of COVID-19 hospital admissions in the previous seven days, the percentage of hospital beds occupied by COVID-19 patients, and the total number of new COVID-19 infections in the previous seven days. Ferguson Decl., Ex. O.

[6] See CDC, *K-12 Schools* (Jan. 13, 2022), https://tinyurl.com/5n98ve5m (noting that the new COVID-19 Community Levels recommendations "align precautions for educational settings with" guidance for all other settings).

[7] Sarah Toy & Jon Kamp, *CDC Eases Mask Guidelines, Reflecting COVID-19's Retreat*, Wall St. J. (Feb. 25, 2022), https://tinyurl.com/bdz5t3m7.

Bedford Counties—where Community Levels are currently high. *Id.* Only two minor plaintiffs attend school in those counties. C.S., who is a student in Albemarle County, is currently receiving homebound instruction due to a serious illness, and his parents do not allege that a universal mask mandate would make him able to return to the classroom. See Mem. Supp. Pls.' Mot. TRO Ex. 1 ¶ 14–15. R.M. attends school in Bedford County and apparently still receives in-person instruction notwithstanding the absence of a universal mask mandate. See Mem. Supp. Pls.' Mot. TRO Ex. 7 ¶ 10 (R.M.'s parents "are trying to determine whether to keep [R.M.] home from school").

Similar to the CDC's new guidance, international organizations including the United Nations Children's Fund (UNICEF) and the World Health Organization (WHO) recommend against masking children younger than five, and do not recommend universal mask mandates for children ages six to eleven. Greene Aff. ¶ 17; Exs. 22, 37. Instead, they recommend that decisions to mask children six to eleven should be based on a multi-factor analysis, "including the child's ability to wear a mask safely and appropriately, and the potential impact of wearing a mask on the child's learning and psychosocial development." Greene Aff. ¶ 17, Ex. 22. A number of foreign countries and U.S. states have ended student mask mandates. *E.g.*, Greene Aff. ¶ 17.

In Virginia, Governor Youngkin made extensive findings in Executive Order 2 (EO 2), including that (1) universal masking orders "have proven ineffective and impractical" at reducing COVID-19 transmission, and harm children's development and mental health; (2) parents are in the best position to make decisions for their children, including whether their children should wear masks in school; and (3) there are numerous alternative methods to reduce COVID-19 transmission in schools. EO 2, Ferguson Decl., Ex. G. Governor Youngkin therefore rescinded the statewide student mask mandate and ordered that "[t]he parents of any child enrolled in an

elementary or secondary school or a school based early childcare and educational program may elect for their children not to be subject to any mask mandate in effect at the child's school or educational program." Ferguson Decl., Ex. G ¶ 2. EO 2 took effect on January 24, 2022.

A number of Virginia schools refused to comply with EO 2 and continued to enforce student mask mandates. Schools disciplined children whose parents had elected for them not to wear masks, including segregating children from their classrooms, sending them to the principal's office, and suspending them from school. Ferguson Decl., Ex. A ¶¶ 15–17; Ferguson Decl., Ex. B ¶¶ 6, 16; Ferguson Decl., Ex. C ¶¶ 8, 22–23. Schools even disciplined children who were unable to wear masks due to "serious medical issues." Belt Aff., Ferguson Decl., Ex. E ¶ 6. On February 16, the General Assembly passed with bipartisan support, and the Governor signed into law, a new statute that codified EO 2's provisions that parents "may elect for [their] child to not wear a mask while on school property" and that "[n]o student shall suffer any adverse disciplinary or academic consequences as a result of this parental election." Va. Code § 22.1-2.1 (S.B. 739). The compliance deadline for S.B. 739 is March 1, 2022.

On February 1, 2022, Plaintiffs sued to enjoin enforcement of EO 2, contending that the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, require that schools be permitted to impose universal student mask mandates to protect students with disabilities from contracting COVID-19 while at school. On February 10, 2022, Plaintiffs moved for a statewide temporary restraining order and preliminary injunction against EO 2. On February 18, 2022, Plaintiffs amended their complaint to also seek an injunction against S.B. 739, and on February 22, 2022, Plaintiffs likewise supplemented their motion to seek the same relief.

## LEGAL STANDARDS

A preliminary injunction or temporary restraining order is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *U.S. Dep't of Labor v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n.1 (4th Cir. 2006). To obtain either form of relief, Plaintiffs must show that "(1) they are likely to succeed on the merits of their claim, (2) they are likely to suffer irreparable harm without an injunction, (3) the balance of equities tilts in their favor, and (4) issuing an injunction is in the public interest." *North Carolina State Conf. of the NAACP v. Raymond*, 981 F.3d 295, 302 (4th Cir. 2020) (citing *Winter*, 555 U.S. at 20).

A motion to dismiss for lack of standing or failure to exhaust administrative remedies under the Individuals with Disabilities Education Act (IDEA) is governed by Federal Rule of Civil Procedure 12(b)(1). *D.N. v. Louisa Cty. Pub. Sch.*, 156 F. Supp. 3d 767, 771 (W.D. Va. 2016); *M.M. ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F.3d 523, 536 (4th Cir. 2002) (exhaustion). Under Rule 12(b)(1), the burden of proof is on the plaintiff, and the Court may consider evidence outside the pleadings to determine its jurisdiction. *Canterbury v. J.P. Morgan Acquisition Corp.*, 958 F. Supp. 2d 637, 650 n.5 (W.D. Va. 2013) (Moon, J.) (standing), *aff'd sub nom. Canterbury v. J.P. Morgan Mortg. Acquisition Corp.*, 561 Fed. Appx 293 (4th Cir. 2014). Under Rule 12(b)(6), "[t]o survive a motion to dismiss [for failure to state a claim], a plaintiff must plead enough factual allegations to state a claim to relief that is plausible on its face." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020).

## ARGUMENT

## I. Plaintiffs lack standing because the challenged provisions have not injured them

First, Plaintiffs' claims fail because they lack standing. "To satisfy the irreducible constitutional minimum of standing, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018) (alterations and internal quotation marks omitted) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "The plaintiff[s], as the part[ies] invoking federal jurisdiction, bear[ ] the burden of establishing these elements." *Spokeo*, 578 U.S. at 338. Plaintiffs have not met their burden here. First, their alleged injuries are either speculative contentions concerning increased risks of future harm, or are self-inflicted. Second, their alleged injuries are not traceable to the challenged provisions, nor will they be redressed by the remedy they request because Plaintiffs' schools are not parties to this suit, and an injunction against the Defendants would impose no obligation of any kind on their schools.

### A.    Plaintiffs have not alleged an injury in fact

To satisfy the injury-in-fact requirement, a plaintiff must have "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To qualify as "imminent," an alleged future harm either must be "'certainly impending' or there [must be] a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). "[A]llegations of *possible* future injury are not sufficient." *Clapper*, 568 U.S. at 409 (internal quotation marks omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)); see *Beck v. McDonald*, 848 F.3d 262, 271 (4th Cir. 2017).

Here, Plaintiffs assert EO 2 and S.B. 739 have injured them by creating "a Hobson's choice: expose their children to an educational environment that increases their risk of contracting, and suffering severe illness from, COVID-19 or keep them out of school and isolated from their teachers and peers." Mem. Supp. Pls.' Mot. TRO 4. But as the Fifth Circuit recently held in

a very similar case, this "binary choice" is "false" and does not support standing because it "wholly elides the various accommodations available to the plaintiffs (*e.g.*, distancing, voluntary masking, class spacing, plexiglass, and vaccinations)." *E.T. v. Paxton*, 19 F.4th 760, 766 (5th Cir. 2021).

Just as in *E.T.*, nothing in the challenged provisions prevent Plaintiffs and their schools from engaging in alternate strategies to reduce their risk of contracting COVID-19, apart from mandating that all *other* students wear masks. To the contrary, EO 2 affirmatively encourages the use of other mitigation strategies, including improving ventilation and voluntary masking. Ferguson Decl., Ex. G. And as discussed in more detail below, *see infra* Argument Part II.A, Plaintiffs' schools may be able to employ a host of additional accommodations, such as masking requirements for teachers or staff when in close proximity to Plaintiffs; physical distancing from unmasked students; voluntary masking; improved ventilation; or distance learning, where appropriate. Indeed, some Plaintiffs allege that their schools are using these measures. See, *e.g.*, Pls.' Suppl. Mot. TRO Ex. 17 ¶ 7 (Plaintiff I.C.'s teacher changed his seating assignment to distance him from unmasked classmates); Pls.' Suppl. Mot. TRO Ex. 15 ¶ 11 (all children in Plaintiff J.N.'s classroom have voluntarily continued wearing masks).

Plaintiffs themselves may be able to take additional measures to reduce their risk substantially. These measures include wearing an N95 or KN95 mask, which can reduce the wearer's risk of contracting COVID-19 by up to 83 percent, regardless of whether others in the vicinity are also masked. Greene Aff. ¶ 13, Ex. 12. Vaccines reduce the risks of suffering serious complications from COVID-19 by more than 90 percent, *id.* ¶ 5, Ex. 41; all but three of the Plaintiff students allege that they have been vaccinated, see *supra* n.4. "[G]iven the other preventative measures available to plaintiffs and the schools they attend, any injury-in-fact arising from the

enforcement of [the challenged provisions] appears speculative or tentative, not actual or imminent." *E.T.*, 19 F.4th at 766.[8]

Plaintiffs have not shown an injury in fact for the additional reason that they have not demonstrated that the challenged provisions substantially increase their risks of contracting COVID-19 or that they have a substantial probability of imminent harm. See *Clapper*, 568 U.S. at 414 n.5. "Much government regulation slightly increases a citizen's risk of injury—or insufficiently decreases the risk compared to what some citizens might prefer," but such "probabilistic" effects do not support standing. *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin*., 489 F.3d 1279, 1295 (D.C. Cir. 2007) (Kavanaugh, J.); see *Shrimpers & Fishermen of RGV v. Tex. Comm'n on Envtl. Quality*, 968 F.3d 419, 424 (5th Cir. 2020) (same). Rather, to proceed on an "increased risk" theory, Plaintiffs must demonstrate "at least *both* (i) a *substantially* increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into account." *Public Citizen*, 489 F.3d at 1295. Plaintiffs have not met this standard here; their claim "relat[es] to an increased risk of a hypothetical future injury that may never occur, or which may still occur even if the relief that they seek is granted." *Doe 1 v. Upper Saint Clair Sch. Dist.*, No. 2:22-cv-112, 2022 WL 189691, at *7 (W.D. Pa. Jan. 21, 2022) (rejecting challenge to mask-optional school policy, *inter alia*, for lack of standing).

---

[8] Plaintiffs rely on *Arc of Iowa v. Reynolds*, 24 F.4th 1162 (8th Cir. 2022), for the proposition that they suffer an injury in fact, but that case is both inapposite and less persuasive than *E.T.* Unlike the challenged provisions here, the order at issue in *Arc of Iowa* prohibited any mask requirements in schools, including for teachers and staff. *Id*. at 1168. In addition, schools were defendants in *Arc of Iowa*, and the plaintiffs alleged that their schools had "failed" to provide any reasonable accommodations, not just universal student masking. *Id*. at 1170. For instance, the Eighth Circuit held that a plaintiff with asthma had standing based on allegations that his "school rejected a request" for the school nurse to wear a mask while helping the student "administer his inhaler." *Id*. (alterations omitted). Nothing in the challenged provisions here, however, would prevent a school from granting such a request. Indeed, *Arc of Iowa* expressly distinguished *E.T.* on the ground that, unlike in *E.T.*, teachers in *Arc of Iowa* were refusing to mask. *Id*.

Plaintiffs have failed to establish anything approaching a substantially increased risk of injury. Recognizing the substantially reduced risks of COVID-19, the CDC no longer recommends universal masking for the vast majority of schoolchildren in Virginia[9]—including nearly every Plaintiff in this case. See *supra* Background Part III. Moreover, evidence shows that "strict masking in school imposes hardship while providing only questionable benefit toward reducing the transmission of COVID-19." Greene Aff. ¶ 19. Multiple studies have found that student masking mandates do not have a significant effect on COVID-19 transmission in schools. *Id.* ¶ 19, Exs. 26, 27, 36, 48, 54. In Virginia, regions "with more restrictive masking policies and practices have experienced transmission rates similar to, or greater than, the transmission rates" of regions without mask mandates. *Id.* ¶ 16. Student mask mandates may be ineffective because children frequently wear masks incorrectly or intermittently, and often wear "masks made of plain cloth, [and] masks that are soiled or poorly fitting," which have "reduced or no benefit." *Id.* ¶ 10; see Ferguson Decl., Ex. A ¶ 10; *supra* Background Part II. Plaintiffs also have not demonstrated a "substantial probability" that they will contract COVID-19 given the recent precipitous decline in Virginia cases as well as the availability of vaccines and other highly effective mitigation measures. *Supra* Background Part I. In short, "[t]he risks of contracting COVID-19 for these plaintiffs are certainly real, but the alleged injury to plaintiffs from the enforcement of [the challenged provisions] is, at this point, much more abstract," and does not support standing. *E.T.*, 19 F.4th at 766.

Plaintiffs' allegations that the challenged provisions have "forc[ed] them out of the public school system," Mem. Supp. Pls.' Mot. TRO 17, also cannot support standing. Article III does

---

[9] Jeff Williamson, *New CDC Masking Guidance Still Has 48% of Virginia Cities and Counties Wearing Masks Indoors*, WSLS (Feb. 25, 2022), https://tinyurl.com/3bpthd6r (noting that the CDC no longer recommends universal masking nearly 78 percent of Virginia's population).

not permit a plaintiff "to manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416; accord *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 216 (4th Cir. 2017). While some Plaintiffs have chosen not to attend schools in the absence of a universal student mask mandate, any "deprivation of access to in-person education" is "attributable to choices made by plaintiffs," and such "self-inflicted" injury is "insufficient to confer standing." *E.T.*, 19 F.4th at 766 n.2.

**B.    Plaintiffs' alleged injuries are not traceable to Defendants' conduct or redressable by the Court**

Plaintiffs also lack standing because their alleged injuries are not traceable to Defendants' conduct or redressable by the Court. "For an injury to be traceable, 'there must be a causal connection between the injury and the conduct complained of' by the plaintiff." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018) (quoting *Lujan*, 504 U.S. 560). Standing also requires that any injury be "likely to be redressed by a favorable judicial decision." *Deal*, 911 F.3d at 187 (quoting *Spokeo*, 578 U.S. at 338).

Most relevant here, an injury is neither traceable to the defendant's conduct nor redressable by a judicial order when it "results from the independent action of some third party." *Frank Krasner Enters. v. Montgomery County*, 401 F.3d 230, 234 (4th Cir. 2005) (quoting *Allen v. Wright*, 468 U.S. 737, 757 (1984)). When, as here, "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation of someone" other than the plaintiff, the plaintiff must "adduce facts showing that [the third party's] choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562. Traceability and redressability in cases turning on the conduct of independent third parties not before the court are "ordinarily 'substantially more difficult' to establish" than cases where the plaintiff is the object of the allegedly unlawful regulation. *California v. Texas*, 141 S. Ct. 2104,

2117 (2021) (quoting *Lujan*, 504 U.S. at 562). And the plaintiff "cannot rely on speculation about 'the unfettered choices made by independent actors not before the Court'" to demonstrate that his injury would be redressed by the order he seeks. *Clapper*, 568 U.S. at 414 n.5 (quoting *Lujan*, 504 U.S. at 562).

Plaintiffs cannot demonstrate traceability and redressability here for several reasons. First, for all the reasons explained above, student mask mandates are largely ineffective at reducing the transmission of COVID-19, and an injunction of the challenged provisions would therefore not redress Plaintiffs' alleged injury. *Supra* Background Part II.

Second, Plaintiffs cannot demonstrate traceability or redressability because the relief they seek—an injunction of EO 2 and S.B. 739—would have no effect on Plaintiffs unless independent third-party actors—Plaintiffs' school boards, who are not parties to this suit—chose to re-impose universal student mask mandates. *See E.T.*, 19 F.4th at 766 (holding that students lacked standing to sue Attorney General because nothing in the relief requested "would require the schools to remedy plaintiffs' alleged injury via local mask mandates"). Plaintiffs do not suggest that the relief they request would require their schools to impose mask mandates. Plaintiffs argue, however, that the injunction is necessary to "allow school districts to . . . consider whether to implement mask requirements as needed to protect the health and safety of the children they serve." FAC ¶ 67; see also Mem. Supp. Pls.' Mot. 37. But it is "wholly speculative" whether the school divisions where Plaintiffs attend school—which are not a party to this suit and would not be bound by the Plaintiffs' requested injunction—would exercise this "discretion" to re-impose universal masking mandates. *Disability Rts. S. Carolina v. McMaster*, 24 F.4th 893, 903 (4th Cir. 2022). Plaintiffs therefore run afoul of the basic principle that a party lacks standing when its

requested relief "rest[s] on speculation about the decisions of independent actors." *Clapper*, 568 U.S. at 414.

For one thing, Plaintiffs' requested injunction would not actually confer on the school boards any "discretion" they do not currently enjoy. Defendants do not have any special authority to enforce EO 2 or S.B. 739. The only "enforcement" activity identified by the Plaintiffs is that three Defendants—the Governor, Attorney General, and Superintendent of Public Instruction—have participated in lawsuits filed by others to protect the rights of parents to opt their children out of student masking mandates. See Commonwealth's Memo. Law 1, *Alexandria City Sch. Bd. v. Youngkin*, No. 22-224 (Arlington Cnty. Cir. Ct. Feb. 1, 2022), Ferguson Decl., Ex. I; Commonwealth's Memo. L. 1, *Barnett v. Loudoun Cnty. Sch. Bd.*, No. 22-546 (Loudoun Cnty. Cir. Ct. Feb. 14, 2022), Ferguson Decl., Ex. L.[10] They have done so pursuant to a statute that permits them to sue to protect the rights of citizens of the Commonwealth, not a particular enforcement power related to EO 2 or S.B. 739. *See* Va. Code § 2.2-111; *Gilmore v. Finn*, 259 Va. 448 (2000). *Any* parent aggrieved by a school board's refusal to comply with EO 2 or S.B. 739 similarly could sue to protect his or her right to opt out of a masking mandate. Indeed, every suit to enforce EO 2 was initiated by parents, not by Defendants. *See* Compl., *Lukas v. Fairfax Cnty. Sch. Bd.*, 22-2033 (Fairfax Cnty. Cir. Ct. Feb. 14, 2022); Compl., *Barnett v. Loudoun Cnty. Sch. Bd.*, No. 22-546 (Loudoun Cnty. Circuit Ct. Feb. 1, 2022); Temp. Inj. Mot., *Riddell-Bellido v. Frederick Cnty. Pub. Schs.*, No. 22-51 (Frederick Cnty. Cir. Ct. Feb. 1, 2022).[11] Enjoining

---

[10] Plaintiffs claim that Defendants threatened to "enforce" EO 2 in a February 9, 2022 letter from the Chief Deputy Attorney General to Plaintiffs' counsel. See Mem. Supp. Pls.' Mot. TRO Ex. 14. In fact, the Chief Deputy Attorney General responded to Plaintiffs' threat to seek immediate injunctive relief in their ongoing lawsuit, *see* Ferguson Decl., Ex. M, by promising to "defend" EO 2 against legal challenges Mem. Supp. Pls.' Mot. TRO Ex. 14. A promise to "defend" a law in an ongoing lawsuit is not a threat to enforce it.

[11] The Governor participated in *Alexandria City School Board* as a Defendant-Counterclaimant after seven school boards sued him, see Compl., *Alexandria City Sch. Bd. v. Youngkin*, No. 22-224 (Arlington Cnty. Cir. Ct. Jan. 24, 2022), Ferguson Decl., Ex. H, and the Commonwealth, by the Governor and Attorney General, intervened as a

Defendants from "enforcing" EO 2 or S.B. 739 therefore would not free school boards from having EO 2 or S.B. 739 enforced against them.

Even if Plaintiffs' requested injunction conferred on school boards the discretion Plaintiffs claim it would, Plaintiffs "must show at the least 'that [school boards] will likely'" exercise that discretion to impose universal student masking mandates. *California*, 141 S. Ct. at 2117 (quoting *Department of Commerce v. New York*, 139 S. Ct. 2551, 2566 (2019)). Plaintiffs have failed to satisfy this burden.

First, the Supreme Court of Virginia held before S.B. 739 became law that school boards enjoyed "discretion to modify or even forgo [universal masking] as they deem appropriate for their individual circumstances." *Castillo v. Youngkin*, Record No. 220033, slip op. at 3 (Feb. 7, 2022) (unpublished), Ferguson Decl., Ex. N. And Plaintiffs acknowledge that at least some of the school divisions where Plaintiffs attend school exercised that discretion to lift their universal masking mandate irrespective of EO 2 or S.B. 739. See, *e.g.*, FAC ¶ 60 (alleging that Bedford County had voted to end universal masking mandates *before* Governor Youngkin was sworn into office).

Second, it blinks reality to assume, as Plaintiffs do, that the school divisions would re-impose *now* the same mitigation measures they imposed months ago. The CDC no longer recommends universal masking for nearly 78 percent of Virginia's population,[12] including for ten of the twelve plaintiff students in this case. See *supra* Background Part III.[13] Confirmed case counts in

---

Plaintiff in a lawsuit to enforce EO 2 filed by parents, see Compl. in Intervention, *Barnett v. Loudoun Cnty. Sch. Bd.*, No. 22-546 (Loudoun Cnty. Cir. Ct. Feb. 2, 2022), Ferguson Decl., Ex. K.

[12] See Williamson, *supra* note 12.

[13] Plaintiffs offer nothing but pure speculation in support of their claim that either of the counties with currently high Community Levels would reimpose mask mandates if this Court issued the requested injunction. The Bedford County School Board voted to lift its universal student masking mandate before Governor Youngkin was sworn into office. FAC ¶ 61. At the time, the health district in which Bedford County lies (comprised of five counties and five cities) reported 532 cases of COVID-19 among children. See Va. Dep't Health, *Weekly Health District Case Data*, https://tinyurl.com/2p9eabe6 (hereinafter "Weekly Case Data"). Bedford County reported 176 total cases

18

Virginia have plummeted 77 perecent since Plaintiffs filed their complaint (from 35,239 the

week of January 29 to 8,104 the week of February 19), and nearly 90 percent since Governor

Youngkin issued EO 2 (from 76,080 the week of January 15 to 8,104 the week of February 19).[14]

And substantial evidence demonstrates that universal student masking mandates are ineffective

and harmful mitigation measures. See *supra* Background Part II. Plaintiffs' *ipse dixit* assertion

that the school divisions would impose universal student masking mandates if this Court granted

the requested injunction therefore are not merely speculative—they are implausible. See *Depart-

ment of Commerce*, 139 S. Ct. at 2566 (holding that plaintiffs cannot establish standing on basis

of conduct of independent third parties without demonstrating that "third parties will likely react

in predictable ways").

* * *

At bottom, Plaintiffs simply cannot obtain their desired relief—universal mask mandates

in their schools—by way of the remedy they have requested—an injunction prohibiting the De-

fendants from "enforcing" EO 2 and S.B. 739. The requested relief would not require Plaintiffs'

schools to impose universal mask mandates. And Plaintiffs have failed to demonstrate that the

school boards would respond to the requested injunction by choosing to impose universal

---

among all ages. See Va. Dep't Health, *COVID-19 in Virginia: Locality*, https://tinyurl.com/5xpw7bfw (hereinafter "COVID-19 by Locality"). Case rates among children in the health district have since declined more than 87% to 68 cases among children, see Weekly Case Data, and total case rates in Bedford County have dropped nearly 81% to 34 total cases, see COVID-19 by Locality. It strains credulity to argue that a county that *voluntarily* rescinded its mask mandate would voluntarily reimpose it after case counts fell more than 80% in the interim.

    The same is true of Albemarle County. The health district in which Albemarle County lies (comprised of five counties and one city) reported 719 COVID-19 cases among children the week after Governor Youngkin signed EO 2, see Weekly Case Data, and Albemarle County reported a daily high of 318 total cases that same week, see COVID-19 by Locality. Case counts among children in the health district have since plummeted 81% to 135 cases, see Weekly Case Data, and total cases in Albemarle have fallen nearly 85% from their January peak to 48 total cases, see COVID-19 by Locality. Plaintiffs offer no persuasive rationale to explain why Albemarle would reimpose a universal student masking mandate while case counts continue to fall.

    [14] Va. Dep't Health, *COVID-19 in Virginia: Cases*, https://tinyurl.com/yckbdsu7.

masking mandates. Indeed, the evidence shows they would not. Plaintiffs therefore lack standing, and this Court should deny their request for preliminary injunctive relief and dismiss their complaint.

## II. Plaintiffs' ADA and Rehabilitation Act claims fail

### A. Plaintiffs failed to exhaust their administrative remedies as required by IDEA

Plaintiffs' choice to seek an injunction against EO 2 and S.B. 739 rather than requesting an accommodation from their schools also precludes their claims. Plaintiffs must exhaust administrative remedies before litigating ADA and Rehabilitation Act claims where, as here, their suit "seek[s] relief that is also available under" the Individuals with Disabilities Education Act (IDEA). 20 U.S.C. § 1415(l).[15]

The exhaustion requirement reflects a Congressional judgment that "school officials, teachers, and parents" should work together to craft a personalized plan to meet the student's needs before pursuing litigation. *Fry ex rel. E.F. v. Napoleon Community. Schools*, 137 S. Ct. 743, 749 (2017). It also permits local and state education officials to bring their expertise to bear in crafting that personalized plan. See *E.L. ex rel. Lorsson v. Chapel Hill-Carrboro Bd. of Educ.*, 773 F.3d 509, 514 (4th Cir. 2014). Only if the parents and local officials are unable to agree on an accommodation at the end of this administrative process are federal courts supposed to step in and resolve the dispute. *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 526 (2007).

---

[15] Three of the Plaintiffs allege that they requested that they be physically distanced from unmasked students as an accommodation under IDEA. FAC ¶ 172; Pls.' Suppl. Mot. TRO Ex. 17 ¶ 7; Pls.' Suppl. Mot. TRO Ex. 15 ¶¶ 7–8. J.M. alleges that the school denied this request due to his lack of "medical documentation" supporting it. FAC ¶ 172. I.C. alleges that his school changed his seating assignment in accordance with his request Pls.' Suppl. Mot. TRO Ex. 17 ¶ 7. J.N. alleges that the school has not yet responded to the request, but that all students in his class are voluntarily masking. Pls.' Suppl. Mot. TRO Ex. 15 ¶¶ 7–8. No Plaintiff alleges that he or she exhausted administrative remedies by challenging the school's decisions before the local or state educational agency. See *Fry*, 137 S. Ct. at 749; 20 U.S.C. § 1415(b)(6).

Here, "given the unique circumstances of each child . . . each of Plaintiffs' children would benefit from the individualized process afforded by the IDEA's administrative remedies." *Hayes v. DeSantis*, No. 1:21-cv-22863, 2021 WL 4236698, at *9 (S.D. Fla. Sept. 15, 2021) (rejecting ADA challenge to executive order making masks optional for schoolchildren for failure to exhaust administrative remedies); *Doe 1*, 2022 WL 189691, at *12 (similar). The provisions that Plaintiffs challenge affect only one potential mitigation strategy: universal student mask mandates. They do not affect the numerous other potential accommodations schools could offer.

Reasonable and appropriate accommodations are likely to vary according to the individual needs of each student and the circumstances of each school. Wholly apart from universal masking mandates, accommodations might include, for instance, Plaintiff students wearing masks themselves, particularly high-quality N95 or KN95 masks; maintaining physical distancing from unmasked students, such as through changes to seat or classroom assignments, see FAC ¶ 152 (alleging that school has "arranged for I.C. to sit . . . at a distance from other students"); masking for teachers, staff, and aides when in proximity to Plaintiffs; or options other than classroom instruction, such as one-on-one instruction or remote learning. See *supra* Background Part II.[16] In addition, schools can implement numerous other COVID-19 prevention measures, such as symptom screening, testing, contact tracing, and improvements in ventilation. See *supra* Background Part II. "Plaintiffs do not know to what extent some mutually acceptable accommodation could have been reached because they bypassed the entire administrative process." *Doe 1*, 2022 WL 189691, at *12. Their claims fail for this reason alone.

---

[16] Plaintiffs allege that some of their schools do not currently offer some of these options, such as remote learning or "requests for class changes or special seating assignments due to mask preference." See FAC ¶ 58, 142, 172. Again, however, Plaintiffs have not requested reasonable accommodations from their schools pursuant to IDEA. The very nature of a reasonable accommodation is that it is an *exception* to a school's generally applicable programs and policies to accommodate a student with a disability. See 20 U.S.C. § 1412.

Plaintiffs do not even mention this exhaustion requirement, apparently taking the position that it is inapplicable because they bring claims under the ADA and Rehabilitation Act rather than directly under IDEA. Any such position is erroneous. A parent must satisfy the IDEA exhaustion requirements for claims brought under the ADA and Rehabilitation Act whenever "the substance, or gravamen, of the plaintiff's complaint" "seek[s] relief for the denial" of a free appropriate public education, or "FAPE." *Fry*, 137 S. Ct. at 752. A FAPE includes a child's "'meaningful' access to education based on her individual needs." *Id*. at 753–54 (quoting *Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 192 (1982)). The "gravamen" of a complaint can be discerned from the answers to two "hypothetical questions." *Id*. at 756. "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school" such as a "a public theater or library?" *Id*. "And second, could an *adult* at the school," like "an employee or visitor[,] have pressed essentially the same grievance?" *Id*. "[I]f the answer to both questions is 'no,' then a plaintiff likely seeks relief for the denial of a FAPE, such that the exhaustion requirement applies." *Z.G. ex rel. C.G. v. Pamlico Cnty. Pub. Schs. Bd. of Educ.*, 744 Fed. Appx 769, 778–79 (4th Cir. 2018) (citing *Fry*, 137 S. Ct. at 756); *E.T.*, 19 F.4th at 767.

Here, as in *E.T.*, the IDEA exhaustion requirement applies because the gravamen of Plaintiffs' claims is "the deprivation of an in-person state-sponsored education because of their risk of contracting COVID-19 without a mask mandate." *E.T.*, 19 F4th at 767. This "essential aspect of plaintiffs' claims, access to in-person learning, could not be levied against 'a public facility that was not a school.'" *Id*.; see *Hayes*, 2021 WL 4236698, at *10 (similarly holding that IDEA exhaustion requirement applies to executive order allowing for parental opt-out from school mask mandate). Indeed, Plaintiffs repeatedly assert that the challenged provisions are

unlawful because they force them "to choose between putting [Plaintiff students] at risk of severe illness if they contract COVID-19 and keeping them home with little or no education." FAC ¶ 2; see also, *e.g.*, *id.* ¶ 11 (alleging that EO 2 and S.B. 739 "illegally force parents of students with disabilities to choose between their children's education and their health and safety"); ¶¶ 103–105 (alleging that "virtual learning . . . did not work well" for Plaintiff G.D., and "without a mask mandate, G.D. cannot participate in his public education, which harms his educational progress"); ¶¶ 22, 82, 135, 143 (referencing the "Individualized Education Programs" or "IEPs" of Plaintiffs J.N. and C.B.).[17]

Because the gravamen of Plaintiffs' claims is the deprivation of a public education, the claims could not be brought by adults or as to other public facilities. Indeed, to the extent that Plaintiffs contend that their claims *could* be made outside a school setting, that would simply underscore the extraordinary breadth of, and absence of any limiting principle to, their theory of liability: on such a theory, the ADA and Rehabilitation Act would apparently also require universal mask mandates for all adults in all "place[s] of public accommodation." 42 U.S.C. § 12182; see *Doe 1*, 2022 WL 189691, at *11 (noting that if IDEA exhaustion is inapplicable to challenge to school masking policy, then Plaintiffs' position that ADA requires universal mandatory masking would logically apply equally to "any workplace" and "any place of commerce"). Further, this universal mask mandate requirement would apparently extend indefinitely, as people with disabilities may be highly vulnerable to a wide range of infectious diseases, not just COVID-19. See Greene Aff. ¶ 9, Ex. 45. Plaintiffs do not appear to press such a sweeping and unlimited construction of these statutes, which would amount to a claim that Congress has perpetually preempted

---

[17] *Arc of Iowa* is again distinguishable because plaintiffs in that case did "not challenge[] the adequacy of their individual, special education services, or their IEPS," but only the "physical environment" of their schools. 24 F.4th at 1175.

state and local authority on the important policy question of when to mandate the wearing of face masks.

Because Plaintiffs have not exhausted their administrative remedies, their motion for a temporary restraining order and preliminary injunction should be denied and Defendants' motion to dismiss should be granted.

**B.      Student mask mandates are not a reasonable accommodation under the ADA or the Rehabilitation Act**

Plaintiffs' claims also fail on the merits because a universal student mask mandate is not a reasonable accommodation under the ADA or Rehabilitation Act, much less the *only* possible reasonable accommodation that could satisfy those statutes.

Even if the IDEA exhaustion requirement were inapplicable, but see *supra* Argument Part II.A, a plaintiff generally "must make an adequate request" for a reasonable accommodation under the ADA, "thereby putting the [defendant] on notice" of the plaintiff's disability. *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346–47 (4th Cir. 2013) (quoting *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011)); *Reyazuddin v. Montgomery County*, 789 F.3d 407, 414 (4th Cir. 2015) (explaining that a prima facie claim under the Rehabilitation Act requires "notice of [the plaintiff's] disability"); *Chenari v. George Wash. Univ.*, 847 F.3d 740, 746–47 (D.C. Cir. 2017) (similar). Where, as here, Plaintiffs have not requested a reasonable accommodation before bringing suit, they must "demonstrate that the reasonable accommodation they proposed to the court" is both "necessary and obvious." *E.T.*, 19 F.4th at 768; *Updike v. Multnomah County*, 870 F.3d 939, 951 (9th Cir. 2017); *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1280, 1298 (10th Cir. 2016). Without such a showing, Plaintiffs cannot demonstrate that they have been "excluded from participation in or denied the benefits of" public education "on the basis of [their]

disabilit[ies]." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).

Plaintiffs cannot meet this standard, because the evidence "does not support the conclusion that a mask mandate would be both *necessary* and *obvious* under the ADA or the Rehabilitation Act." *E.T.*, 19 F.4th at 768. "While Plaintiffs may prefer a mask mandate and other stricter policies, Defendants are not required to provide Plaintiffs with their preferred accommodation." *L.E. v. Ragsdale*, No. 1:21-cv-4076, 2021 WL 4841056, at *3 (N.D. Ga. Oct. 15, 2021). Rather, the ADA and Rehabilitation Act only require schools to make some reasonable accommodation that affords students "meaningful access to education." *Id.*; *Fink v. Richmond*, 405 Fed. App'x. 719, 722 (4th Cir. 2010) (under Title II, an entity is "only required to offer a *reasonable* accommodation, not the perfect or [the plaintiff's] preferred accommodation" (quoting *Fink v. Richmond*, No. 07-cv-714, 2009 WL 3216117, at *8 (D. Md. Sept. 29, 2009))); *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (same). As described above, the challenged provisions leave Plaintiffs' schools free to make a host of potential accommodations for Plaintiffs' conditions, other than universal student mask mandates. See *supra* Argument Part II.A. Plaintiffs have not and cannot show "that the *only* reasonable accommodation appropriate in light of child Plaintiffs' conditions is a requirement of universal masking in the[ir] School District[s]." *Doe 1*, 2022 WL 189691, at *14; see *Doe #1 v. Del. Valley Sch. Dist.*, No. 3:21-CV-1778, 2021 WL 5239734, at *28 (M.D. Pa. Nov. 11, 2021) (similar). Their claims therefore fail.

A universal student mask mandate is not a "reasonable accommodation" at all, much less a necessary and obvious one. To the contrary, as discussed above, the CDC no longer recommends universal masking for the vast majority of schools in America—including schools attended by ten of the twelve Plaintiff students here. See *supra* Background Part III. Student mask

mandates are also largely ineffective at reducing transmission of COVID-19 in schools. See *supra* Background Part II; Greene Aff. ¶ 19, Exs. 26–27, 36, 48, 54. At the same time, student mask mandates harm children's academic and social development. Greene Aff. ¶ 14, Exs. 14, 27–32, 34, 39. Mask mandates appear to be especially harmful to children with certain disabilities or medical conditions, including speech and language impairments, autism, and anxiety disorders. Greene Aff. ¶ 15, Exs. 16–17, 23, 25, 35, 44, 46–47, 52. One Plaintiff herself alleges that she is unable to wear a mask in school due to her disability. FAC ¶ 157. An accommodation is not reasonable where it "tramples on the rights of other [students]" in this manner. *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 355 (4th Cir. 2001); *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 152 (1st Cir. 1998) (finding that an accommodation is not reasonable where it would have "impaired the educational experience of the other students").

In addition, "the unreasonableness of Plaintiffs' position is highlighted by its unprecedented nature" and lack of a limiting principle. *Doe 1*, 2022 WL 189691, at *15. As another court remarked in rejecting a similar claim, "[a]lthough immunocompromised children have always been present in our schools, and communicable diseases have always circulated, prior to COVID-19 there was never an argument for mandatory, indefinite, universal masking in schools—much less the argument that the failure of a school district to mandate universal masking constitutes a violation of federal law." *Id*. Indeed, "[a]side from cases addressing COVID-19," there does not appear to be "a single case where a court held that a reasonable accommodation for an immunocompromised or otherwise vulnerable person was to require all other students and staff of a school, or constituents of an institution or community, to wear a mask or any other type of personal protective equipment." *Id*. Yet immunocompromised students may be highly vulnerable to a wide range of infectious diseases such as influenza, not only to COVID-19. See,

*e.g.*, Greene Aff. ¶ 9, Ex. 45. For all these reasons, student mask mandates are not a reasonable accommodation, much less the only possible reasonable accommodation, under the ADA and Rehabilitation Act.

### C.     Federal law does not preempt EO 2 or S.B. 739

Plaintiffs' claims that the ADA, Rehabilitation Act, and American Rescue Plan Act (ARPA) preempt EO 2 and S.B. 739 also fail.

None of these statutes contains an express preemption clause; rather, Plaintiffs contend they *implicitly* preempt EO 2 and S.B. 739 because the latter "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" contained in the former. FAC ¶ 210 (quoting *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 204 (1983)). As to the ADA and Rehabilitation Act, this argument fails unless Plaintiffs can demonstrate "that application of [the challenged provisions] would make it impossible for schools to comply with" federal law because "a mask mandate would be the only way to provide plaintiffs an in-person public education." *E.T.*, 19 F.4th at 768. Plaintiffs cannot make this showing for the same reasons that they cannot succeed on the merits of their ADA and Rehabilitation Act claims: they have not demonstrated that student mask mandates are a reasonable accommodation for each individual Plaintiff's disability in view of the circumstances of each Plaintiff's school, much less that there are no alternative reasonable accommodations that could harmonize EO 2 and S.B. 739 with federal law. Particularly in light of the "presumption against pre-emption in areas of traditional state regulation," *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 151 (2001), such as "education," *United States v. Lopez*, 514 U.S. 549, 580 (1995) (Kennedy, J., concurring), Plaintiffs' conflict preemption argument fails.

Plaintiffs' contention that ARPA preempts EO 2 and S.B. 739 is meritless. First, the claim fails at the outset because Plaintiffs have no cause of action under ARPA. There is "no language

in the act . . . that appears to create such an action," *E.T.*, 19 F.4th at 769 n.3, and ARPA does not

grant any rights to private individuals such as Plaintiffs. Rather, ARPA merely establishes a grant

program under which states receive grants, and may make subgrants to governmental bodies in-

cluding school divisions. See American Rescue Plan Act of 2021, Pub. L. No. 117-2, § 2001, 135

Stat. 4, 19. "Unless Congress 'speaks with a clear voice,' and manifests an 'unambiguous intent'

to confer individual rights, federal funding provisions provide no basis for private enforcement

under § 1983." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002) (alterations omitted) (quoting

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 28 & n.21 (1981)); *see also Ziglar*

*v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) ("If the statute does not itself so provide, a private cause

of action will not be created through judicial mandate."). The "absence of any *private substantive*

*right* in [ARPA] forecloses federal relief based on alleged violations" of the Act. *Safe Streets Al-*

*liance v. Hickenlooper*, 859 F.3d 865, 892 (10th Cir. 2017).

Second, ARPA does not preempt EO 2 or S.B. 739 because it does not conflict with those

provisions. Again, ARPA has no express preemption clause, and Plaintiffs must therefore over-

come "the basic assumption that Congress did not intend to displace state law." *Maryland v. Lou-*

*isiana*, 451 U.S. 725, 746 (1981). Plaintiffs rely upon statutory language indicating that Congress

allocated funds to assist with "[d]eveloping strategies and implementing public health protocols

including, to the greatest extent practicable, policies in line with guidance from the Centers for

Disease Control and Prevention for the reopening and operation of school facilities to effectively

maintain the health and safety of students, educators, and other staff." FAC ¶ 216 (quoting Pub.

L. No. 117-2, § 2001(e)(2)(Q), 135 Stat. 4, 21 (2021)). But nothing in this language remotely

suggests that federal law *requires* schools to follow CDC guidance if they have taken ARPA

funds—and even if it did, the CDC no longer recommends universal student masking for the vast

majority of American students. Plaintiffs themselves concede that ARPA "*did not mandate* that local school districts adopt CDC guidance." *Id.* ¶ 218 (emphasis added). Rather, the Department of Education rule implementing ARPA requires only that a school "describe in its plan the extent to which it has adopted the key prevention and mitigation strategies identified in the guidance[.]" Am. Rescue Plan Act Elementary and Secondary School Emergency Relief Fund, 86 Fed. Reg. 21,195, 21,200 (April 22, 2021); see also Mem. Supp. Pls.' Mot. TRO 26.

EO 2 and S.B. 739 do nothing to prevent schools from "describ[ing] the extent to which [they have] adopted" CDC guidance. 86 Fed. Reg. at 21,200. Nor do those provisions prevent schools from using ARPA funds to adopt COVID-19 mitigation measures recommended by CDC, including improvements to ventilation, testing and contact tracing, providing vaccinations, sanitizing, and other measures. See *id.* Particularly in light of the "presumption against pre-emption in areas of traditional state regulation" such as education, *Egelhoff*, 532 U.S. at 151, ARPA cannot plausibly be read as preempting EO 2 or S.B. 739.

## III. The other factors governing equitable relief weigh in favor of Defendants

### A. Plaintiffs will not suffer irreparable harm in the absence of preliminary relief

Plaintiffs' motion for a temporary restraining order or preliminary injunction should also be denied because Plaintiffs have not demonstrated that they will suffer irreparable harm if the Court does not enjoin EO 2. To satisfy this requirement, "a plaintiff must demonstrate more than just a 'possibility' of irreparable harm," since "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (quoting *Winter*, 555 U.S. at 22); see also *Allee v. Streeval*, 2021 WL 2784555, at *1 (W.D. Va. July 2, 2021) ("To qualify as irreparable, the feared harm must be neither remote nor speculative, but actual

and imminent, such that it poses a real and immediate threat." (internal quotation marks omitted) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989))).

For all the reasons set forth above, Plaintiffs have failed to show that they will suffer an irreparable injury, or even any injury in fact, in the absence of an injunction. See *supra* Argument Part I. The lack of student mask mandates does not substantially increase Plaintiffs' risk of contracting COVID-19, particularly given the alternate mitigation strategies that remain available to Plaintiffs and their schools. See *supra* Background Part II; Argument Part II.B. Indeed, the CDC having terminated its recommendation of universal masking for all but two of the schools attended by the Plaintiffs in this case reflects a recognition that universal masking is now generally unnecessary to reduce the risk of COVID-19 transmission. See *supra* Background Part III. A "preliminary injunction is not warranted where, as here, the moving parties have not shown that they availed themselves of opportunities to avoid the injuries of which they now complain." *Di Biase*, 872 F.3d at 235.

Moreover, the equitable relief requested by Plaintiffs would not even require their schools to change their masking policies in any way. See *supra* Argument Part I.B. Plaintiffs have therefore failed to show that the requested injunction is likely to avert irreparable injury. *Di Biase*, 872 F.3d at 235.

**B.    The balance of equities and public interest weigh in Defendants' favor**

The balance of equities and the public interest also weigh against an injunction. "These two elements are often considered together, especially when the government is the party opposing an injunction." *Belle Garden Est., LLC v. Northam*, No. 7:21cv00135, 2021 WL 1156855, at *7 (W.D. Va. Mar. 26, 2021) (collecting cases).

Here, enjoining the challenged provisions would harm the Commonwealth and Virginia students. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by

representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2021) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). "[T]he same reasoning applies" when a case involves "an executive order issued by the Governor under his emergency authority," *E.T.*, 19 F.4th at 770. S.B. 739 was enacted on a bipartisan basis to codify the protections of EO 2 because the General Assembly and Governor determined that its measures were urgently needed to confront the ongoing COVID-19 health emergency. The Commonwealth and its elected representatives have an ongoing duty to navigate the evolving public health emergency, and an injunction would interfere with their ability to weigh the evidence and determine how best to serve the interests of Virginia students, teachers, and parents amidst the changing conditions of the pandemic.

An injunction also would not serve the public interest given that student mask mandates are no longer generally recommended by the CDC, and are detrimental to many children's academic, social, and emotional development, and to their mental health. See *supra* Background Part III. And while Plaintiffs contend that universal mask mandates are necessary due to their disabilities, such mandates harm other children, including other children whose disabilities make it difficult for them to breathe, see, or communicate while wearing masks. See *supra* Background Part II; Greene Aff. ¶ 14; Exs. 14, 27–34. For these reasons, parents should be able to decide whether their children should continue to wear masks at school, and children should not be punished or removed from their classrooms on the basis of those choices. Enjoining EO 2 and S.B. 739 would therefore harm the public interest.

Finally, even if this Court were to conclude that any injunction is warranted, the injunction requested by Plaintiffs is vastly overbroad. "It is well established that 'injunctive relief

should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *Kentuckians for Commonwealth, Inc. v. Rivenburgh*, 317 F.3d 425, 436 (4th Cir. 2003) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Plaintiffs here apparently request a statewide injunction against EO 2 and S.B. 739 in all public schools. See, *e.g.*, FAC ¶ 224. But Plaintiffs have no cognizable interest in enjoining these provisions in schools that they do not attend, much less in school divisions where they do not live. A statewide injunction would therefore be far broader "than necessary to provide complete relief to the plaintiffs." *Rivenburgh*, 317 F.3d at 436 (quoting *Yamasaki*, 442 U.S. at 702); *see also E.T.*, 19 F.4th at 769 (holding that a "blanket injunction prohibiting the enforcement of GA-38 in all public schools across the State of Texas" was overbroad).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a temporary restraining order and preliminary injunction should be denied, and Defendants' motion to dismiss should be granted.

February 28, 2022                                        Respectfully submitted,

By:    */s/ Andrew N. Ferguson*
                     Andrew N. Ferguson (Va. Bar #86583)
                      *Solicitor General*

Jason S. Miyares
  *Attorney General*

Charles H. Slemp III (Va. Bar #79742)
  *Chief Deputy Attorney General*

Steven G. Popps (Va. Bar #80817)
Coke Morgan Stewart (Va. Bar #41933)
  *Deputy Attorneys General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7704—Telephone
(804) 371-0200—Facsimile

Erika L. Maley* (Va. Bar #97533)
  *Principal Deputy Solicitor General*

Lucas W.E. Croslow (Va. Bar #97517)
  *Deputy Solicitor General*

Graham K. Bryant (Va. Bar #90592)
Annie Chiang (Va. Bar #94703)
M. Jordan Minot* (Va. Bar # 95321)
  *Assistant Solicitors General*

*\* application for admission pending*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of February, 2022, I electronically filed the foregoing Defendants' Response in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all CM/ECF participants.

*/s/ Andrew N. Ferguson*
Andrew N. Ferguson (#86583)
*Solicitor General*