**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**CHARLOTTESVILLE DIVISION**

Christopher Seaman, et al.,

        Plaintiffs,

    v.

The Commonwealth of Virginia, et al.,

        Defendants.

Case No. 3:22-cv-00006-NKM

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR**
**TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

I.   The Science ......................................................................................................... 2

A.   Dr. Greene's Opinions are not Supported by the Scientific Evidence........................ 2

1.   Opinions Regarding Mask Ineffectiveness ............................................... 3

2.   Opinions Regarding Harms of Masking ................................................... 6

B.   The New CDC Guidance ..................................................................................... 8

1.   CDC's February 25 Guidance Primarily Focuses on Reducing Impacts on Healthcare Systems, Rather than on Preventing People from Getting Sick ............................................................................................................ 10

2.   The February 25 CDC Guidance does not Discuss what Additional Measures may be Required under the ADA for High-Risk Individuals ........... 12

II.   Plaintiffs are Likely to Succeed on the Merits of Their Claims .......................... 13

A.   Plaintiffs Have Standing .................................................................................... 14

B.   Plaintiffs are Likely to Succeed on Their ADA and Section 504 Claims.................. 18

1.   Plaintiffs are not required to exhaust administrative remedies under the Individuals with Disabilities Education Act ...................................................... 18

a)   Fry does not require exhaustion under the circumstances of this case. .... 19

b)   Even if Fry required exhaustion, the Fourth Circuit recognizes exceptions that apply in this case.................................................................. 21

i.   Futility.......................................................................................... 21

i.   Severe harm ................................................................................ 22

2.   Plaintiffs Are Entitled to Reasonable Modification........................................... 23

3.   Mask Mandates Necessary to Accommodate High-Risk Students with Disabilities are Reasonable ................................................................................ 25

4.   Federal Law Preempts Executive Order 2 and S.B. 739.................................... 28

C.   Issuing an injunction in this case would not result in irreparable injury to Defendants… ...................................................................................................... 28

## TABLE OF AUTHORITIES

**Cases**

*A.S. ex rel. Leonel S. v. Catawba Cnty. Bd. of Educ.*,
  No. 5:11CV27- RLV, 2011 WL 3438881 (W.D.N.C. Aug. 5, 2011) ...................................... 22

*ARC of Iowa v. Reynolds*,
  2021 WL 4166728 (S.D. Iowa 2021) ......................................................................... 20, 25–26

*Arc of Iowa v. Reynolds*,
  24 F.4th 1162 (8th Cir. 2022) ............................................................................................... 14

*Barnett v. Loudoun Cnty. Sch. Bd.*,
  No. 22-546 (Loudoun Cnty. Cir. Ct. Feb. 2, 2022) ................................................................ 16

*Bercovitch v. Baldwin Sch., Inc.*,
  133 F.3d 141 (1st Cir. 1998) ................................................................................................ 28

*Beth V. by Yvonne V. v. Carroll*,
  87 F.3d 80 (3d Cir. 1996) ..................................................................................................... 21

*Crowder v. Kitagawa*,
  81 F.3d 1480 (9th Cir. 1996) ................................................................................................ 29

*Deal v. Mercer Cnty. Bd. of Educ.*,
  911 F.3d 183 (4th Cir. 2018) ................................................................................................ 17

*Doe 1 v. North Allegheny Sch.l Dist.*,
  2022 WL 170035 (W.D. Pa., Jan. 17, 2022) ..................................................................... 18, 26

*Doe 1 v. Perkiomen Valley Sch. Dist.*,
  2022 WL 356868 (E.D. Pa., Feb. 7, 2022) ....................................................................... 18, 26

*Doucette v. Georgetown Pub. Sch.*,
  936 F.3d 16 (1st Cir. 2019) ............................................................................................. 20–21

*Douglas Cnty. Sch. Dist. RE-1 v. Douglas Cnty.*,
  2021 WL 5104674 (D. Colo. 2021) ....................................................................................... 18

*E.T. v. Paxton*,
  19 F.4th 760 (5th Cir. 2021) ................................................................................................. 25

*Easter Seal Soc. of New Jersey, Inc. v. Twp. of North Bergen*,
  798 F.Supp. 228 (D.N.J.,1992) ............................................................................................. 14

*Fry v. Napoleon Community Schools*,
  137 S. Ct. 743 (2017) ......................................................................................... 18, 19, 21

*G.S. v. Lee*,
  2021 WL 4268285 (W.D. Tenn. 2021) .................................................................................. 20

*Gibson v. Forest Hills Local Sch. Dist.Bd. of Educ.*,
  655 Fed. App'x. 423 (6th Cir. 2016) ..................................................................................... 18

*Goodman v. Praxair, Inc.*,
  494 F.3d 458 (4th Cir. 2007) ................................................................................................ 18

*Gresham v. Windrush Partners, Ltd.,*
  730 F.2d 1417 (11th Cir.1984) ........................................................ 14

*Hayes v. Desantis,*
  2021 WL 4236698 (S.D. Fla. 2021) ................................................. 20

*J.D. v. Colonial Williamsburg Found.,*
  925 F.3d 663 (4th Cir. 2019) .......................................................... 26

*Jones v. Bock,*
  549 U.S. 199 (2007) ....................................................................... 18

*Marbury v. Madison.*" *Barr v. Am. Ass'n of Political Consultants, Inc.,*
  140 S. Ct. 2335, 2350 (2020) ......................................................... 29

*McQueen v. Colorado Springs Sch. Dist. No. 11,*
  488 F.3d 868 (10th Cir. 2007) ........................................................ 18

*MM ex rel. DM v. Sch. Dist. of Greenville Cnty.,*
  303 F. 3d 523 (4th Cir. 2002) ......................................................... 21

*Mosely v. Bd. of Educ.,*
  434 F.3d 527 (7th Cir. 2006) .......................................................... 18

*Nat'l Fed'n of the Blind v. Lamone,*
  813 F.3d 494 (4th Cir. 2016) ..................................................... 26, 27

*Pierce v. District of Columbia,*
  128 F. Supp. 3d 250 (D.D.C. 2015) ................................................ 24

*R.K. v. Lee,*
  2021 WL 4942871 (M.D. Tenn. Oct. 22, 2021) ............................... 26

*Reid v. Prince George's Cnty. Bd. of Educ.,*
  60 F. Supp. 3d 601 (D. Md. 2014) .............................................. 21, 22

*S.B. by & through M.B. v. Lee,*
  No. 3:21-CV-00317, 2021 WL 4755619 (E.D. Tenn. Oct. 12, 2021) ................................. 20,29

*Sierra Club v. U.S. Dep't of the Interior,*
  899 F.3d 260 (4th Cir. 2018) .......................................................... 17

*Singh v. Carter,*
  168 F.Supp.3d 216 (D.D.C., 2016) ................................................. 14

*T.R. v. Sch. Dist. of Phila.,*
  223 F. Supp. 3d 321 (E.D. Pa. 2016) .............................................. 22

*WildEarth Guardians v. Conner,*
  920 F.3d 1245 (10th Cir. 2019) ...................................................... 17

*Williams v. City of Texarkana, Ark.,*
  861 F.Supp. 771 (W.D.Ark.,1993) .................................................. 17

*Z.G. v. Pamlico Cnty. Pub. Schs. Bd. of Educ.,*
  744 Fed. App'x. 769 (4th Cir. 2018) ............................................... 21

iii

**Statutes**

20 U.S.C. § 1400 ................................................................................................ 19

20 U.S.C. § 1415 .......................................................................................... 17, 19

29 U.S.C. § 794 ................................................................................................. 18

42 U.S.C. 12132 ......................................................................................... 18, 24

**Regulations**

28 C.F.R. § 35.130 .................................................................................. 18, 24, 26

**Other Authorities**

AAP Offers New Masking Recommendations for Families Following Updated CDC
    Guidance, https://www.aap.org/en/news-room/news-releases/aap/2022/american-
    academy-of-pediatrics-offers-new-masking-recommendations-for-families-following-
    updated-cdc-guidance/ (last visited March 3, 2022) ................................................... 9

*About two-thirds of Students at Local Private School do not Wear Masks,* Mountain
    View HSE (Sep. 30, 2021), available at https://mountainviewhse.com/about-two-
    thirds-of-students-at-a-local-private-school-do-not-wear-masks-winchester-star/
    (last visited Mar. 3, 2022) ................................................................................... 5

*COVID-19 Level of Community Transmission*, Va. Dep't of Health,
    https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-in-virginia/
    community-transmission/ (last visited March 1, 2022) ........................................... 11

*Health Director: District's Spike in Cases Concerning*, The Northern Virginia Daily
    (Oct. 15, 2020), available at https://www.nvdaily.com/nvdaily/health-director-districts-
    spike-in-cases-concerning/article_fd0035fd-bf6c-5353-8bd3-eb61b7b999d3.html
    (last visited Mar. 3, 2022) ................................................................................... 6

Hearing on H.B. 1272, available at https://sg001-
    harmony.sliq.net/00304/harmony/en/PowerBrowser/PowerBrowserV2/20220209/-
    1/14250?startposition=20220209081848&viewMode=2&globalStreamId=4 ......................... 25

Minutes of Community Policy and Management Team Committee, 4 (July 27, 2020),
    available at https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&
    ved=2ahUKEwingO3ox6f2AhUrmHIEHUegC9M4FBAWegQIFhAB&url=https%3A
    %2F%2Fwww.fcva.us%2Fhome%2Fshowpublisheddocument%2F21081
    %2F637517851559130000&usg=AOvVaw0v71M9Zy76M0Yq-8I8i2Vc
    (last visited Mar. 3, 2022) ................................................................................... 5

*Pfizer Shot Is Far Less Effective in 5-to-11-Year-Olds Than in Older Kids, New Data
    Show*, New York Times (Feb. 28, 2022) ................................................................. 3

U.S. Dep't of Ed., *Disability Rights*, available at
    https://www.ed.gov/coronavirus/factsheets/disability-rights (last visited Mar. 3, 2022) ......... 13

U.S. Dep't of Ed., *Letter to Stakeholders* (February 25, 2022), available at
    https://www2.ed.gov/documents/coronavirus/20220225-letter-to-stakeholders.pdf
    (last visited March 3, 2022) ................................................................................. 12

iv

Va. Dep't of Health, COVID-19 Level of Community Transmission, available at
   https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-in-virginia/
   community-transmission/#transmission (emphasis in original) (last visited Mar. 3, 2022) ..... 11

Vajeera Dorabawila, Dina Hoefer, Ursula Bauer, Mary Bassett, Emily Lutterloh,
   Eli Rosenberg, Effectiveness of the BNT162b2 vaccine among children 5-11 and
   12-17 years in New York after the Emergence of the Omicron Variant, available at
   https://www.medrxiv.org/content/10.1101/2022.02.25.22271454v1.full.pdf+html
   (last visited March 3, 2022).................................................................................................. 3

Youngkin's Health Department fielded questions about science behind masks-optional
   policy, Washington Post (Feb. 20, 2022), available at https://www.washingtonpost.com
   /dc-md-va/2022/02/20/youngkin-covid-masks-vaccines-science/
   (last visited Mar. 3, 2022) ........................................................................................................ 4

# INTRODUCTION

Defendants' opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction[1] is filled with misstatements and mirages. Defendants begin by grossly mischaracterizing Plaintiffs' demand. Defendants claim that Plaintiffs seek to require "that all Virginia children must wear masks at school indefinitely." ECF 46 at 1 (Defs.' Motion to Dismiss Plaintiffs' Am. Comp. and Resp. in Opp. to Plaintiffs' Motion for Temp. Rest. Order and Prelim. Inj.) To the contrary, Plaintiffs ask this court to enjoin Defendants from enforcing S.B. 739 "against [the school districts plaintiffs attend] and allow Virginia school districts the discretion to ensure each of their students receives an equal opportunity to benefit from public education – without jeopardizing their safety." ECF 5 at 38 (Mem. In Support of Plaintiffs' Motion for Temp. Rest. Order and Prelim. Inj.); *See also* ECF 4-1 at 2 ([Proposed] Order Granting Plaintiffs' Emergency Motion for a Temporary Restraining Order and Preliminary Injunction) ("The reasonable modification sought by Plaintiffs – allowing school districts, *at their discretion*, to require mandatory masking in schools"); ECF 1 at ¶¶ 223, 224 (Am. Comp.).

Plaintiffs seek to lift Executive Order 2's and S.B. 739's blanket ban on all mask requirements and allow schools to implement whatever masking requirements (or lack thereof) they need in order to respond to the needs and rights of students with disabilities. Those masking requirements may range from no mask mandate, to mandatory staff masking, to masking in particular classrooms where a high-risk student is located, to masking in certain activities in which a high-risk student participates, to masking within the vicinity of a high-risk student, to

---

[1] In this brief, Plaintiffs respond only to Defendants' Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, not to their Motion to Dismiss, because Plaintiffs have additional time to respond to the Motion to Dismiss and the applicable legal standard differs from the standard for Temporary Restraining Order and Preliminary Injunction.

masking when a high-risk student engages in work in a small group with other students, to masking of students returning from quarantine, to school-wide universal masking, to mask requirements that come and go depending on the current rate of community transmission or that come into effect in response to a local surge in cases or to an outbreak at school. Executive Order 2 and S.B. 739 forbid any type of mask mandate, regardless of federal requirements, student needs, local circumstances, school outbreaks, or new variants. While trying to argue that Plaintiffs are demanding an unlimited obligation to wear masks, in reality, Defendants are taking an important protection measure permanently and completely off the table.

Many of Defendants' scientific conclusions are based on nothing but mirages. For example, Defendants claim that "the CDC recommends *against* universal masking for the vast majority of Americans." ECF 46 at 3 (emphasis in original). Defendants provide no citation for this shocking statement because it is simply incorrect. Nowhere does the CDC recommend that people should not wear masks. Nor can Defendants identify any basis for their claim that masks are ineffective or dangerous.

Ironically, even Defendants believe that students should wear masks in some instances, ECF 44 at ¶ 18 (Aff. of Dr. Colin Greene), but Executive Order 2 and S.B. 739 ban mask requirements even in those instances.

I.      **The Science**

        A.      **Dr. Greene's Opinions are not Supported by the Scientific Evidence**

        To justify their untenable position barring the use of masking to mitigate COVID-19 transmission in schools, Defendants rely on faulty and misleading science.  Their claims – that COVID-19 is not a serious disease with severe consequences, that masks are ineffective, or that masks are harmful to children - are not even supported by their own sources.

### 1.        Opinions Regarding Mask Ineffectiveness

Defendants make much of the "scientific evidence" that masks are ineffective and harmful. They rely on Dr. Colin Greene's affidavit as support for this "science." But the evidence cited by Dr. Greene is almost entirely not supportive of the points for which it is referenced (e.g., ECF 44-33 at p. 2, which explains that, far from concluding that COVID transmission is lower in children, recent studies show transmission is comparable to or higher than adults), inapplicable to the question at issue here (e.g., ECF 44-14, which analyzed the impact of the pandemic on infants), misleading (e.g., ECF 44 ¶ 5, which states that there are "numerous effective treatments" for COVID, but failing to note that there are only three and none of them are approved for children under 12), outdated (e.g., ECF 44-41, which was contradicted by a recent study),[2] circular (e.g. ECF 44-49, which cites to Dr. Greene's own unsupported order rescinding school mask mandates), non-scientific (e.g., ECF 44-48, an op-ed in the Atlantic), or nonexistent (such as the mysterious exhibit 50). Dr. Greene's science is, to put it kindly, unreliable. See Exhibit 1 at ¶¶ 13-25 (Decl. of Dr. Emily Smith).

 Many parts of Dr. Greene's affidavit simply offer opinions without any support, particularly regarding the supposed ineffectiveness of masks, which he emphasizes repeatedly, ECF 44 at ¶¶ 6, 7, 8, 10, 11, 12, 16, 17, 19, 21, as if repetition could substitute for scientific study. For example, Dr. Greene concludes, without support, that because Omicron is highly

---

[2] Vajeera Dorabawila, Dina Hoefer, Ursula Bauer, Mary Bassett, Emily Lutterloh, Eli Rosenberg, Effectiveness of the BNT162b2 vaccine among children 5-11 and 12-17 years in New York after the Emergence of the Omicron Variant, available at https://www.medrxiv.org/content/10.1101/2022.02.25.22271454v1.full.pdf+html (last visited March 3, 2022); *Pfizer Shot Is Far Less Effective in 5-to-11-Year-Olds Than in Older Kids, New Data Show*, New York Times (Feb. 28, 2022) (describing the study).

contagious, "universal masking may be less effective against Omicron than against previous variants." ECF 44 at ¶¶ 7, 8. He cites no support for this conclusion and it is far from obvious.

Dr. Greene repeatedly emphasizes, without reference, that urban regions in Virginia had transmission rates similar to, or greater than, rural regions. ECF 44 at ¶¶6, 16. He concludes, without basis, that urban areas have "more restrictive masking policies" than rural regions and that, therefore, masks must be ineffective. See ECF 44 at ¶16. "Dr. Greene's unsupported assumptions simply do not demonstrate that masking does not work to mitigate an individual's risk of contracting COVID-19 because it does not link individual behavior (mask wearing) to whether an individual got sick with COVID-19." Exhibit 1 ¶ 24 (Decl. of Dr. Emily Smith). Dr. Greene knows this is a baseless claim because he has been challenged about it before and acknowledged that it was based on "observational data taken from our dashboard"[3] and that it "is merely an observation," not a "claim of causality."[4] The Virginia Department of Health slide on the issue notes that "Population crowding appears to be a factor" in increased urban case rates.[5] A third party contractor searching for studies to support the conclusion reported none and, in fact, concluded that "masking still remains one of the most effective protective strategies in controlling the transmission of SARS-CoV-2,"[6] and "Hospitals that predominantly serve patients from areas without masking requirements … continue to see the highest rate of growth in

_____

[3] Ex. 5, Att. A, p. 9 (Decl. of Christopher Seaman) (Dr. Greene email exchanges); *see also* Youngkin's Health Department fielded questions about science behind masks-optional policy, Washington Post (Feb. 20, 2022), available at https://www.washingtonpost.com/dc-md-va/2022/02/20/youngkin-covid-masks-vaccines-science/ (last visited Mar. 3, 2022).

[4] Ex. 5, Att. A, p. 7.

[5] *Id.* at p. 14.

[6] *Id.* at p. 2.

hospitalizations."[7] Yet here Defendants use Dr. Greene's observation to argue causality over and over. ECF 46 at 4-5 (citing Greene affidavit ¶¶ 12, 16, 17, 18, 19), 14 (citing Greene affidavit ¶¶ 16, 19). They even rely on the Governor's "extensive findings" in Executive Order 2, which are, in fact, just repetitions of Dr. Greene's unsupported opinions. ECF 46 at 8.

Dr. Greene goes on to argue that masks are less effective if they are made of plain cloth, soiled, poorly fitting, or worn improperly and that "these types of masks are often observed in the school environment." ECF 44 ¶ 12. Again, he provides no evidence of this whatsoever. *See* Exhibit 1 ¶¶ 21-23 (Decl. of Dr. Emily Smith). Nor does Dr. Greene have scientific support for his conclusion that wearing masks all day reduces their effectiveness. When asked, he stated that it was "intuitive."[8] Dr. Greene goes on to state that transmission rates are lower in schools than other locations, but he fails to note that most of those schools had mask mandates in place and that subsequent research has found the contrary. Exhibit 1 ¶ 13 (Decl. of Dr. Emily Smith).

These claims of mask ineffectiveness also conflict with Dr. Greene's own previous recommendations. When he was director of the Lord Fairfax Health District, he consistently told the public that the best way to prevent spread of the virus is to wear a mask.[9]

---

[7] *Id.* at p. 4.

[8] *Id.* at p. 32.

[9] *See About two-thirds of Students at Local Private School do not Wear Masks,* Mountain View HSE (Sep. 30, 2021), available at https://mountainviewhse.com/about-two-thirds-of-students-at-a-local-private-school-do-not-wear-masks-winchester-star/ (last visited Mar. 3, 2022) ("Greene noted that not wearing masks increases the risk of the airborne virus spreading."); Minutes of Community Policy and Management Team Committee, 4 (July 27, 2020), available at https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&ved=2ahUKEwingO3ox6f2AhUrmHIEHUegC9M4FBAWegQIFhAB&url=https%3A%2F%2Fwww.fcva.us%2Fhome%2Fshowpublisheddocument%2F21081%2F637517851559130000&usg=AOvVaw0v71M9Zy76M0Yq-8I8i2Vc (last visited Mar. 3, 2022); *Health Director: District's Spike in Cases Concerning*, The Northern Virginia Daily (Oct. 15, 2020), available at https://www.nvdaily.com/nvdaily/health-director-districts-spike-in-cases-concerning/article_fd0035fd-bf6c-5353-8bd3-eb61b7b999d3.html (last visited Mar. 3, 2022) ("The risk is worse when one or both people are not wearing masks")

5

### 2.     Opinions Regarding Harms of Masking

Dr. Greene goes on to discuss the "harms" to children from mask-wearing, namely, that they may be tight and poorly tolerated, that they may cause discomfort, skin irritation, anxiety, and otherwise negatively affect a child's emotional state, that they may make it difficult to hear, talk, perceive emotion or make social connections, that they may be detrimental to speech and language development, that they may fog glasses, and that, if they are reused, they might cause fungal contamination. ECF 44, ¶¶ 13-15. He provides little, if any, evidence of the prevalence or severity of these "harms" and the studies he does cite are largely irrelevant or unreliable. Exhibit 1 ¶ 23-24 (Decl. of Dr. Emily Smith). Importantly, none of the studies he cites finds that the harms of masking outweigh the benefits. Yet Defendants base their arguments on this unsubstantiated opinion time and time again. *See, e.g.*, ECF 46 at 5, 8, 14, 19, 26, 31.[10]

Dr. Greene also points to supposed alternative means of accommodating high-risk students that schools might implement. However, handwashing is not as effective as masking. Exhibit 1 at ¶ 29 (Decl. of Dr. Emily Smith). And, unfortunately, none of the other mitigation methods is as rapid and effective as mask requirements. *Id.* Therefore, if an outbreak occurs in school or a surge occurs in the community, schools will not be able to install new ventilation or ramp up vaccinations in time. *Id.* Nor will post-infection testing, without preventative masking, rapidly contain an outbreak. *Id.* Without the ability to require masking, schools will be forced to exclude high-risk students with disabilities and, if the outbreak or surge is significant, to close

---

[10] The one group of students Dr. Greene points to who may actually be unable to wear a mask are students with various disabilities. ECF 44 at ¶ 15. Plaintiffs' requested accommodation of requiring masks around them would not require children who cannot wear masks to do so. Those children with disabilities are entitled to reasonable modifications to mask requirements, just as Plaintiffs are entitled to reasonable modifications to mask bans. Moreover, the children who cannot wear a mask need their peers to wear masks perhaps more than anyone else, because they cannot protect themselves from infection. *See* ECF 5-12 at ¶29 (Decl. of Dr. Fredrick Garner).

their doors, again. *Id*. at ¶ 30. Denying schools the ability to respond effectively to outbreaks and surges is simply unreasonable and cannot stand in the face of students with disabilities who need the protection of two-way masking.

Dr. Greene and the Virginia Department of Health even agree with Plaintiffs that some students should wear masks – such as those returning from quarantine. ECF 44 at ¶ 18. However, Executive Order 2 and S.B. 739 forbid the school to even discuss mask-wearing with that child, let alone to insist that the child wear one.  Under Virginia law, that child, who has been exposed to COVID and returns early from isolation, who may not have exhibited symptoms yet but who may be contagious, must be allowed in the school, and in close contact with high-risk students, without wearing a mask.

Dr. Greene essentially tries to shield Defendants from liability by acting as if Defendants had simply lifted a mask mandate, as other states are doing and as the CDC now permits. That is not what Executive Order 2 and S.B. 739 do. They *forbid* all mask mandates and forbid schools from even talking to students about masks in schools.  There is a substantive difference between telling a facility that it is not required to impose a mask mandate and forbidding the entity from implementing mask requirements when it decides they are warranted.

In sum, Dr. Greene's references, if accepted, would, at most, support the argument that mask requirements need not be an automatic reaction to the pandemic. They support the argument that mask requirements should be based on multiple factors, including local conditions and student needs. They do not support a ban on mask requirements. Plaintiffs agree.

B.   **The New CDC Guidance**

On February 25, 2022, the CDC issued new guidance on COVID-19 mitigation measures, including indoor masking in community settings such as schools.[11] Contrary to Defendants' assertion, this new guidance does not recommend against masking in any way. The February 25 guidance alters the focus of data collection and publication to "COVID-19 Community Levels," rather than Community Transmission Levels. COVID-19 Community Levels are determined by a locality's COVID-19 hospitalization data, ICU capacity, and local COVID-19 case numbers.[12] The CDC recommendation differs depending on whether a locality currently has a low, medium, or high Community Level.[13] The CDC recommends universal indoor masking for localities with high Community Levels.[14]

The CDC's recommendations recognize the importance of local decision making that empowers communities to respond to changes in COVID-19 transmission rates and hospitalizations by adding or subtracting layers of preventative measures.  The guidance specifically states, "Health officials and individuals should consider current information about COVID-19 hospitalizations in the community, as well as the potential for strain on the local health system and COVID-19 cases in the community, when making decisions about community prevention strategies and individual behaviors. Communities and individuals should also make

---

[11] *COVID-19 Community Levels*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/science/community-levels.html (last visited March 3, 2022).

[12] *Id.*

[13] *See Id.*

[14] *Id.*

decisions based on whether they are at high risk for severe disease and take into account inequities in access to prevention strategies."[15] *See* Exhibit 1 ¶35 (Decl. of Dr. Emily Smith).

As the American Academy of Pediatrics explains, "CDC's guidance calls for public health decision-making on masks based on local conditions. Based on CDC's new guidance, universal mask policies are still necessary in many parts of the country. In addition, localities will need flexibility to reinstitute masking as local situations warrant. Policies that serve as impediments to this local decision-making are inappropriate and should be eliminated."[16]

Executive Order 2 and S.B. 739 prevent schools from being able to impose and enforce mask mandates, even when their localities are at a high COVID-19 Community Level, as determined by the CDC data. School districts in localities that currently have high community levels are unable to implement mask mandates to protect their students, as recommended by the February 25 CDC guidance. Additional localities that reach a high Community Level in the future will also be prohibited from implementing mask mandates. Nor will school districts be able to adjust their mitigation measures in response to future policy adjustments by the CDC. Since July 9, 2021, the CDC has adjusted its policies related to COVID-19 mitigation efforts in schools six times. [17]

---

[15] *Id.*

[16] AAP Offers New Masking Recommendations for Families Following Updated CDC Guidance, https://www.aap.org/en/news-room/news-releases/aap/2022/american-academy-of-pediatrics-offers-new-masking-recommendations-for-families-following-updated-cdc-guidance/ (last visited March 3, 2022).

[17] Guidance for COVID-19 Prevention in K-12 Schools, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html (last visited March 3, 2022).

      1.       **CDC's February 25 Guidance Primarily Focuses on Reducing Impacts on Healthcare Systems, Rather than on Preventing People from Getting Sick**

It is important to recognize that the CDC's February 25 guidance makes a purposeful "shift from eliminating SARS-CoV-2 transmission towards more relevant metrics," including minimizing the burden on healthcare systems.[18] Exhibit 1 ¶ 33 (Decl. of Dr. Emily Smith). These new COIVD-19 Community Levels are meant to be indicators of an increased likelihood of severe COVID-19 outcomes, such as death and Intensive Care Unit ("ICU") bed use, and are not indicators of the likelihood that someone will contract COVID-19. Exhibit 1 ¶¶ 32-33 (Decl. of Dr. Emily Smith).

In contrast, Community Transmission Levels, which were previously used by the CDC and are still used by the Virginia Department of Health, are based on the number of new COVID-19 cases and COVID-19 test positivity rates. These indicators are thus solely focused on the prevalence of COVID-19 in a locality. According to the Virginia Department of Health,[19] as of February 28, 2022, 108 out of 133 localities in Virginia continued to have high Community Transmission Levels, the most severe category.[20] Localities that have more than 100 new COVID-19 cases per 100,000 persons in the past 7 days fall into this category.[21] This category

---

[18] Indicators for Monitoring COVID-19 Community Levels and COVID-19 and Implementing COVID-19 Prevention Strategies, Centers for Disease Control and Prevention, at 2, https://www.cdc.gov/coronavirus/2019-ncov/downloads/science/Scientific-Rationale-summary-COVID-19-Community-Levels.pdf (last visited March 3, 2022).

[19] *COVID-19 Level of Community Transmission*, Va. Dep't of Health, https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-in-virginia/community-transmission/ (last visited March 1, 2022).

[20] *Id.*

[21] *Id.*

also includes localities that have at least a ten percent positivity rate for nucleic acid

amplification tests (NAATs) including RT-PCR COVID-19 tests during the last 7 days.[22]



Community Transmission Levels are more relevant to the current case than the CDC's

new COVID Community Levels. The Virginia Department of Health agrees, saying "Local

decision makers . . . should also review local vaccination coverage, testing capacity, health

system capacity, and understand populations in their community that are at risk for severe

outcomes from COVID-19. Decisions regarding whether to strengthen or add layered prevention

strategies should be driven not only by the goal of effective disease control, but also to protect

those persons at greatest risk for severe illness or death."[23] See Exhibit 1 ¶ 35 (Decl. of Dr.

Emily Smith).

---

[22] *Id.*

[23] Va. Dep't of Health, COVID-19 Level of Community Transmission, available at
https://www.vdh.virginia.gov/coronavirus/see-the-numbers/covid-19-in-virginia/community-transmission/#transmission (emphasis in original) (last visited Mar. 3, 2022).

Plaintiffs are at heightened risk of severe complications and even death if they are exposed to COVID-19. *See* ECF 5-12, ¶¶ 28-31 (Decl. of Dr. Frederic Garner). This is regardless of the beds available in a community healthcare system or the level of severe disease experienced by people who are not at high risk. Indeed, the argument that the rate of hospitalization and death per 100,000 was not very high will be cold comfort to the parents of a hospitalized or dead child for whom the risk was obvious and preventable.

2.      **The February 25 CDC Guidance does not Discuss what Additional Measures may be Required under the ADA for High-Risk Individuals**

Most importantly, the February 25 CDC guidance only provides the public with general recommendations. It does not address what accommodations may be necessary under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") to protect students such as Plaintiffs. For some students, necessary accommodations include implementation of mask mandates in accordance with CDC's general guidelines. Other students require additional mask mandates that go beyond the CDC's general guidelines. For example, additional accommodations may include mandatory masking of students within a particular classroom when a locality is at a medium Community Level.

On February 25, in response to CDC's new guidance, the U.S. Secretary of Education, Miguel Cardona, issued a letter to stakeholders.[24] This letter clarifies that masking guidelines in schools are now the same guidelines for the community in which they are located.[25] Dr. Cardona also makes clear that the new guidance does not limit schools' discretion to implement masking

---

[24] U.S. Dep't of Ed., *Letter to Stakeholders* (February 25, 2022), available at https://www2.ed.gov/documents/coronavirus/20220225-letter-to-stakeholders.pdf (last visited March 3, 2022)

[25] *Id.*

requirements at any COVID-19 community level, "depending on their community's needs – and especially keeping in mind those for whom prevention strategies provide critical protection for in-person learning. Implementing layered prevention strategies in schools can protect the rights of students with disabilities and ensure their continued access to safe in-person learning."[26] In guidance linked to this letter, the Department of Education reminds schools that

> a school district could decide that some degree of masking is necessary as a reasonable modification to ensure that students with disabilities have meaningful access to in-person schooling without incurring an elevated risk of hospitalization or death due to COVID-19. This is necessarily a fact-specific inquiry depending on each school's particular circumstances and the modifications sought by their students.[27]

Executive Order 2 and S.B. 739 make it impossible for schools to comply with current CDC masking guidance, much less their federal obligations to provide the accommodations necessary to ensure Plaintiffs have continued access to safe in-person learning.

## II.      Plaintiffs are Likely to Succeed on the Merits of Their Claims

Defendants do not, at this stage, dispute that Plaintiffs are at high risk of serious illness should they contract COVID-19, that they are qualified individuals with disabilities, or that the ADA and Section 504 prohibit exclusion of students with disabilities and require reasonable modification of policies when necessary to ensure students with disabilities have meaningful access to public programs.

Instead, they argue that Plaintiffs were required to pursue administrative remedies within their schools under a different law, even though their schools had no power, thanks to Executive Order 2 and S.B. 739, to implement one of the accommodations found necessary by their

---

[26] *Id.* at 1.

[27] U.S. Dep't of Ed., *Disability Rights*, available at https://www.ed.gov/coronavirus/factsheets/disability-rights (last visited Mar. 3, 2022).

physicians. Defendants then try to toss liability to the school districts, arguing that Plaintiffs do not have standing to challenge the state's own actions, but must challenge each school district for following the state's laws. Finally, they argue that masking is unreasonable and ineffective, arguments belied by science and even by Defendants' own chief witness. Each of these arguments fails and should not distract the Court from the substantive question of whether Executive Order 2 and S.B. 739 should be allowed to prevent school districts from complying with federal law.

### A.    Plaintiffs Have Standing

As discussed in Plaintiffs' Memorandum In Support (ECF 5), Plaintiffs have suffered and continue to suffer an injury in fact. Any "speculation" that may have existed when some school districts were still declining to comply with Executive Order 2 is now certainty, as S.B. 739 has gone into effect.

Defendants' speculation that schools might comply with federal law by providing accommodations other than masking does not eliminate Plaintiffs' injury. First, the discrimination, itself, is an injury to Plaintiffs sufficient to confer standing. *See Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423–24 (11th Cir.1984) (alleged disability discrimination in violation of the Fair Housing Act is presumed to be irreparable harm), *cert. denied,* 469 U.S. 882 (1984); *Singh v. Carter*, 168 F.Supp.3d 216, 233 (D.D.C., 2016) ("being subjected to discrimination is by itself an irreparable harm.") (internal quotation marks omitted); *Easter Seal Soc. of New Jersey, Inc. v. Twp. of North Bergen*, 798 F.Supp. 228, 236 (D.N.J.,1992). In addition, "the harm suffered is that Plaintiffs' schools cannot require masks as necessary to accommodate their children's disabilities" because of the threatened enforcement of Executive Order 2 and S.B. 739, which is sufficient for standing. *Arc of Iowa v. Reynolds*, 24 F.4th 1162, 1181 (8th Cir. 2022).

14

Second, the existence of other accommodations does not eliminate Plaintiffs' injury when Plaintiffs' physicians have specifically called for masking, while well aware of the other possible prevention measures. *See, e.g.,* ECF 5-5, Ex. A (Decl. of Meghan DuFrain), (Letter from Dr. Joel Schmidt, Cystic Fibrosis Center Pediatric Program, Children's Hosp. of Richmond at VCU[28]; ECF 5-3, Ex. B (Decl. of Elizabeth Burnett) (Email from Dr. Tiffany Kimbrough, Medical Director, Mother Infant Unit, Associate Professor, General Pediatrics, Children's Hosp. of Richmond at VCUMC)[29]; ECF 5-2, Ex. A (Decl. of Tasha Nelson) (letter from Dr. Peter Mogayzel, Menowizt/Rosenstein Prof. of Pediatric Respiratory Sciences, Director, Eudowood Div. of Pediatric Respiratory Sciences, Director, Cystic Fibrosis Center, Johns Hopkins University); ECF 5-7, Exhibit A (Decl. of Brian Mulligan) (letter from Dr. Deborah Froh, Director, Cystic Fibrosis Ctr., Prof. of Pediatrics, Dept. of Pediatric Respiratory Medicine, University of Virginia Children's Hospital); ECF 5-1 at ¶ 17 (Decl. of Christopher Seaman and Elizabeth Allison Lyons); ECF 5-2 at ¶¶ 6, 10 (Decl. of Tasha Nelson); ECF 5-3 at ¶ 7 (Decl. of Elizabeth Burnett); ECF 5-4 at ¶ 9 (Decl. of Lindsey Dougherty); ECF 5-5 at ¶¶ 4, 7 (Decl. of Meghan DuFrain); ECF 5-6 at ¶¶ 5, 9 (Decl. of Denille Francis); ECF 5-7 at ¶ 5 (Decl. of Brian Mulligan); ECF 5-8 at ¶¶ 5, 9 (Decl. of Kimberly Crawley); ECF 5-10 at ¶ 8 (Decl. of R.M.)[30]; ECF 5-11 at ¶¶ 14, 16 (Decl. of K.R.)[31]; ECF 41-4 at ¶¶ 5-6, 11 (Supp. Decl. of S.K.)[32]; ECF 41-5 at ¶ 10 (Supp. Decl. of K.R.).[33]  Defendants are simply not in a position to contradict

---

[28] ECF 6, Filed Under Seal.

[29] *Id*.

[30] ECF 6, Filed Under Seal.

[31] *Id.*

[32] ECF 30, Filed Under Seal.

[33] *Id.*

the recommendations of treating physicians who are experts in their patients' conditions. Finally, Defendants' argument, ECF 46 at 15, that Plaintiffs' harm is "self-inflicted" is appalling. Plaintiffs are entitled to follow the advice of their own physicians, and not wait to see if hospitalization or death actually happens before they can sue to stop it.

Plaintiffs' injuries are traceable to Defendants and would be addressed by an order from this Court enjoining them. By arguing otherwise, Defendants are essentially claiming that Plaintiffs should have named some other defendant in this suit. *See* ECF 46 at 15-16 (Defs.' Motion to Dismiss and Response in Opp. To Plaintiffs' Mot. For TRO and PI). This argument has no merit. School officials were actively accommodating Plaintiffs until Defendants stripped them of their ability to do so by promulgating Executive Order 2, amending and signing into law SB739, and threatening enforcement of both. Defendants seek to have it both ways – disclaiming enforcement authority before this Court, ECF 46 at 17-18, while actually enforcing and threatening enforcement in other forums. The Attorney General, Governor, and Secretary of Education, themselves, have told another court that their "intervention in this matter is necessary to enforce EO 2."[34] Because Defendants' statewide actions are the common source of each Plaintiffs' harm, asking the 12 Plaintiffs in this case to bring separate factually-intensive actions

---

[34] Mot. for Leave to Intervene by Intervenor-Plaintiff the Commonwealth of Virginia, *Barnett v. Loudoun Cnty. Sch. Bd.*, No. 22-546 (Loudoun Cnty. Cir. Ct. Feb. 2, 2022). See also Ex. 5, Att. A at p. 30-31, ("The intent of [Executive Order 2] is to make the parents of students the decisionmakers of whether or not said students will wear masks in school or on school activities. It effectively nullifies all school-based masking mandates… Finally, it requires me as Health Commissioner to cancel the public health emergency order from last August that made universal masking a requirement, and I will comply with that directive this week. . . . I respectfully remind all health directors that VDH is an executive agency, under the leadership, oversight, and discipline of the Governor. Compliance with the word and intent of this Executive Order on the part of any VDH employee is not optional.")

against 10 school districts would serve neither justice nor judicial efficiency. Defendants are clearly appropriate defendants in this case.

The fact that school officials are also involved in the chain of providing accommodations to Plaintiffs does nothing to change the fact that Defendants are amenable to suit. The state laws harming Plaintiffs need not be the only barrier to Plaintiffs' relief. "The removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability." *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 190 (4th Cir. 2018) (quoting *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 285 (4th Cir. 2018)). Plaintiffs' school districts previously accommodated them and many of Plaintiffs' school districts made clear that they only gave up mask requirements because of Executive Order 2 or S.B. 739. *See, e.g.,* ECF 29-2 ¶¶ 6, 9, 10 and Att. A (Second Decl. of Tasha Nelson); ECF 29-3 ¶ 6 and Att. A (Second Decl. of Elizabeth Burnett); ECF 29-7 ¶¶ 5-6 and Att. A (Second Decl. of Kimberly Crawley); Ex. 4, Att. B (Second Decl. of Meghan DuFrain); Ex. 3, Att. A (Second Decl. of Christopher Seaman).

Moreover, it can be presumed that the school districts will fulfill their obligations under federal law (or will face litigation) once state law is removed as a barrier to doing so. *See WildEarth Guardians v. Conner*, 920 F.3d 1245, 1261 (10th Cir. 2019) ("We generally presume that government agencies comply with the law."); *Williams v. City of Texarkana, Ark.*, 861 F.Supp. 771, 772 (W.D.Ark.,1993) ("This Court will not make any presumption that the citizens of Texarkana would choose a plan violative of the Voting Rights Act should they see fit to address the matter in the future. Contrariwise, in view of the results of this case and the unhappy fact that litigation of such matters is both unpleasant and expensive, the Court would presume the opposite.")

**B.     Plaintiffs are Likely to Succeed on Their ADA and Section 504 Claims**

      **1.     Plaintiffs are not required to exhaust administrative remedies under the Individuals with Disabilities Education Act**

Under *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017), exhaustion is not required pursuant to 20 U.S.C. § 1415(1) of the Individuals with Disabilities Education Act ("IDEA") in a case such as this one. Here, Plaintiffs do not seek special education services; they seek equal access to an in-person education no different from their non-disabled peers.  In their Complaint, they allege that the Governor's Executive Order and the newly created State law prohibit school districts from modifying their policies to impose any type of mask requirement and thus exclude them from attending school in violation of Title II of the ADA and Section 504. 42 U.S.C. § 12132; 29 U.S.C. § 794; 28 C.F.R. § 35.130(b)(7). Other courts have repeatedly found such claims not to require exhaustion. *Doe 1 v. Perkiomen Valley Sch. Dist*., 2022 WL 356868, *8-9 (E.D. Pa., Feb. 7, 2022); *Doe 1 v. North Allegheny Sch.l Dist*., 2022 WL 170035, *3-5 (W.D. Pa., Jan. 17, 2022); *Douglas Cnty. Sch. Dist. RE-1 v. Douglas Cnty*., 2021 WL 5104674, *3 (D. Colo. 2021).  Even if Plaintiffs were required to file due process complaints under the IDEA before seeking remedies under different laws, governing exceptions apply to prevent such an unjust result.[35]

---

[35] As a threshold matter, any alleged failure to exhaust is an affirmative defense. *Cf. Jones v. Bock*, 549 U.S. 199, 218 (2007) (holding failure to exhaust under Prison Litigation Reform Act is affirmative defense, not a jurisdictional deficiency); *accord Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.,* 655 Fed. App'x. 423, 430–31 (6th Cir. 2016) (indicating same under IDEA); *McQueen v. Colorado Springs Sch. Dist. No. 11*, 488 F.3d 868, 873 (10th Cir. 2007); *Mosely v. Bd. of Educ.,* 434 F.3d 527, 533 (7th Cir. 2006). Thus, Defendants, not Plaintiffs, bear the burden to establish that exhaustion is required. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (citations omitted).

*a)*     **Fry does not require exhaustion under the circumstances of this case.**

In *Fry*, the Supreme Court examined the relationship between the IDEA, ADA, and Section 504 and formed a test to determine when IDEA exhaustion is required for claims under the ADA and Section 504. Enacted around the same time as Section 504's nondiscrimination requirements, the IDEA imposes additional affirmative obligations on educational programs to provide "special education and related services" required to ensure a free and appropriate public education ("FAPE"). 20 U.S.C. § 1400(d)(1)(A). However, the IDEA's remedies are limited. *See generally* Perry Zirkel, The Remedial Authority of Hearing and Review Officers Under the Individuals with Disabilities Education Act: An Update, 31 J. Nat'l Ass'n Admin. L. Judiciary 1 (2011). Importantly, "[n]othing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA]," and Section 504. *Fry*, 137 S. Ct. at 750 (quoting 20 U.S.C. § 1415(l)).

Thus, it is simply not the case that every injury to a student with disabilities in a school is subject to IDEA administrative exhaustion. Rather, the Supreme Court held exhaustion is required only when the gravamen of a complaint is the denial of FAPE. *Id.* at 752. Thus, courts ask whether: (1) a plaintiff could have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school; and (2) an adult employee or visitor at the school could have pressed essentially the same grievance. *Id*. at 756.

Plaintiffs' claims are grounded in the exclusion from and denial of equal access to their schools and programs, refusal to reasonably accommodate them, and discrimination against them. ECF 24 at ¶ 192-93, 204-05 (Am. Compl.). Nothing in the Amended Complaint in any way raises claims for special education services.  Courts around the country that have tackled the question of mask mandates have held that these cases do not require exhaustion.  For example, in

19

*ARC of Iowa v. Reynolds,* 2021 WL 4166728 at *8 (S.D. Iowa 2021), the Court held that the plaintiffs could bring their claims to require a universal facial covering mandate at another public facility such as a library, and that an adult such as a teacher or other school staff member could bring the same claims. *Id.* Similarly, a court in the Eastern District of Tennessee tackling a similar exhaustion defense held that "[t]he crux of Plaintiffs' allegations is safe access to public, brick-and-mortar government buildings and not the denial of a FAPE." *S.B. v. Lee*, 2021 WL 4755619 at *6-7 (E.D. Tenn. Oct. 12, 2021) (plaintiffs properly alleged a failure-to-accommodate claim under the ADA so that the students "can safely access their school buildings."). The Court went on to hold that "[a] medically compromised teacher, custodian, parent, grandparent, or visitor could bring an identical grievance in this case, whether based on safe and equal access to Knox County Schools or to another public, government building like a library or post office." *Id* at 6; *See also G.S. v. Lee,* 2021 WL 4268285, at *11 (W.D. Tenn. 2021) (the gravamen of plaintiffs' complaint regarding school masking was "not to seek a FAPE, but rather to seek 'non-discriminatory access' to their public schools by way of a reasonable accommodation.").[36]

Courts confronted with other circumstances have found that the denial of reasonable modifications to provide equal access to school facilities and education are not subject to IDEA exhaustion. *See*, *e.g.*, *Doucette v. Georgetown Pub. Sch.*, 936 F.3d 16, 28 (1st Cir. 2019) (holding exhaustion not required when school refused to allow student access to service dog because "the crux of the [plaintiffs'] section 504 claim is simple discrimination, irrespective of

---

[36]Only where a masking case explicitly raised FAPE issues, has a court held that exhaustion was required. Compare *Hayes v. Desantis*, 2021 WL 4236698, at *7-8 (S.D. Fla. 2021) (plaintiffs sought reinstatement of live synchronous and asynchronous instruction and to ensure that each child received FAPE in the least restrictive environment).

the school district's FAPE obligation"); *see also Hurd*, 2017 WL 4349231, at *1 ("Plaintiffs are not challenging the quality or accessibility of the FAPE itself but rather the Students' ability to benefit from the FAPE in light of the abuse.").

Thus, the answer to the first *Fry* question, whether the plaintiff could have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school, is "yes," showing exhaustion is not required. *Fry*, 137 S. Ct. at 756. The answer to the second *Fry* question is also "yes," individuals other than students, such as teachers, could also raise the same claim, exhaustion is not required here.

**b)    Even if Fry required exhaustion, the Fourth Circuit recognizes exceptions that apply in this case.**

Assuming, *arguendo*, that Plaintiffs' claims would generally require exhaustion, the Fourth Circuit has identified exceptions applicable here, including: (1) when exhaustion would have been futile or (2) when exhaustion would have worked severe harm upon a child with disabilities. *MM ex rel. DM v. Sch. Dist. of Greenville Cnty.*, 303 F. 3d 523, 535–36 (4th Cir. 2002) (citations omitted).

i.    Futility

Futility arises when "a plaintiff's complaint involves issues outside or beyond the ken of [school] administrators—issues not related to how to meet the educational needs of the particular student," and, therefore, exhaustion "serves no purpose." *Reid v. Prince George's Cnty. Bd. of Educ.*, 60 F. Supp. 3d 601, 606–07 (D. Md. 2014). Exhaustion is futile where the IDEA process is unable to grant the specific relief requested. S*ee also Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 88-89 (3d Cir. 1996).[37]

---

[37] The only Fourth Circuit case addressing *Fry* and, specifically, the futility exception, is *Z.G. v. Pamlico Cnty. Pub. Schs. Bd. of Educ.*, 744 Fed. App'x. 769 (4th Cir. 2018). The Court held the

21

Futility applies here. Defendants argue that exhaustion "applies to any claim seeking relief that is also available under the IDEA." ECF 46 at 20 (Defs. Mot. To Dismiss) (internal quotation marks omitted). But they do not show that the relief Plaintiffs seek is available under the IDEA, and for good reason—it simply is not. *Cf. T.R. v. Sch. Dist. of Phila.*, 223 F. Supp. 3d 321, 330 (E.D. Pa. 2016). Contrary to Defendants' argument, Plaintiffs do not challenge any part of a plaintiff's Individualized Education Program ("IEP") or Section 504 Plan. Instead, they challenge the fact that the Executive Order and state law prohibit school districts from exercising discretion to protect their most vulnerable students from COVID by using any type of mask mandate, even a narrow one. This prohibition is enforceable by the Governor, his executive appointees and the Attorney General, and, therefore, cannot be addressed through the IDEA process. Accordingly, exhaustion would "serve no purpose" and the futility exception applies. *Reid*, 60 F. Supp. 3d at 607.

## ii.   Severe harm

Another exception applies when "the alleged harm is so severe as to excuse Plaintiff from administrative exhaustion." *A.S. ex rel. Leonel S. v. Catawba Cnty. Bd. of Educ.*, No. 5:11CV27-RLV, 2011 WL 3438881, at *4–6 (W.D.N.C. Aug. 5, 2011). Plaintiffs have alleged a severe risk of harm from Defendants' prohibition to accommodate their risk of exposure to COVID-19 based on their disability. Am. Compl. ¶¶ 194, 206. Each child is eligible to attend their local school but either cannot do so or, if they do, is at significant risk of harm to their health and even life. ECF 5-1 ¶¶ 16-18, 21-23 (Decl. of Christopher Seaman and Elizabeth Allison Lyons); ECF

---

gravamen of plaintiffs' complaint was educational placement, services, procedural rights under the IDEA, and retaliation. *Id.* at 779. By contrast, Plaintiffs here do not allege deficiencies with special education services, but discrimination under the ADA and Section 504 by failing to accommodate students with disabilities. *See e.g.*, Am. Compl. ¶¶ 192, 204.

5-2 ¶¶ 9-10 (Decl. of Tasha Nelson); ECF 5-3 ¶¶ 7, 10 (Decl. of Elizabeth Burnett); ECF 5-4

¶¶15-18 (Decl. of Lindsey Dougherty); ECF 5-5 ¶¶ 7-15 (Decl. of Meghan DuFrain); ECF 5-6 ¶

9 (Decl. of Denille Francis); ECF 5-7 ¶¶ 10-12 (Decl. of Brian Mulligan); ECF 5-8 ¶ 9 (Decl. of

Kimberly Crawley); ECF 5-9 ¶¶ 6-7 (Decl. of L.W.)[38]; ECF 5-10 ¶¶ 17-19 (Decl. of R.M.)[39];

ECF 5-11 ¶¶ 12-17 (Decl. of K.R.)[40]; ECF 29-2 ¶¶ 14-17 (Supp. Decl. of Tasha Nelson); ECF

29-3 ¶¶ 8-13 (Supp. Decl. of Elizabeth Burnett); ECF 29-5 ¶¶ 7-9 (Supp. Decl. of Kimberly

Crawley); ECF 41-4, Ex. 18 ¶¶ 11-12 (Supp. Decl. of S.K.)[41]; ECF 41-5, Ex-19 ¶¶ 9-11 (Supp.

Decl. of K.R.).[42] In the face of a virus that can be transmitted at any time from an infected

unmasked child to a high-risk child, these harms cannot wait for the IDEA exhaustion process.

The harms at issue in this case, as well as their urgency, justify exemption under these

extraordinary circumstances.

## 2.      Plaintiffs Are Entitled to Reasonable Modification

Defendants know nothing about the interactions between Plaintiffs and their school

districts, but that does not stop them from claiming that "Plaintiffs have not requested a

reasonable accommodation." Not surprisingly, Defendants have no evidence to support this

statement because it is incorrect. First, the school districts at issue here have IEPs, Section 504

Plans, or medical plans for each Plaintiff, so they are fully on notice of Plaintiffs' disabilities. In

addition, each of these families has been interacting with their school district regularly over the

course of the two years of the COVID pandemic, so the school districts are well aware of the

---

[38] ECF 6, Filed Under Seal.

[39] ECF 6, Filed Under Seal.

[40] ECF 6, Filed Under Seal.

[41] ECF 30, Filed Under Seal.

[42] ECF 30, Filed Under Seal

need for masking to protect these high-risk children, not to mention that it is obvious to the

districts. Finally, Plaintiffs have, indeed, requested reasonable modifications to the schools' no-

mask policies. Because the state issued the discriminatory law at issue here, however, and the

schools did not comply immediately, Plaintiffs requested modifications once there was a policy

for the school districts to modify. *See* ECF 29-2 at ¶¶ 5-13 (Second Decl. of Tasha Nelson); ECF

29-5 at ¶¶ 6-7 (Supp. Decl. of Kimberly Crawley); ECF 5-4 at ¶ 14 (Decl. of Lindsey

Dougherty); ECF 5-10 at ¶ 15 (Decl. of R.M.);[43] Ex. 2 at ¶¶ 4-10, 14-15 (Third Decl. of Tasha

Nelson); Ex. 3 at ¶¶ 9-12 (Second Decl. of Christopher Seaman and Elizabeth Allison Lyons);

Ex. 4 at ¶¶ 9-14 (Second Decl. of Meghan DuFrain).[44]

       Surely the state is not suggesting that individual Plaintiffs must make specific requests to

the state to modify its facially discriminatory law one person at a time. First, there is no

mechanism through which Plaintiffs may request a modification of a Virginia state law under the

ADA. In addition, *in this case* four state agencies – the Governor, Attorney General, Secretary of

Education and Secretary of Health – all disclaim any authority over Executive Order 2 and S.B.

739, so there does not appear to be anyone in state government who would take responsibility for

such a request.

       Title II of the ADA and Section 504 do not even "remotely suggest[] that covered entities

have the option of being passive in their approach to disabled individuals as far as the provision

of accommodations is concerned." *Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 269

(D.D.C. 2015).  Here, the reasonable modification requirement is not the only applicable

requirement. Rather, Defendants must, *inter alia*, affirmatively afford people with disabilities

---

[43] ECF 6, Filed Under Seal

[44] C.B.'s school district preemptively informed L.W. that no accommodations would be
permitted.

equal opportunity to participate, provide benefits that are as effective as the benefits afforded

people without disabilities, 28 C.F.R. § 35.130(b)(1)(ii)-(iii), ensure people with disabilities are

not excluded or denied the benefits of public programs, 42 U.S.C. § 12132, administer public

programs in ways that do not have the effect of discriminating against people with disabilities, 28

C.F.R. § 35.130(b)(3), and administer public programs in the most integrated setting appropriate

to the needs of students with disabilities.

Even Defendants acknowledge that Plaintiffs are not required to request reasonable

accommodations when the need for such accommodation is necessary and obvious. *E.T. v.

Paxton*, 19 F.4th 760, 768 (5th Cir. 2021).  The accommodations requested in this matter are

obvious and necessary and were called to the state's attention, *inter alia*, in hearings on S.B. 739

and its House companion bill, H.B. 1272. *See, e.g.,* Hearing on H.B. 1272, available at

https://sg001-harmony.sliq.net/00304/harmony/en/PowerBrowser/PowerBrowserV2/20220209/-

1/14250?startposition=20220209081848&viewMode=2&globalStreamId=4, at 8:21-8:22:45,

8:25:35-8:26:45 (Feb. 9, 2022). Plaintiffs are children who are at a high-risk of serious illness if

they contract COVID-19 while attending school in person. There is ample data that supports the

effectiveness of masks to prevent the spread of COVID-19.  Exhibit 1 ¶¶ 20-24. These

conditions, put together, demonstrate the obvious need for exceptions to Executive Order 2 and

S.B. 739 when necessary for a school district to accommodate a student with a disability.

### 3.     Mask Mandates Necessary to Accommodate High-Risk Students with Disabilities are Reasonable

Again, Plaintiffs do not seek to have all schools implement the same mask mandate,

requiring all students everywhere to wear masks, so Defendants' argument that such a demand

would be unreasonable is inapposite. So is their argument that Plaintiffs' request is

"unprecedented." Plaintiffs provided numerous citations to precedent. *See, e.g., Arc of Iowa v.*

25

*Reynolds,* No. 21-3268, 2022 WL 211215 (8th Cir. Jan. 25, 2022); *Doe 1 v. Perkiomen Valley School Dist.*, 2022 WL 356868 at *29 (E.D. Pa. Feb. 7, 2022); *Doe 1 v. North Allegheny School Dist.*, 2022 WL 170035 at *8 (W.D. Pa. Jan. 17, 2022); *R.K. v. Lee,* 2021 WL 4942871 (M.D. Tenn. Oct. 22, 2021).

A modification is deemed reasonable if Plaintiffs show it is "reasonable on its face." *See Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 507-08 (4th Cir. 2016) (quoting *Halpern v. Wake Forest Univ. Health Servs*, 669 F.3d 454,464 (4th Cir. 2012) (internal citations omitted)). This essentially means that the modification is "used ordinarily or in the run of cases" and is not an "undue hardship." *Id.* Moreover, the Plaintiffs' burden to establish the reasonableness of an accommodation is "not a heavy one" and it is sufficient for Plaintiffs to suggest the "existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Id.* at 507-508 (internal citations omitted). Once Plaintiffs demonstrate general reasonableness, the burden moves to Defendants to demonstrate that the modification would be an undue burden on, or fundamental alteration of, their program. *Lamone,* 813 F.3d at 508 (citing 28 C.F.R. § 35.130(b)(7). "A 'fundamental alteration' is a 'modification to 'an essential aspect' of [a public entities'] program.'" *J.D. v. Colonial Williamsburg Found.*, 925 F.3d 663, 676 (4th Cir. 2019) (citing *Halpern*, 669 F.3d at 464 (quoting *Martin*, 532 U.S. at 683)).

This Circuit has held that accommodations can be necessary to address a risk of injury or health consequence under the ADA. *J.D.*, 925 F.3d at 672-673. Plaintiffs' proposed accommodations are necessary because they are the only way to address the risk of injury or health consequence from COVID-19 such that Plaintiffs can receive equal access to in-person public education. Plaintiffs' doctors have emphasized that masks are necessary in certain circumstances to reduce the risk of contracting COVID-19 and developing severe illness. ECF 5-

1 at ¶ 17 (Decl. of Christopher Seaman and Elizabeth Allison Lyons); ECF 5-2 at ¶¶ 6, 10 (Decl. of Tasha Nelson); ECF 5-3 at ¶ 7 (Decl. of Elizabeth Burnett); ECF 5-4 at ¶ 9 (Decl. of Lindsey Dougherty); ECF 5-5 at ¶¶ 4, 7 (Decl. of Meghan DuFrain); ECF 5-6 at ¶¶ 5, 9 (Decl. of Denille Francis); ECF 5-7 at ¶ 5 (Decl. of Brian Mulligan); ECF 5-8 at ¶¶ 5, 9 (Decl. of Kimberly Crawley); ECF 5-10 at ¶ 8 (Decl. of R.M.)[45]; ECF 5-11 at ¶¶ 14, 16 (Decl. of K.R.); ECF 41-1, Ex. 18 at ¶¶ 5-6, 11 (Supp. Decl. of S.K.); ECF 41-5, Ex. 19 at ¶ 10 (Supp. Decl. of K.R.). Currently, if a school district is experiencing high transmission rates, Plaintiffs' only options are to either pull their children out of school, affecting their quality of education, or keep their children in class and risk their health and safety. Permitting school districts to make localized decisions regarding student masking is necessary to allow Plaintiffs to have equal access to in-person public education.

Allowing school districts to require masks to protect students from disabilities would in no way impact an "essential aspect" of public education.  Students will still be able to attend class, interact with teachers and other students, and participate in school related activities while wearing masks.  During the first half of school year 2021-2022, schools operated with universal indoor masking policies in place while also providing in-person instruction. The fact that Virginia public schools have been requiring universal masking (more than Plaintiffs demand) for some time demonstrates conclusively that requiring masking in some form is not unreasonable. *See Lamone*, 813 F.3d at 508 (finding that a voting tool already in use for disabled voters in Maryland "speaks to the reasonableness of using the tool" as a modification).

This accommodation also does not "trample[] on the rights of other [students]" *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 355 (4th Cir. 2001. School masking would not negatively affect

---

[45] ECF 30, Filed Under Seal.

the educational experience of other students as Defendants suggest.  In *Sara Lee Corp.*, the plaintiff's request to be moved to the first shift would have interfered with the seniority rights of other employees, and, therefore, was unreasonable. *Id.* Here other students have no contractual or other right not to wear a mask. The second case Defendants erroneously rely on, *Bercovitch v. Baldwin Sch., Inc.,* 133 F.3d 141 (1st Cir. 1998), is a First Circuit decision that is not binding on this Court.  In that case, a disabled student sought an exception to codes of conduct because his consistently disruptive behavior led to him being expelled from school.  In that case, his disruptive behavior truly "impaired the educational experience of the other students and significantly taxed the resources of the faculty and administration" and, as such, fundamentally altered the program and thus was not reasonable.  *Id.* at 152.

In contrast, Plaintiffs' accommodation - permitting public school districts to make their own informed choices regarding masking - does not punish non-disabled students nor impair their educational experience. Rather, it makes it possible for school districts to make in-person learning safer and more equitable for all students, especially those at a high risk of severe illness.

### 4. Federal Law Preempts Executive Order 2 and S.B. 739

Defendants concede that the question of whether the ADA or Section 504 preempt EO2 and SB739 turns on whether Plaintiffs can demonstrate that they are entitled to masking under the statute. (Opp. at 27.) Because Plaintiffs have made that showing, EO2 and SB739 are preempted, and this Court need not reach the question of whether ARPA separately preempts them.

### C. Issuing an injunction in this case would not result in irreparable injury to Defendants.

A state government suffers no irreparable injury if a court enjoins the enforcement of a statute that is in violation of federal law. In fact, Defendants' argument to the contrary is directly

in opposition to a century of jurisprudence holding that federal courts can prospectively enjoin state officials from enforcing state laws to prevent violations of federal law. *E.g., Ex Parte Young*, 209 U.S. 123 (1908). And the federal court "power" to "invalidate a statute ... has been firmly established since *Marbury v. Madison*." *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2350 (2020). Thus, where "an elected official's actions frustrate a public entity from seeking to prospectively comply with the ADA, or with any other federal law . . . . 'it is incumbent upon the courts to insure that the mandate of federal law is achieved.'" *S.B. by & through M.B. v. Lee*, No. 3:21-CV-00317, 2021 WL 4755619, at *27–28 (E.D. Tenn. Oct. 12, 2021) (quoting *Crowder v. Kitagawa*, 81 F.3d 1480, 1485 (9th Cir. 1996)).

Dated:  March 3, 2022

Respectfully submitted,

/s/ Eden B. Heilman
Eden B. Heilman (Va. Bar No. 93554)
Matthew Callahan (*pro hac vice* to be filed)
Monique Gillum (*pro hac vice* to be filed)
American Civil Liberties Union (ACLU)
Foundation of Virginia
701 E. Franklin St., Suite 1412
Richmond, VA 23219
Tel: (804) 644-8022
Fax: (804) 649-2733
eheilman@acluva.org
mcallahan@acluva.org
mgillum@acluva.org

Eve L. Hill (VA Bar # 96799)
Sharon Krevor-Weisbaum (*pro hac vice*)
Jessica Weber (*pro hac vice* pending)
Brown Goldstein Levy LLP
120 E. Baltimore Street, Suite 2500
Baltimore, MD 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
EHill@browngold.com
skw@browngold.com

jweber@browngold.com

Steven M. Traubert (Va. Bar #41128)
Kerry M. Chilton (Va. Bar #90621)
disAbility Law Center of Virginia
1512 Willow Lawn Drive, Suite 100
Richmond, Virginia 23230
(804)225-2042
steven.traubert@dLCV.org
kerry.chilton@dLCV.org

Ian S. Hoffman (VA Bar #75002)
John A. Freedman (*pro hac vice* to be filed)
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., N.W.
Washington, DC  20001
Tel: (202) 942-5000
Fax: (202) 942-5999
Ian.Hoffman@arnoldporter.com
John.Freedamn@arnoldporter.com

Kaitlin Banner (*pro hac vice* pending)
Margaret Hart (*pro hac vice* to be filed)
Marja K. Plater (*pro hac vice* to be filed)
WASHINGTON LAWYERS'
COMMITTEE FOR CIVIL RIGHTS AND
URBAN AFFAIRS 700 14th Street, NW, Suite 400
Washington, DC 20005 Phone: (202) 319-1000
Fax: (202) 319-1010
kaitlin_banner@washlaw.org
margaret_hart@washlaw.org
marja_plater@washlaw.org

*Counsel for Plaintiffs*

30

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of March 2022, I filed the foregoing document with

the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to all parties of record.


_____*/s/ Eve L. Hill*_____
Eve L. Hill

31