**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Charlottesville Division)**

| | | |
|---|---|---|
| CHRISTOPHER SEAMAN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:22-cv-6-NKM |
| | ) | |
| COMMONWEALTH OF VIRGINIA, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF *AMICUS CURIAE* OF FAIRFAX COUNTY SCHOOL BOARD
<u>IN SUPPORT OF PLAINTIFFS</u>**

John F. Cafferky, VSB No. 26179
William B. Porter, VSB No. 41798
Emily K. Haslebacher, VSB No. 92281
BLANKINGSHIP & KEITH, P.C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
jcafferky@bklawva.com
wporter@bklawva.com
ehaslebacher@bklawva.com
(703) 691-1235 (Telephone)
(703) 691-3913 (Facsimile)

*Counsel for Amicus Curiae*
*Fairfax County School Board*

March 4, 2022

## **Table of Contents**

Table of Contents ................................................................................................................. 1

Interest of the *Amicus* ........................................................................................................ 1

Facts Relevant to the Position of the *Amicus* ..................................................................... 5

I.     S.B. 739 Violates Article VIII, Section 7 of the Constitution of Virginia ........................... 8

    A.     The Virginia Constitution's Plan for Public Education in the Commonwealth .............. 8

    B.     Responsibility of Local School Boards to Supervise the Schools of their Respective Divisions, in Particular in Matters of Student Health and Safety ............................................... 9

    C.     Legislative Enactments that Contravene Local School Boards' Authority to Supervise the Schools of their Respective Jurisdictions Cannot Stand ........................................................ 11

    D.     S.B. 739 Usurps Local School Boards' Responsibility to Supervise Important Decisions Concerning Student Health .......................................................................................... 12

    E.     The Justifications and Arguments Urged by Defendants are Without Merit ................ 14

II.    The Emergency Clause Provision of SB739 was Adopted in Violation of the Constitution of Virginia ........................................................................................................................ 15

Conclusion ........................................................................................................................ 17

i

**BRIEF *AMICUS CURIAE* OF FAIRFAX COUNTY SCHOOL BOARD
IN SUPPORT OF PLAINTIFFS**

The Fairfax County School Board ("FCSB"), by counsel, submits this brief a*micus curiae* in support of Plaintiffs and their Motion for Temporary Restraining Order and Preliminary Injunction.

### Interest of the *Amicus*

*Amicus* FCSB is the local school board that operates the Fairfax County Public Schools ("FCPS"). It is constituted by Article III, Section 7 of the Constitution of Virginia.[1] FCSB's members are popularly elected by the citizens of Fairfax County. Like the other local Virginia school boards serving both the student plaintiffs here, as well as other medically fragile and vulnerable students with disabilities, *Amicus* FCSB is charged by law with the operation and supervision of the public schools in its community.

FCSB as *Amicus* has a direct interest in this matter. While it does not purport to speak on behalf of the other school divisions in the Commonwealth, FCSB brings a deeply informed position to assist this Court with resolution of the issues in this action. FCPS is the largest public school division in Virginia, and it is among the dozen largest school divisions in the country. Operating almost 200 schools, FCPS educates more than 187,000 students from pre-kindergarten through the twelfth grade. Over 28,000 FCPS students have disabilities for which they receive special education services under the Individuals with Disabilities Education Act ("IDEA"), and over 7,000 more FCPS students have disabilities that render them in need of accommodations under Section 504 of the Rehabilitation Act of 1973 ("Section 504").  FCPS does not suggest that

---

[1] FCSB is designated as a corporate body with, *inter alia*, the power to serve as a party in litigation, by Code of Virginia section 22.1-77. This brief was prepared solely by *Amicus* and its counsel and has been neither authored nor funded in whole or in part by any party.

all or even most of these students need to be in a masked environment, but the large number of students whom FCPS serves illustrates the magnitude of the challenge it faces.

While FCPS's students have a range of disabilities, there are hundreds with serious medical conditions that, according to criteria established by the Centers for Disease Control and Prevention ("CDC"), render them "high risk" for serious illness or death from respiratory infections such as COVID-19. These include students with cystic fibrosis, leukemia or other cancers requiring chemotherapy or radiation; students with trachea and other respiratory conditions necessitating supplemental oxygen or tracheal suctioning in school; and students with dozens of other medical conditions that compromise their immune systems. One of the student plaintiffs in this action, S.K., resides in Fairfax County and attends a FCPS school.

FCSB was a plaintiff in *Alexandria City School Board, et al. v. Younkin*, Case No. CL22000224-00 (Va. Cir. Ct. (Arlington Co.) January 24, 2022), in which the court enjoined Governor Glenn A. Youngkin's January 15, 2022 Executive Order 2 ("EO2"), styled "Reaffirming the Rights of Parents in the Upbringing, Education, and Care of Their Children," now "codified" as Senate Bill 739 ("SB739"). FCSB submits that the same unconstitutional overreach represented by EO2 infects SB739 as well. In short, both EO2 and SB739 violate local school boards' deeply rooted constitutional authority under Article VIII, Section 7 of the Constitution of Virginia (and its predecessor, Section 133 of the 1902 Constitution of Virginia), as construed and applied in a long line of decisions of the Supreme Court of Virginia and of the federal courts. These concerns are not limited to the specifics of masking but, instead, extend to the significant interference with Virginia's constitutional system of local educational decision-making represented by SB739.

*Amicus's* overarching responsibility is to enable all students—including those with serious medical conditions—to receive an education that enables them to meet high academic standards

2

and to mature into responsible and conscientious citizens. In order to do that, FCSB must provide those students with a school environment that keeps them as safe and as healthy as possible. To advance that mission, *Amicus* is called upon to establish, and revise on an ongoing basis, countless policies and practices to promote student education, health, and well-being. Some of these policies and practices emanate from the minimum requirements established by state or federal law. Many others, however, are the result of *Amicus's* consideration of the needs of the students in its local jurisdiction, and its determination as to how best to meet them.

FCSB submits this brief a*micus curiae* in support of the Plaintiffs. FCSB does so in the spirit of helping the Court more fully understand that, while the specific issue in this case involves masking requirements for public school students, a broader, fundamental legal principle is at stake: the responsibility bestowed by the Constitution of Virginia on locally-elected school boards to make decisions for the protection of their students' safety, welfare, and education. Article VIII, Section 7 of the Constitution vests local school boards with exclusive responsibility over "the supervision of schools in each school division." As then-Supreme Court of Virginia Justice Barbara Keenan (now on the U.S. Court of Appeals for the Fourth Circuit) wrote, "*decisions regarding the safety and welfare of students are manifestly a part of the supervisory authority granted the school boards under Article VIII.*" *Commonwealth v. Doe*, 278 Va. 223, 230 (2009) (emphasis added). Whatever else a local school board's obligation of supervision entails, at the very least, it means that under Virginia's constitutional plan, they are entrusted with the authority to create division-wide, school-wide, and classroom-wide policies protecting student safety.

The legislation at issue in this case, SB739—like EO2 before it—bans every one of Virginia's 134 local school boards from making individualizing decisions within their divisions about student health and welfare. SB739 also specifically prohibits local school boards from

employing commonsense measures to protect student safety in those discrete situations where, in the local school board's considered judgment, it is reasonable to use them.

Because SB739 divests local school boards of their constitutional authority to utilize these measures, it offends the assignment of powers set forth in the Constitution of Virginia. As the Supreme Court of Virginia recently reaffirmed in another case involving, in part, Article VIII, Section 7, *"[n]o statutory enactment can permissibly take away from a local school board its fundamental power to supervise its school system." Fairfax Cty. Sch. Bd. v. S.C. by Cole*, 297 Va. 363, 375 (2019) (emphasis supplied; citation omitted). SB739 nonetheless does that here.

Of even broader concern, the thrust of SB739 threatens a wide range of other commonsense safety and educational measures that local school boards may, in their judgment and based upon local factors, choose to employ. Among many examples, FCSB submits that, using the rationale of SB739, the General Assembly could attempt to prohibit local school boards from making fundamental decisions—a right vested in them as locally elected officials—that may affect only their districts, such as:

- establishing a nut-free class, or a portion thereof, to protect students with life-threatening allergic conditions;
- installing seat belts on school buses where it determines that to be feasible;
- limitations on wearing gang-affiliated items of clothing in schools with a history of violence;
- a ban on "lookalike" weapons;
- the use of metal detectors in schools with serious and ongoing weapons problems;
- holding live evidentiary hearings for short student suspensions, where not otherwise required by the Code of Virginia;
- establishing smaller class sizes, and/or advanced classes, beyond those provided by the Standards of Quality;
- creating local requirements for interscholastic sports protective equipment beyond that mandated by a regulatory agency;

- establishing conduct provisions that protect gay, lesbian, or other sexual minority students against harassment on the basis of sexual orientation or gender identity.

FCSB submits that a statute abolishing or prohibiting a local school board from adopting these kinds of straightforward safety or educational measures clearly would violate Article VIII, Section 7 of the Constitution. SB739, which prohibits a reasonable, commonsense safety measure historically recommended by both the Virginia Department of Health and the CDC, is no different.

## Facts Relevant to the Position of the *Amicus*

In order to combat the COVID-19 pandemic and to return students to in-person education, FCSB, both before and during the 2021-22 school year, put in place many types of mitigation measures. These measures included physically distancing students to the greatest extent possible, directing increased handwashing, and enhancing cleaning regimes, as well as many other protocols. Among the health and safety measures FCPS employed included a requirement that all students and staff wear masks at school regardless of vaccination status ("universal masking"). While universal masking also was the subject of executive orders issued by then-Governor Northam, the decision to require universal masking was made by FCSB first.

It was the experience of FCSB that, during the first two-thirds of the 2021-22 school year, universal masking worked well: it limited COVID-19 outbreaks at schools, it allowed schools to stay open, and it enabled students to continue attending school in person. Indeed, at that time, FCSB's mitigation strategy was essential because, due to locally-prevailing conditions in Fairfax County, including (among others) the size of its student population, the limited space available in its school buildings, and the rate of virus transmission in the county, other ways of combatting the virus in schools were not enough. Student compliance with universal masking, while perhaps not perfect, was highly effective overall. FCPS saw little or none of the adverse consequences of masking urged by Defendants. Indeed, even as Defendants were filing repeated briefs in various

litigations objecting to continued universal masking, their own health department continued to recommend masking as an effective way to limit the spread of COVID-19.[2] Further, despite the fact that certain local governmental jurisdictions have made the decision to relax masking requirements, the Attorney General still requires visitors to wear masks in his indoor space.[3]

On his first day in office, January 15, 2022, however, Defendant Youngkin issued EO2, purporting to ban all local school divisions in Virginia from requiring masks for students, ostensibly to "reaffirm" what he referenced to as a right of parent choice. Concerned both about the significant adverse public health effects of EO2 and its implications for local school decision-making, on January 24, 2022, FCSB joined six other local school boards from around Virginia (including those representing the cities of Alexandria, Falls Church, Hampton, and Richmond, and the counties of Arlington and Prince William) in filing suit to enjoin the provisions of EO2 that governed universal masking. *Alexandria City Sch. Bd. v. Youngkin*, Case No. CL22000224-00 (Va. Cir. Ct. (Arlington Co.) January 24, 2022). On February 4, 2022, that court issued a memorandum opinion enjoining EO2 and. on February 8, 2022, entered an order to that effect.

The very same day, an amendment was introduced in the Virginia General Assembly seeking to "codify" the masking prohibition provisions of EO2. *See* https://lis.virginia.gov/cgi-bin/legp604.exe?221+ful+SB739S1. Ultimately, that legislation was rushed through the General Assembly and sent to the Governor on February 14, 2022. Pursuant to Article IV, Section 13 of

---

[2] Even today, the Virginia Department of Health's COVID-19 "Frequently Asked Questions," while acquiencing to parental choice, answers the question, "*Should a mask be worn in school?*" by stating, "*VDH recommends: All persons aged two and older, regardless of vaccination status, wear masks indoors* in public settings when community level of transmission is substantial or high." VDH FAQ's, 1/27/22, https://www.vdh.virginia.gov/covid-19-faq/ (last visited March 4, 2022).

[3] *See* https://www.oag.state.va.us/ "Notice Regarding Service" ("Anyone with service of process is required to wear a mask inside the building . . . .") (last visited March 4, 2022).

the Constitution of Virginia, by default, new legislation takes effect on the first day of July of the year in which it is enacted. Under that same article, a four-fifths vote of both chambers of the General Assembly is required to adopt legislation on an emergency basis.

To avoid this requirement, however, the Governor returned SB739 to the Senate the very same day with "recommendations," one of which was the recommendation that the law take effect immediately, based on an unstated emergency. During floor debate in the House of Delegates, it was noted that past practice had been inconsistent as to whether an emergency clause could be adopted by a Governor's recommendation. In 2010, at least, then-Speaker of the House of Delegates William James Howell had ruled that such an amendment required a 4/5th majority.[4] The General Assembly subsequently passed the Governor's recommendation by a bare majority in both houses (21-19 in the Senate, and 52-48 in the House of Delegates), but not anything approaching a four-fifths supermajority.[5]

In the meantime, the masking provisions of SB739 have, to an appreciable degree, been overtaken by events. In the past few weeks, infection rates and hospitalizations from COVID-19, and in particular the Omicron variant, have materially trended down in Fairfax County. Based upon new CDC guidance, as of February 25, 2022, Fairfax County is no longer in the "high" or "substantial" rate of community transmission, though many other areas of the Commonwealth are. As a result of these developments, FCPS announced that, as of March 1, 2022, it was in a position to, as a general matter, allow students to elect not to wear a mask.

Nonetheless, situations continue to exist where—for individual, medically fragile, or at risk students with cancer, respiratory conditions, or otherwise compromised immune systems such as

---

[4] *See* https://sg001-harmony.sliq.net/00304/Harmony/en/PowerBrowser/PowerBrowserV2/20220216/-1/14287#agenda_ (beginning at time stamp 12:47 PM).
[5] *See* https://lis.virginia.gov/cgi-bin/legp604.exe?ses=221&typ=bil&val=sb739

those described above—it would continue to be a reasonable consideration as to whether all such a student's classmates should be masked. However, SB739 prevents a local school board from even considering that alternative. Nor does SB739 afford a local school board the latitude to determine—based upon the reemergence of a new strain of COVID-19, vastly increased transmission or hospitalization statistics, or a school outbreak—that masking of an entire class, school or the school division's students should be considered in the interest of student safety and welfare. Inasmuch as SB739 absolutely and uncategorically prohibits local school boards from even entertaining a type of student safety measure used successfully in the past to prevent student illness, it violates Article VIII, Section 7 of the Constitution of Virginia and should be enjoined.

I.      **S.B. 739 Violates Article VIII, Section 7 of the Constitution of Virginia**

Inasmuch as SB739 deprives FCSB and other Virginia local school boards of the option to utilize, or even consider, requiring universal masking of either a classroom, school or the division as a whole, no matter what the circumstances, it impermissibly deprives those school boards of the authority to supervise the public schools of their respective divisions, in derogation of the authority conferred upon them by Article VIII, Section 7 of the Constitution of Virginia.

A.      **The Virginia Constitution's Plan for Public Education in the Commonwealth**

Article VIII of the Constitution of Virginia establishes the structure for public education in the Commonwealth of Virginia. Under the system for public education articulated therein, the General Assembly is to "provide for a system of free public elementary and secondary schools for all children of school age throughout the Commonwealth." Va. Const., Art. VIII, § 1. The Standards of Quality for the public schools in the various school divisions are established by the General Assembly and State Board of Education, Va. Const., Art. VIII, § 2, and adopted in the Code of Virginia. Va. Code § 22.1-253.13:1 *et seq*. The State Board of Education and the State

Superintendent provide general oversight of the public education system, as a whole, dividing the Commonwealth into school divisions, monitoring compliance with the standards of quality, and performing other enumerated general duties. Va. Const., Art. VIII, §§ 4, 5, and 6. The Governor's role is limited to appointing the State Superintendent and the Board of Education members and to receiving reports on the standards of quality. *Id.*

In setting general parameters for establishing the basic requirements for a statewide system of free public schools under Article VIII, Section 1 of the Constitution of Virginia, the General Assembly has adopted many types of threshold requirements. Those include, among others:

➤ Requirements for the operation of school boards themselves (Va. Code § 22.1, Chapter 7);

➤ Baseline financial standards (Va. Code § 22.1, Chapter 8);

➤ Minimum student health provisions, including immunization requirements (Va. Code § 22.1, Chapter 14, Article 2);

➤ Minimum requirements for teachers, including certification and lack of criminal or child abuse conviction (Va. Code § 22.1, Chapter 15, Article 2);

➤ Basic student discipline due process requirements (Va. Code § 22.1, Chapter 14, Article 3);

➤ Minimum teacher grievance standards (Va. Code § 22.1, Chapter 15, Article 3);

➤ Federally-mandated requirements for special education programs (Va. Code § 22.1, Chapter 13, Article 2); and,

➤ Minimum standards of quality for public schools (Va. Code § 22.1, Chapter 13.2).

There are many other ways in which the General Assembly prescribes threshold requirements for the establishment of a public school system. *See generally* Va. Code Title 22.1. While these various provisions of Title 22.1 of the Code of Virginia establish baseline requirements for the operation of a public school division, they do not mandate a *limit* to what a local school board may do over and above those threshold requirements.

**B.    Responsibility of Local School Boards to Supervise the Schools of their Respective Divisions, in Particular in Matters of Student Health and Safety**

As to the *supervision of the operation of the schools in each local school division*, however, it is abundantly clear that that responsibility is vested in the respective local school boards. Specifically, the Constitution of Virginia expressly provides that "*[t]he supervision of schools in each school division shall be vested in a school board . . . .*" Va. Const. Article VIII, § 7 (emphasis added). As the Supreme Court of Virginia has observed, as a separate and coequal branch of government with respect to public education, local school boards enjoy a "unique constitutional status." *Fairfax Cty. Sch. Bd. v. S.C. by Cole*, 297 Va. 363, 374 (2019). Consistent with this constitutional plan, "[t]he power to operate, maintain and supervise public schools in Virginia is, and has always been, within the exclusive jurisdiction of the local school boards . . . ." *Bradley v. Sch. Bd. of City of Richmond*, 462 F.2d 1058, 1067 (4th Cir. 1972). Likewise in *Bacon v. City of Richmond*, 475 F.3d 633 (4th Cir. 2007), the Fourth Circuit aptly observed:

> [l]ocal control over the operation of public schools is one of our nation's most deeply rooted traditions—and for good reason. "[L]ocal autonomy has long been thought essential" . . . [and] [s]chool authorities are granted substantial authority to formulate educational policy because they must balance so many competing interests. They are more in tune with educational exigencies.

*Id.* at 641-642. Local school boards, including FCSB, must engage in precisely this kind of balancing of the many competing interests in formulating policies as to the use of masking, or any of the countless other issues in the educational environment.

Nowhere is that truer than when it comes to protecting student health and safety. Indeed, among the most closely held and core components of a local school board's duty of supervision is the responsibility for ensuring the health and safety of students. As the Supreme Court of Virginia said in *Commonwealth v. Doe*, "*decisions regarding the safety and welfare of students are manifestly a part of the supervisory authority granted the school boards under Article VIII.*" 278 Va. at 230 (emphasis added). Decisions by local school boards, including FCSB, concerning safety

measures in its classrooms squarely fall within this scope. This stands to reason, as locally-elected school boards, knowledgeable about and accountable to their respective communities, are in the best position to decide what is appropriate for a particular school or school division.

### C.    Legislative Enactments that Contravene Local School Boards' Authority to Supervise the Schools of their Respective Jurisdictions Cannot Stand

As the Supreme Court of Virginia recently underscored in another case involving, in part Article VIII, Section 7, "*given the constitutional status of school boards, '[n]o statutory enactment can permissibly take away from a local school board its fundamental power to supervise its school system.*'" *Cole*, 297 Va. at 375 (emphasis supplied; citation omitted). Accordingly, Virginia courts consistently have struck down attempts to divest school boards of their power and responsibility to supervise local schools—even where such a provision is contained in a regulatory or legislative enactment. *See generally* D. Guynn, *Constitutional Roots and Shadow: The School Board's Manifest Power Under Article VIII, Section 7*, JOURNAL OF LOCAL GOVERNMENT LAW, Vol. XXIV, No. 2 (Fall 2013).

So, for example, in *Sch. Bd. v. Shockley*, 160 Va. 405 (1933), the Supreme Court of Virginia held as unconstitutional under Section 133 of the 1902 Constitution of Virginia—the direct predecessor to Art. VIII, Section 7 of the current 1971 Constitution—a state statute mandating a local tax levy for the purpose of erecting a school. The Court there observed:

> [m]anifestly, *it was not contemplated by the framers of the Constitution to permit the legislature to nullify the powers and discretion thereby conferred upon* the local authorities of the several counties *and school districts* of the State, *as is attempted to be done by the act under consideration*.

160 Va. at 415 (emphasis added). Later, in *Harrison v. Day*, 200 Va. 439, 451–52 (1959), the Supreme Court of Virginia invalidated another statutory scheme adopted by the General Assembly that closed integrated schools by operation of law and placed them under the Governor's control.

11

Citing *Shockley*, the Court said:

> [the Act] . . . providing for the closing of schools because of integration, divesting local authorities of all power and control over them, and vesting such authority in the Governor, violates Section 133 of the Constitution which vests the supervision of local schools in the local school boards.

200 Va. at 452. In *Howard v. Cty. Sch. Bd. of Alleghany Cty.*, 203 Va. 55 (1961), the Supreme Court of Virginia held that a statute that created a referendum as to whether to sell certain property divested the school board of its right of supervision. The Court said, "We agree with the position of the Board that this statute violates § 133 of the Constitution of Virginia and is invalid." *Id.* at 58–59. Thereafter, in *Sch. Bd. of City of Richmond v. Parham*, 218 Va. 950, 957-58 (1978), the Supreme Court of Virginia held that it was unconstitutional for the Board of Education to compel school boards to submit to an outside agency's binding arbitration of teacher-employment disputes because such action stripped the school boards of their supervisory authority. And most recently in *Sch. Bd. of City of Norfolk v. Opportunity Educ. Inst.*, 88 Va. Cir. 317 (Norfolk Cty. 2014), the Norfolk Circuit Court invalidated a Virginia statute that provided for the transfer of certain local schools determined to be "low performing" to a state entity controlled by the Governor.

The lesson of almost ninety years of jurisprudence under Article VIII, Section 7 of the Constitution of Virginia and its predecessor is clear: even statutes adopted by the General Assembly that intrude on the constitutional authority and responsibility of a local school board to supervise the schools in its jurisdiction must yield to the constitutional authority vested in local school boards. SB739 is such a statute.

### D.   S.B. 739 Usurps Local School Boards' Responsibility to Supervise Important Decisions Concerning Student Health

SB739 does not establish a baseline safety requirement for specific public school divisions or students, as do numerous other statutory provisions adopted by the General Assembly,

referenced above. Quite to the contrary, SB739 *prohibits*—on a sweeping, statewide basis—all local school boards in the Commonwealth from employing a commonsense safety measure that—at least in the school division which FCSB supervises (and numerous others)—proved to be safe and extremely effective for that portion of the year during which it was necessary. In this fundamental way, SB739 divests local school boards of their power under Article VIII, Section 7 of the Constitution of Virginia to protect student health and welfare.

The notion that the General Assembly can not only establish a *floor*, but also statutorily impose a *ceiling* on provisions adopted by local school boards to ensure student health and safety is an extraordinary departure from Virginia's constitutional plan for public education. It also is one that has immediate, practical consequences specifically in the case of universal masking, and more broadly to other types of school board decisions concerning student health, welfare, and education.

Specifically as it relates to universal masking, SB739 prohibits FCSB and other local school boards, under *any future circumstances*, from *ever again* utilizing an approach—universal masking at the school division level—that its past experience demonstrably has shown to be feasible to employ and successful in effect. Given Virginia's (and the world's) experience with the spikes of new COVID-19 cases last year, and early this year due to the emergence of the Delta and Omicron variants, the likelihood of a new variant or dramatic increase in cases cannot be ignored, at least by local school boards such as FCSB.

Furthermore, even beyond universal masking at the school division level, the needs of particular students with serious medical conditions may call for masking other students as a necessary accommodation for their disability at the classroom level. This type of accommodation for the individual needs of a specific student may be reasonable and necessary in a particular situation, but SB739 precludes FCPS from even considering it.

13

Finally, and more generally, the precedent set by SB739 is extremely problematic. As discussed above, the rationale behind its adoption could open up for legislative prohibition a wide array of protective or educational measures for students adopted by local school boards based upon local needs and conditions. A handful of those are bulleted above, and there are many others.

As such, SB739 impermissibly and directly intrudes upon a core constitutional responsibility of FCSB and other local school boards, both specifically and generally, and it must be enjoined.

### E.     The Justifications and Arguments Urged by Defendants are Without Merit

In response to the grave constitutional problems raised by a statewide ban on requiring masks where necessary in public schools, Defendants previously have raised the straw man characterization that the local school boards' position would somehow render them immune from all regulation or legislation by the General Assembly. That is not at all the case. As illustrated above, there are many permissible subjects of legislation of local public school divisions by the General Assembly. Each of these, in some way, establishes some minimum requirement or general parameter for the establishment of free public schools in the jurisdiction.

Indeed, *Butler v. Fairfax County School Board,* 291 Va. 32 (2015), though relied upon by Defendants, well-illustrates this principle. In that case, a Virginia statute in place at the time, Va. Code § 22.1-296.1, prohibited school divisions from hiring teachers with a felony record. A teacher who was fired on the basis of the statute sued, claiming *inter alia* that it divested the school board of its constitutional right of supervision (an argument not made by the school board there). The Supreme Court of Virginia, however, held that this statutory provision was permissible under Article VIII, Section 1. *Butler*, 291 Va. at 282. That conclusion accords entirely with the principle that the General Assembly can establish baseline requirements for teachers qualifications and leave

14

it to the local school board to establish any additional requirements over and above that.

The authorities upon which Defendants have relied in earlier litigation for the contrary proposition are simply inapplicable. *Sosebee v. Franklin County School Board*, 299 Va. 17 (2020), for example, does not involve the operation of public schools at all. Rather, as the Court notes at the end of its opinion in quickly dispensing of any constitutional argument, the case concerns the requirements for home-schooled students who are *not* enrolled in the public schools. 299 Va. at 25. *Kellam v. School Board,* 202 Va. 252 (1960), has nothing to do with any limitation by the General Assembly on the authority of local school boards to supervise schools, either. Rather, the holding in *Kellan* simply states that local school boards are governmental entities that enjoy sovereign immunity. *Kellan*'s comment that that the school board is purely a statutory creation— based solely upon a West Virginia citation—is no more than nonessential and non-relevant dictum

Nor do any of the other authorities offered by Defendants on behalf of SB739 in any way justify the statute's clear intrusion into the supervisory responsibility of local school boards under Article VIII, Section 7 of the Constitution of Virginia.

## II.    The Emergency Clause Provision of SB739 was Adopted in Violation of the Constitution of Virginia

There is no dispute that SB739 was adopted without the requisite four-fifths supermajority required by the Constitution to make it effective immediately, as opposed to the default effective date of July 1. Va. Const, Art. IV, § 13. While the issue evidently has not been decided by a state or federal court, FCSB submits that this specific constitutional requirement cannot be evaded by the expedient of having emergency enactment language added simply through a "recommendation" of the Governor, which recommendation subsequently is approved by a bare majority of the General Assembly pursuant to Article V, Section 6. That is what occurred here, and it did not meet constitutional requirements.

15

As a threshold matter, this is an issue properly raised even after the rushed enactment of SB739 several weeks ago. While procedural matters pertaining to the enactment of a statute cannot be attacked in a lawsuit subsequent to a statute's adoption, *see Wise v. Bigger*, 79 Va. 269, 278-79 (1884) (house journal was conclusive on issue of whether act passed by 2/3 majority); *Henrico Cty. v. City of Richmond*, 177 Va. 754, 773 (1941) (discussing *Wise*, "this court held that where the journal of the proceedings of the Senate of Virginia showed that a bill had been passed by an affirmative vote of two-thirds of the senators present, this imported absolute verity and could not be contradicted."), the requirement that an emergency enactment clause obtain four-fifths approval of the General Assembly is a substantive procedural requirement of the Virginia Constitition, not simply a House or Senate rule.  It is therefore susceptible of judicial review even after the statute's enactment.

In *Whitlock v. Hawkins*, 105 Va. 242 (1906), for example, the Court observed that an act for appropriations had not received the majority of required votes in the Senate, and it was "conceded that, not *having received the necessary number of votes, the act failed of its passage, and is null and void.*" *Id.* at 246 (emphasis added). Likewise in *Brown v. Saunders*, 159 Va. 28 (1932), the Court said, "When a State legislature passes an apportionment bill, it must conform to constitutional provisions prescribed for enacting any other law, and whether such requirements have been fulfilled is a question to be determined by the court when properly raised. *If the validity of an apportionment act with respect to compliance with the constitutional requirements as to the manner of its adoption is subject to judicial review*, it follows that if the provisions in question constitute limitations upon the legislative power of apportionment (as we think they do), then whether those limitations have been exceeded is likewise a question for judicial determination." *Id.* at 34, 36 (bolded emphasis added). *Cf. Thomson v. Robb*, 229 Va. 233, 243 (1985) (denying

writ of mandamus compelling Governor to commission a member of the SCC where member did not receive constitutionally required number of votes). As in these time-honored precedents, the four-fifths requirement is a matter, not merely of procedure, but constitutional substance.

Turning to the substantive constitutional provisions, it is matter of straightforward textual interpretation that the more specific provisions of Article IV, Section 13 would control over the more general Governor's recommendation procedure of Article V, Section 6. *See Virginia Nat. Bank v. Harris*, 220 Va. 336, 340 (1979) (established rule of statutory construction that when *one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, the two should be harmonized, if possible, and where they conflict, the latter prevails.*); *Virginia Dept. of Health v. Kepa*, Inc., 289 Va. 131, 142 (2015) (same). Were that not the case, the specific requirement that legislation be effective the following July 1, other than in the extraordinary circumstance where 80 percent of both houses conceive it important enough to become effective right away, could be evaded through the Governor's recommendation procedure. The framers cannot have had this in mind. Nonetheless that is what occurred here, and it did not meet constitutional requirements, making it a nullity.

## Conclusion

*Amicus* Fairfax County School Board urges this Court to hold that the substance of SB 739 violates the responsibility for supervision of local school boards under Article VIII, Section 7 of the Constitution of Virginia and that, in any event, the emergency clause making that legislation immediately effective was adopted in manner that violates the Constitution of Virginia's four-fifths requirement.

Respectfully submitted,

FAIRFAX COUNTY SCHOOL BOARD

17

By:  /s/  John F. Cafferky
John F. Cafferky (VSB No. 26179)
   jcafferky@bklawva.com
William B. Porter (VSB No. 41798)
   wporter@bklawva.com
Emily K. Haslebacher, Esq. (VSB No. 92281)
   ehaslebacher@bklawva.com
BLANKINGSHIP & KEITH, P.C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030

(703) 691-1235 (Telephone)
(703) 691-3913 (Facsimile)

*Counsel for Amicus Curiae Fairfax County School Board*

18

## <u>Certificate of Service</u>

I hereby certify that on the 4th day of March 2022, a true and correct copy of the foregoing Brief *Amicus Curiae* of Fairfax County School Board in Support of Plaintiffs was filed electronically with the Clerk of the United States District Court for the Western District of Virginia, Charlottesville Division, using the CM/ECF system, which will send a notification of such filing (NEF) to:

Eden B. Heilman (VSB No. 93554)
eheilman@acluva.org
Matthew Callahan (*pro hac vice* to be filed)
mcallahan@acluva.org
Monique Gillum (*pro hac vice* to be filed)
mgillum@acluva.org
American Civil Liberties Union (ACLU)
Foundation of Virginia
701 E. Franklin St., Suite 1412
Richmond, Virginia 23219
(804) 644-8022 (Telephone)

Eve L. Hill (VSB No. 96799)
EHill@browngold.com
Sharon Krevor-Weisbaum (*pro hac vice*)
skw@browngold.com
Jessica Weber (*pro hac vice* pending)
jweber@browngold.com
Brown Goldstein Levy LLP
120 E. Baltimore St., Suire 2500
Baltimore, Maryland 21202
(410) 962-1030 (Telephone)

Stephen M. Traubert (VSB No. 41128)
steven.traubert@dLCV.org
Kerry M. Chilton (VSB No. 90621)
kerry.chilton@dLCV.org
disAbility Law Center of Virginia
1512 Willow Lawn Dr., Suite 100
Richmond, Virginia 23230
(804) 225-2042 (Telephone)

Ian S. Hoffman (VSB No. 75002)
Ian.Hoffman@arnoldporter.com

Andrew N. Ferguson, Esq.
aferguson@oag.state.va.us
Annie Chiang
achiang@oag.state.va.us
Lucas W. E. Croslow
lcroslow@oag.state.va.us
Steven G. Popps
spopps@oag.state.va.us
Office of Attorney General
Solicitor General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-2071 (Telephone)

*Counsel for Defendants Commonwealth of Virginia, Glenn Youngkin, Jason Miyares, Jillian Balow, and Colin Greene*

John A. Freedman (*pro hac vice* to be filed)
John.Freedman@arnoldporter.com
Arnold & Porter Kay Scholer LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
(202) 942-500 (Telephone)

Kaitlin Banner (*pro hac vice* pending)
kailtin_banner@washlaw.org
Margaret Hart (*pro hac vice* to be filed)
margaret_hart@washlaw.org
Marja K. Plater (*pro hac vice* to be filed)
marja_plater@washlaw.org
Washington Lawyers' Committee for Civil Rights
and Urban Affairs
700 14th Street, N.W., Suite 400
Washington, D.C. 20005
(202) 319-1000 (Telephone)

*Counsel for Plaintiffs*

    /s/ Emily K. Haslebacher
John F. Cafferky, Esq. (VSB No. 26179)
*jcafferky@bklawva.com*
William B. Porter (VSB No. 41798)
*wporter@bklawva.com*
Emily K. Haslebacher, Esq. (VSB No. 92281)
*ehaslebacher@bklawva.com*
BLANKINGSHIP & KEITH, P.C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
(703) 691-1235 (Telephone)
(703) 691-3913 (Facsimile)

*Counsel for Amicus Curiae Fairfax County School Board*