IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CHRISTOPHER SEAMAN and ELIZABETH ALLISON LYONS, individually and on behalf of C.S., a minor, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> THE COMMONWEALTH OF VIRGINIA, et al., <br><br> *Defendants*. | No. 3:22-cv-6-NKM |

### DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

JASON S. MIYARES
  *Attorney General*

CHARLES H. SLEMP III (Va. Bar #79742)
  *Chief Deputy Attorney General*

STEVEN G. POPPS (Va. Bar #80817)
COKE MORGAN STEWART (Va. Bar #41933)
  *Deputy Attorneys General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7704—Telephone
(804) 371-0200—Facsimile

ANDREW N. FERGUSON (Va. Bar #86583)
  *Solicitor General*

ERIKA L. MALEY (Va. Bar #97533)
  *Principal Deputy Solicitor General*

LUCAS W.E. CROSLOW (Va. Bar #97517)
  *Deputy Solicitor General*

GRAHAM K. BRYANT (Va. Bar #90592)
ANNIE CHIANG (Va. Bar #94703)
M. JORDAN MINOT (Va. Bar #95321)
  *Assistant Solicitors General*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................... iii

INTRODUCTION .......................................................................................................................1

ARGUMENT................................................................................................................................1

    I.    Plaintiffs lack standing ................................................................................................1

    II.   Plaintiffs failed to exhaust their administrative remedies............................................6

    III.  Plaintiffs' amended complaint fails to state a claim....................................................7

CONCLUSION .............................................................................................................................9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 4

*Bercovitch v. Baldwin Sch., Inc.*,
  133 F.3d 141 (1st Cir. 1998) ........................................................................................ 8

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .................................................................................................. 2, 6

*Crabill v. Charlotte Mecklenburg Bd. of Educ.*,
  423 F. App'x 314 (4th Cir. 2011) ................................................................................. 8

*Deal v. Mercer Cty. Bd. of Educ.*,
  911 F.3d 183 (4th Cir. 2018) ........................................................................................ 5

*Doe 1 v. Upper Saint Clair Sch. Dist.*,
  No. 2:22-cv-112, 2022 WL 189691 (W.D. Penn. Jan. 21, 2022) ................................. 7

*E.E.O.C. v. Sara Lee Corp.*,
  237 F.3d 349 (4th Cir. 2001) ........................................................................................ 8

*Egelhoff v. Egelhoff ex rel. Breiner*,
  532 U.S. 141 (2001) ..................................................................................................... 9

*Fauber v. Commonwealth*,
  No. 3:10-CV-00059, 2010 WL 4961743 (W.D. Va. Nov. 30, 2010) (Moon, J.) .......... 4

*Ferdinand-Davenport v. Children's Guild*,
  742 F. Supp. 2d 772 (D. Md. 2010) ............................................................................. 8

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*,
  238 F. Supp. 2d 174 (D.D.C. 2002) ............................................................................. 8

*J.D. ex rel. Doherty v. Colonial Williamsburg Found.*,
  925 F.3d 663 (4th Cir. 2019) ........................................................................................ 2

*Lokhova v. Halper*,
  995 F.3d 134 (4th Cir. 2021) ........................................................................................ 4

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................. 2, 5

*Public Citizen, Inc. v. Naional Highway Traffic Safety Admin.*,
  489 F.3d 1279 (D.C. Cir. 2007) ................................................................................................ 6

**Statutes**

Americans with Disabilities Act ..................................................................................... 1, 6, 7, 9

Individuals with Disabilities in Education Act ................................................................... 6, 7

Rehabilitation Act ............................................................................................................ 1, 6, 7, 9

**Other Authorities**

CDC, *Guidance for COVID-19 Prevention in K–12 Schools*,
  https://tinyurl.com/bdcv73uh ................................................................................................. 3

CDC, *COVID-19 by County*, https://tinyurl.com/2s44ser4 (last updated Mar. 17,
  2022) ........................................................................................................................................ 3

Christian Elliott, *Chicago Public Schools Ends Mask Mandate*, WBEZ (Mar. 15,
  2022), https://tinyurl.com/yckp4b8k .................................................................................. 4

David Tran, *Masks Will Not Longer Be Required in DC Public Schools*,
  Washingtonian (Mar. 11, 2022), http://tinyurl.com/2p9xx4sr ........................................... 3

Federal Rule of Civil Procedure 12(b)(1) .................................................................................. 1

Grace Ashford et al., *New York City Says it Will End School Mask and Indoor
  Proof-of-Vaccination Mandates*, N.Y. Times (Feb. 27, 2022),
  http://tinyurl.com/532ve7ah .................................................................................................. 3

Howard Blume & Luke Money, *Schools Go Mask Optional in Most of L.A.
  County*, L.A. Times (Mar. 14, 2022), http://tinyurl.com/4xkmcjw7 ................................ 3

Virginia Dep't of Health, *COVID-19 in Virginia: Cases*,
  https://tinyurl.com/yckv8x7m .............................................................................................. 3

# INTRODUCTION

Instead of engaging in the interactive process with their schools to request reasonable modifications to accommodate their disabilities, Plaintiffs sued state officials who play no role in the accommodation process. Plaintiffs contend that the Court should enjoin two state-law provisions to provide schools with "discretion" to require the universal forced masking of their classmates. But it is increasingly implausible that their schools would impose such mandates: since January, COVID-19 case levels have dropped more than 90 percent, the Centers for Disease Control (CDC) no longer recommends such mandates nearly anywhere in the country, and schools across the country are rescinding their mask mandates. The Americans with Disabilities Act (ADA) and Rehabilitation Act do not authorize plaintiffs to sue state officials rather than engaging in the individualized interactive process to reach agreement on a reasonable accommodation. That is particularly true when the accommodation Plaintiffs demand would override the decision of Virginia's elected representatives that it is time to end forced masking—including in K-12 schools, where it is detrimental to students' learning, and to their social and emotional development. The universal forced masking of Plaintiffs' classmates is not a reasonable accommodation, much less the only possible way that Plaintiffs' schools could accommodate their disabilities. Plaintiffs' claims therefore fail both for lack of standing and on the merits. The Court should accordingly dismiss the Complaint.

# ARGUMENT

## I. Plaintiffs lack standing

The Court lacks jurisdiction over this action because Plaintiffs lack standing. Plaintiffs agree that it is appropriate for the Court to "consider evidence outside the pleadings" on this motion under Federal Rule of Civil Procedure 12(b)(1). See MTD Opp. 3 (ECF No. 60) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

1

Plaintiffs also do not dispute that they bear the burden of establishing standing. See MTD Br. 10 (ECF No. 46); MTD Opp. 4–6 (ECF No. 60). And, as Plaintiffs acknowledge, "[t]here is no special standing rule for disability discrimination claims." MTD Opp. 4 (ECF No. 60).

Plaintiffs' standing argument rests on precisely the kind of "speculation about 'the unfettered choices made by independent actors not before the Court'" that the Supreme Court has consistently rejected. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992)); see MTD Br. 11–15 (ECF No. 46). Plaintiffs did not sue their schools, and their requested relief would not require their schools to impose Plaintiffs' preferred accommodation of universal forced masking of their classmates. See Am. Compl. ¶¶ 221–26 (ECF No. 24); Supp. Br. ISO TRO 7 (ECF No. 29-1); TRO Reply 17 (ECF No. 50).[1] Because Plaintiffs' schools are "not parties to the suit," they would not be "obliged to honor [any] incidental legal determination the suit produced." *Lujan*, 504 US at 569. Plaintiffs' requested relief would therefore do nothing to redress their alleged injuries unless their schools independently chose to impose universal mask mandates on their students.

Plaintiffs assert that no speculation is required because "the school [divisions] . . . were implementing mask mandates" prior to EO 2, and "many of the [school] districts pointed to [EO] 2 or S.B. 739 as the reason for their policy changes," or "made their changes so immediately after the state's action as to leave no doubt as to the cause." MTD Opp. 5 (ECF No. 60). But this

---

[1] Plaintiffs claim that schools *must* forcibly and indefinitely mask their classmates because Plaintiffs' "physicians have specifically called for masking." TRO Reply 15 (ECF No. 50). Physicians do not control the interactive process, nor do they alone decide which accommodations are reasonable. "Reasonableness is generally a fact-specific inquiry, asking whether the specific modification is 'reasonable under the circumstances.'" *J.D. ex rel. Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 674 (4th Cir. 2019) (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001)) (citation omitted). That inquiry is not limited to an email or letter from a doctor but must consider all of the circumstances—including the school's specific facilities and the availability of alternative modifications.

argument ignores the fact that, as Plaintiffs' amicus the Fairfax County School Board states, "the masking provisions of SB 739 have, to an appreciable degree, been overtaken by events," since "infection rates and hospitalizations from COVID-19 . . . have materially trended down." Amicus Br. 7 (ECF No. 54-1). Indeed, since the beginning of February, the case rate in Plaintiffs' ten counties has declined on average by 92 percent, consistent with a decline across the Commonwealth of 93 percent.[2] CDC now recommends mask mandates only in communities with "high" levels of COVID-19 infections or hospital admissions. CDC, *COVID-19 Community Levels* (Feb. 25, 2022), Ferguson Decl., Ex. O (ECF No. 45-15). None of Plaintiffs' counties has a "high" level, meaning that CDC does not recommend mask mandates, including in schools, though "[p]eople may choose to mask at any time." CDC, *COVID-19 by County*, https://tinyurl.com/2s44ser4 (last updated Mar. 17, 2022); see also CDC, *Guidance for COVID-19 Prevention in K–12 Schools*, https://tinyurl.com/bdcv73uh ("CDC's new COVID-19 Community Levels recommendations align precautions for educational settings with those for other community settings.").

In response to these changes, school systems across the country are abandoning universal forced masking policies, including in schools that previously maintained highly restrictive policies. See, *e.g.*, David Tran, *Masks Will Not Longer Be Required in DC Public Schools*, Washingtonian (Mar. 11, 2022), http://tinyurl.com/2p9xx4sr; Grace Ashford et al., *New York City Says it Will End School Mask and Indoor Proof-of-Vaccination Mandates*, N.Y. Times (Feb. 27, 2022), http://tinyurl.com/532ve7ah; Howard Blume & Luke Money, *Schools Go Mask Optional in Most*

---

[2] According to data from the Virginia Department of Health, the case rate has declined in Albemarle County by 92 percent from January 29, 2022 to March 12, 2022; in Manassas City by 95 percent; Henrico County, 95 percent; Chesterfield County, 95 percent; Cumberland County, 79 percent; York County, 96 percent; Bedford County, 95 percent; Chesapeake County, 97 percent; Loudoun County, 90 percent; and Fairfax County, 89 percent. See Virginia Dep't of Health, *COVID-19 in Virginia: Cases*, https://tinyurl.com/yckv8x7m (last visited Mar. 18, 2022).

3

*of L.A. County*, L.A. Times (Mar. 14, 2022), http://tinyurl.com/4xkmcjw7; Christian Elliott, *Chicago Public Schools Ends Mask Mandate*, WBEZ (Mar. 15, 2022), https://tinyurl.com/yckp4b8k. In light of these developments, it is not plausible that Plaintiffs' schools would re-impose their forced masking policies if the Court were to enjoin the Defendants from "enforcing" EO 2 and S.B. 739. Notably, Plaintiffs' amicus Fairfax County Public Schools declined to state in its brief that it would reimpose a student mask mandate if EO 2 and S.B. 739 were enjoined, instead stating that it had abandoned its mandate "[a]s a result of" the falling infection rates and changed CDC guidance. Amicus Br. 7 (ECF No. 54-1). Plaintiffs' amicus therefore emphasizes that forced masking is a question of school *discretion*, further undermining Plaintiffs' standing argument.

Plaintiffs' contention that this Court must "take[] as true . . . at this stage" allegations that their schools would re-impose mask mandates is erroneous. MTD Opp. 5 (ECF No. 60). Only allegations *of fact* must be taken as true—not speculative conclusions regarding how third parties would act in a counter-factual world. See *Lokhova v. Halper*, 995 F.3d 134, 148 (4th Cir. 2021) ("It is well established that speculative conclusions are insufficient to survive a motion to dismiss."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Fauber v. Commonwealth*, No. 3:10-CV-00059, 2010 WL 4961743, at *2 n.3 (W.D. Va. Nov. 30, 2010) (Moon, J.) ("conclusory" allegations are "disentitle[d] . . . to the presumption of truth" (quoting *Iqbal*, 556 U.S. at 681)). Plaintiffs lack standing because the relief they seek here—an injunction against Defendants' prospective enforcement of EO 2 and S.B. 739—would not redress their claimed injury.

Plaintiffs assert that "the removal of even one obstacle to the exercise of one's rights, even if other barriers remain, is sufficient to show redressability." MTD Opp. 5 (ECF No. 60) (quoting

4

*Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 190 (4th Cir. 2018)). But as the Fourth Circuit also explained in *Deal*, "[t]o satisfy the redressability element of standing, a plaintiff 'must show that it is *likely*, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Deal*, 911 F.3d at 189 (quoting *Sierra Club v. United States Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018)) (internal quotation marks omitted). *Deal* required no speculation about the choices of non-parties because the plaintiff in that case was "[her]self an object of the action . . . at issue"; her injury therefore did not arise "from the government's allegedly unlawful regulation . . . of *someone else*" who was not before the court. *Lujan*, 504 U.S. at 561–62. In the former case, "there is ordinarily little question" that an order forbidding the challenged action will redress the alleged injury; in the latter, "standing is . . . 'substantially more difficult' to establish." *Ibid.* (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)). The Fourth Circuit in *Deal* found that the plaintiff's requested injunction *would* redress at least some of the plaintiff's alleged injuries. *Id.* Here, however, no claim in this case will be redressed by any order the Court could enter. Instead, Plaintiffs' desired outcome—the re-imposition of forced masking in their schools—depends on their school boards' independent exercise of discretion, and on future litigation against those school boards. See MTD Br. 15–20 (ECF No. 46); TRO Reply 17 (ECF No. 50).

Plaintiffs contend that if they are held to lack standing, then "a Black prospective voter could not challenge a state law explicitly prohibiting Black people from voting until she had tried to vote, been turned away, and been subjected to an enforcement mechanism." Opp. 4 (ECF No. 60). This reductive hypothetical serves only to illustrate the impermissibly speculative nature of Plaintiffs' theory of standing. A law disenfranchising minority voters plainly and directly injures those citizens by denying their right to vote. Similarly, an order enjoining that law in a suit against the election officials who were barring the voters from the ballot box would plainly and directly

5

redress those injuries without "speculation about 'the unfettered choices made by independent actors not before the court.'" *Clapper*, 568 U.S. at 414 n.5 (quoting *Lujan*, 504 U.S. at 562). Here, by contrast, Plaintiffs' standing theory requires speculation both as to what policies their schools would choose to adopt, and as to whether, and to what degree, the absence of forced student masking increases Plaintiffs' risks of contracting COVID-19. MTD Br. 12–13 (ECF No. 46). Such "increased-risk-of-harm claims" inherently present serious standing problems. *Public Citizen, Inc. v. Naional Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295–96 (D.C. Cir. 2007). Plaintiffs in such cases must at least demonstrate both a "*substantially* increased risk of harm" and a "*substantial* probability of harm." *Ibid*. Plaintiffs here have not demonstrated either, particularly given that their schools are free to adopt a host of alternative risk-mitigation measures. MTD Br. 21 (ECF No. 46). The Complaint should be dismissed for lack of standing.

## II. Plaintiffs failed to exhaust their administrative remedies

The Complaint should also be dismissed for lack of jurisdiction because Plaintiffs failed to exhaust their administrative remedies as required by the Individuals with Disabilities in Education Act (IDEA). MTD Br. 20–24 (ECF No. 46). Plaintiffs assert this exhaustion requirement applies only to denials of "'special' education services." MTD Opp. 7 (ECF No. 60). But the IDEA is not concerned only with "special" education. Rather, it requires exhaustion of any ADA or Rehabilitation Act claim that "seek[s] relief that is also available under" the IDEA, 20 U.S.C. § 1415(*l*), including "a complaint . . . with respect to any matter relating to . . . the provision of a free appropriate public education" to a "child with a disability," *id.* § 1415(b)(1), (b)(6)(A).

Plaintiffs' contentions that the exceptions to the exhaustion requirement apply are also erroneous. MTD Opp. 7 (ECF No. 60). Seeking administrative remedies under the IDEA would not be "futile" here. To the contrary, it would provide each Plaintiff an individualized interactive process to determine what accommodations are appropriate, given the needs of each student and the

6

circumstances of each school. MTD Br. 21 (ECF No. 46).[3] Again, there are a wide range of accommodations that Plaintiffs' schools could provide, *ibid*, and "Plaintiffs do not know to what extent some mutually acceptable accommodation could have been reached because they bypassed the entire administrative process," *Doe 1 v. Upper Saint Clair Sch. Dist.*, No. 2:22-cv-112, 2022 WL 189691, at *12 (W.D. Penn. Jan. 21, 2022). Nor is Plaintiffs' failure to pursue IDEA relief justified by "severe harm." TRO Reply Br. 22–23 (ECF No. 50). Again, Plaintiffs' alleged harm from the challenged provisions is speculative, particularly given that, in the absence of these provisions, Plaintiffs would *still* have to go through the individualized process of requesting accommodations from their schools—and sue their school boards if they fail to provide the accommodations the Plaintiffs seek. See *id.* at 17.

## III. Plaintiffs' amended complaint fails to state a claim

The complaint should also be dismissed for failure to state a claim. Plaintiffs' allegations show that they failed to engage in the interactive process required by the ADA and the Rehabilitation Act. Plaintiffs do not dispute this, and they fail to respond to any of the cases Defendants cited regarding the need to "make an adequate request" and "put the [defendant] on notice" of the need for an accommodation. See MTD Br. 24 (ECF No. 46).

And contrary to Plaintiffs' arguments, it is far from "obvious" that Plaintiffs' desired accommodation of universal forced masking is "necessary." *Id.* at 25. Plaintiffs fail to show that there is no possible alternative accommodation. *Id.* at 27–29. Indeed, universal student mask mandates

---

[3] Plaintiffs have repeatedly insisted that EO 2 and S.B. 739 "*forbid* all mask mandates and forbid schools from even talking to students about masks in schools." TRO Reply 7 (ECF No. 50). This claim is categorically false, and Plaintiffs cite nothing to support it. Nothing in the text of EO 2 and S.B. 739 forbids schools from "talking" about masks, and no Defendant has ever suggested such a restriction. Moreover, EO 2 and S.B. 739 merely prohibit schools from forcing students to wear masks against their parents' wishes. Neither forbids a school from forcing children to wear masks if their parents have not elected otherwise, and neither forbids staff or teacher mask mandates.

are not a "reasonable accommodation" at all, due to their negative effects on other students. *Id.* at 25–27. Plaintiffs assert that the negative externalities of a proposed accommodation are irrelevant unless they violate the "third party's legal or contractual *rights*," and "there is no right not to wear a mask." MTD Opp. 3 (ECF No. 60). Plaintiffs cite nothing to support this argument. Nor could they, as their position is incorrect. A proposed accommodation is not reasonable where it would constitute an "unreasonable imposition" on third parties, *E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 355 (4th Cir. 2001), including where it would "impair[] the educational experience of the other students," *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 152 (1st Cir. 1998); see *Crabill v. Charlotte Mecklenburg Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011) ("impact to other[s]" is relevant, and "an accommodation that would require other employees to work harder is unreasonable"). In any event, other students do have a right to an appropriate public education. And far from being a "mere inconvenience," MTD Opp. 3 (ECF No. 60), forcing students to wear masks significantly degrades their educational experience, MTD Br. 5–6 (ECF No. 46).

Finally, Plaintiffs' opposition fails to include any response regarding their preemption claims, and the Court may therefore treat those claims as conceded. See *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010); *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002). In any event, EO 2 and S.B. 739 are facially preempted only if it is impossible to reconcile the federal and state laws. MTD Br. 27–29 (ECF No. 46). The availability of alternative accommodations means that schools can comply with both the Commonwealth's laws *and* the federal disabilities laws.[4] The Court should follow the

---

[4] Even if forced masking of a student's classmates were ever the only reasonable way to accommodate a particular student's disability—and for the reasons already stated, such circumstances do not exist, *see* MTD Br. 4–7, 24–27 (ECF No. 46)—preemption of EO 2 and S.B. 739 would be limited to those very specific circumstances. Preemption would not broadly extend to all "Virginia school districts" as Plaintiffs argue in this case. Supp. Br. ISO TRO 7 (ECF No. 29-1); Br. ISO

8

"presumption against pre-emption in areas of traditional state regulation," *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 151 (2001), and dismiss Plaintiffs' preemption claims.

## CONCLUSION

For the foregoing reasons and those discussed in Defendants' opening brief in support of the motion to dismiss, the Court should dismiss Plaintiffs' Complaint.

March 18, 2022                                                                                       Respectfully submitted,

By:   */s/ Andrew N. Ferguson*
     ANDREW N. FERGUSON (Va. Bar #86583)
     *Solicitor General*

| | |
|---|---|
| JASON S. MIYARES<br>  *Attorney General* | ANDREW N. FERGUSON (Va. Bar #86583)<br>  *Solicitor General* |
| CHARLES H. SLEMP III (Va. Bar #79742)<br>  *Chief Deputy Attorney General* | ERIKA L. MALEY (Va. Bar #97533)<br>  *Principal Deputy Solicitor General* |
| STEVEN G. POPPS (Va. Bar #80817)<br>COKE MORGAN STEWART (Va. Bar #41933)<br>  *Deputy Attorneys General* | LUCAS W.E. CROSLOW (Va. Bar #97517)<br>  *Deputy Solicitor General* |
| Office of the Attorney General<br>202 North Ninth Street<br>Richmond, Virginia 23219<br>(804) 786-7704—Telephone<br>(804) 371-0200—Facsimile | GRAHAM K. BRYANT (Va. Bar #90592)<br>ANNIE CHIANG (Va. Bar #94703)<br>M. JORDAN MINOT (Va. Bar #95321)<br>  *Assistant Solicitors General* |

---

TRO 37 (ECF No. 5). The extent and scope of any preemption could be determined only after the individualized interactive process required by the ADA and Rehabilitation Act. Plaintiffs have not even tried to establish that such limited circumstances exist; they have instead requested a statewide advisory order notifying school districts of their discretion.

**CERTIFICATE OF SERVICE**

I certify that on March 18, 2022, I electronically filed the foregoing brief with the Clerk of this Court by using the CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ Andrew N. Ferguson
Andrew N. Ferguson
